FILED: APPELLATE DIVISION - 1ST DEPT 10/06/2023 04:44 PM

NYSCEF DOC. NO. 12

2023-00672

RECEIVED NYSCEF: 10/06/2023

*To Be Argued By:*
Frederick C. Kelly
*Time Requested: 15 Minutes*

*New York County Clerk's Index No. 453196/2022*

# New York Supreme Court

## APPELLATE DIVISION — FIRST DEPARTMENT

►◄

PEOPLE OF THE STATE OF NEW YORK,
BY LETITIA JAMES, ATTORNEY GENERAL
OF THE STATE OF NEW YORK,

*Petitioner-Respondent,*

*against*

VDARE FOUNDATION, INC.,

*Respondent-Appellant.*

**Case No.
2023-00672**

---

# BRIEF FOR RESPONDENT-APPELLANT

---

FREDERICK C. KELLY, ESQ.
One Harriman Square
Goshen, New York 10924
845-294-7945
fckellylaw@protonmail.com

*and*

RANDAZZA LEGAL GROUP, PLLC
43-10 Crescent Street, Suite 1217
Queens, New York 11101
203-539-6666
ecf@randazza.com

*Of Counsel:*

Frederick C. Kelly
Jay M. Wolman

*Attorneys for Respondent-Appellant*

*Printed on Recycled Paper*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................ ii

QUESTIONS PRESENTED........................................................................1

STATEMENT OF THE NATURE OF THE CASE AND
RELEVANT FACTS ..................................................................................2

STANDARD OF REVIEW .........................................................................9

ARGUMENT .............................................................................................10

    I.    THE TRIAL COURT ERRED IN ENFORCING A
        SUBPOENA ISSUED IN RETALIATION FOR FIRST
        AMENDMENT PROTECTED SPEECH....................................................10

    II.   THE SUBPOENA IS NOT NARROWLY TAILORED AND
        CANNOT SURVIVE SCRUTINY ...........................................................13

        A.   RESPONDENT HAS NO COMPELLING
            GOVERNMENT INTEREST IN SEEKING THE
            IDENTITIES OF VDARE'S CONTRACTORS ..............................15

        B.   THE SUBPOENA IS NOT NARROWLY TAILORED
            AND INVADES THE RIGHT TO SPEAK AND
            ASSOCIATE ANONYMOUSLY .......................................................22

CONCLUSION .........................................................................................30

PRINTING SPECIFICATIONS STATEMENT .......................................31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Americans for Prosperity Foundation v Bonta*,
  141 SCt 2373 [2021]................................................................14, 28

*Arista Recs, LLC, v Doe 3*,
  604 F3d 110 (2nd Cir. 2010) .........................................23, 24, 25, 29

*Bailey v Alabama*,
  219 US 219 [1911]............................................................................12

*Capasso v Capasso*,
  119 AD2d 268 [1st Dept, 1986] .......................................................24

*Cullen v Fliegner*,
  18 F3d 96 [2nd Cir, 1994] ...............................................................10

*Elrod v Burns*,
  427 US 347 [1976]............................................................................27

*Esponda v Ramos-Ciprian*,
  179 AD3d 424 [1st Dept, 2020] ..................................................11, 13

*Evergreen Ass'n, Inc v Schneiderman*,
  153 AD3d 87 [2nd Dept, 2017] ............................................21, 22, 28

*Friends World College v. Nicklin*,
  249 AD2d 393 [2nd Dept, 1998] ...................................................9, 11

*Gitlow v New York*,
  268 US 652 [1925].............................................................................2

*Grotallio v. Soft Drink Leasing Corp.*,
  468 NYS2d 4 [1st Dept, 1983] .........................................................22

*Harris v Stony Clove Lake Acres Inc*,
  202 AD2d 745 [3rd Dept, 1994]........................................................18

*Immuno AG v Moor-Jankowski*,
  77 NY2d 235 [1991] ................................................................................15

*Kerr v Black*,
  55 AD3d 83 [1st Dept, 2007] ..................................................................11

*La Union Del Pueblo Entero v. Abbott*,
  No. SA-21-CV-00844-XR, 2022 U.S. Dist. LEXIS 222064
  (W.D. Tex. Dec. 9, 2022) ........................................................................22

*Martin Epstein Co v City of New York*,
  31 Misc2d 759 [NY Sup Ct, 1950].........................................................13

*Matal v Tam*,
  582 US 218 [2017].................................................................................11

*Matter of A'Hearn v Committee on Unlawful Practice of Law
  of NY County Lawyers' Ass'n*,
  23 NY2d 916 [1969] .........................................................................14, 15

*Matter of Bahar v. Schwartzreich*,
  204 AD2d 441 [2nd Dept, 1994] .........................................................9, 11

*Matter of New York State Senate Republican Campaign Comm
  v Sugarman*,
  165 AD3d 1536 [3rd Dept, 2018].............................................................15

*Matter of Seagroatt Floral Co, Inc*,
  78 NY2d 439 [1991].................................................................................18

*McIntyre v Ohio Elections Commission*,
  514 US 334 [1995]...................................................................................22

*Myerson v. Lentini Bros. Moving & Storage Co*,
  33 NY2d 250 [1973].........................................................................14, 21

*NAACP v Alabama ex rel Patterson*,
  357 US 449 [1958]...................................................................................28

*New York Times Company v Sullivan*,
  376 US 254 [1964]...................................................................................12

*People ex rel Burke, Ltd v Wells*,
184 NY 275 [1906] ...........................................................................................12

*People ex rel Westchester Fire Ins Co v Davenport*,
91 NY 574 [1883] .............................................................................................12

*Perry v Schwarzeneggar*,
591 F3d 1147 [9th Cir, 2009] ....................................................................22, 29

*Popkin v Dingman*,
366 FSupp 534 [SDNY 1973] ..........................................................................18

*RAV v St Paul*,
505 US 377 [1992].............................................................................................11

*Rosenblatt v Baer*,
383 US 75 [1966]...............................................................................................10

*Rothouse v. Association of Lake Mohegan Park Property Owners, Inc.*,
15 AD2d 739 [1st Dept, 1962] ...........................................................................9

*Sanchez v Nat'l RR Passenger Corp*,
21 NY3d 890 [2013] ..........................................................................................12

*Sony Music Entm't Inc v Doe*,
326 FSupp2d 556 [SDNY, 2004] ......................................................................24

*Talley v California*,
362 US 60 [1960]...............................................................................................22

*United States v El Paso Natural Gas Co*,
376 US 651 [1964].......................................................................................23, 24

*Volokh v James*,
Case No. 22-cv-10195, 2023 U.S. Dist. LEXIS 25196
[SDNY Feb 14, 2023].................................................................................3, 4, 11

*Whitney v. California*,
274 US 357 [1927]...............................................................................................2

*Wilkinson v Skinner*,
34 NY2d 53 [1974].............................................................................................11

**Statutes**

Civil Procedure Law & Rules § 21(1) ........................................................16

Civil Procedure Law & Rules § 105[u] ......................................................12

Civil Procedure Law & Rules § 214(2) ......................................................16

Civil Procedure Law & Rules § 409[b] ........................................................9

Executive Law § 172(1).............................................................................16

Not-for-Profit Corporation Law § 509...........................................16, 20

Not-for-Profit Corporation Law § 510...........................................16, 19

Not-for-Profit Corporation Law § 511............................................16, 19

Not-for-Profit Corporation Law § 511-a ........................................16, 19

Not-For-Profit Corporation Law § 715............................................17, 20

Not-for-Profit Corporation Law § 717...................................................20

**Rules**

Rules of Profession Conduct 3.3(a)(1) .........................................................6

Rules of Profession Conduct 3.3(a)(3) .........................................................6

Rules of Professional Conduct 3.3(b) ..........................................................6

**Other Authorities**

First Amendment to the U.S. Constitution .......................................*passim*

## QUESTIONS PRESENTED

1.    Whether Respondent's investigatory subpoena should have been enforced when it was admittedly issued in retaliation for speech at the very core of the areas protected by the First Amendment?

    a.    The trial court erroneously determined that the petition to enforce the subpoena should be granted, and the motion to dismiss denied, notwithstanding the retaliatory nature of the subpoena.

2.    Whether Respondent's subpoena should have been enforced where it is overbroad and punitive, and seeks to deanonymize VDARE's contractors, when VDARE and its contractors have First Amendment freedoms of speech and association to act anonymously?

    a.    The trial court erroneously determined that the petition to enforce the subpoena should be granted, and the motion to dismiss denied, notwithstanding applicable case law and without any analysis of the factors that might permit such an over broad subpoena that is not narrowly tailored to Respondent's claimed interest.

- 1 -

**STATEMENT OF THE NATURE OF THE CASE AND RELEVANT FACTS**

The instant appeal concerns First Amendment retaliation under the guise of subpoena enforcement. However, the word "guise" is used advisedly, for Attorney General Letitia James makes no attempt to conceal her intent to employ the law for censoring political ideas she deems "dangerous and corrosive." *R. 321-22.* By doing so, the Attorney General has effectively disregarded almost a century of free speech jurisprudence and is trampling on the rights of a dissident minority in New York State. Although urged by a new party, this is the old "bad tendency" test, an atavistic attitude toward free speech which saw it heyday almost a century ago in Justice Sanford's *Gitlow v New York*, 268 US 652 [1925]. It has not been lawful since Justice Brandeis's famous concurrence in *Whitney v. California*, 274 US 357, 372 [1927] [J. Brandeis, concurring] began to overtake *Gitlow*. Simply put, the Attorney General is abusing her powers to unmask those who contract with VDARE on an anonymous basis, in violation of their freedoms of speech and association, because she does not like VDARE's political message. Yet the same First Amendment that covers VDARE also covers progressive groups. Turnabout will, inevitably, become fair game. Abusing the First Amendment to unmask one's political enemies who enjoy the freedom to be anonymous cannot be tolerated, lest

- 2 -

the political arena become a free for all where no one's rights will prove secure if they fall outside the dominant party in the region.

Respondent Attorney General Letitia James has a history of targeting for censorship those she perceives as ideological foes.  *R. 321-322.*  On August 5, 2020, she joined several other attorneys general urging Facebook to clamp down on so-called "hate speech," particularly of the kind associated with the conservative side of the political spectrum.  *R. 321.*  On January 8, 2020, she gave a media interview regarding a newly formed "Hate Crime Unit" wherein she stated that such unit would be targeting social media companies.  *R. 321.*  The Attorney General manifestly does not believe that the answer to alleged bad speech is more speech, rather she intended the Hate Crimes Unit to engage social media companies to fight "racism, the spread of disinformation and hate" by "strengthen[ing] their policies" which otherwise permit such expressions.  *R. 321.* On December 3, 2022, New York's newly minted "Hateful Conduct Law" went into effect.  Respondent was sued in the Southern District of New York in the case, "*Volokh et al v. James*," Case No. 2022-cv-10195 (S.D.N.Y. 2023) over her desire

- 3 -

to use that law to prevent what she unilaterally deemed the spread of dangerous and corrosive ideas.[1]  *R. 321-322.*

Appellant VDARE Foundation, Inc. runs VDARE.com, a web magazine.  *R. 320.*  Although organized decades ago under New York law as the Lexington Research Institute, Ltd.   ( *R. 65-75*), VDARE has since changed its name to the "VDARE Foundation, Inc." ( *R. 84*) and is now headquartered in West Virginia.  *R. 318.*  VDARE has long been tarred by its opponents with pejoratives such as "white nationalist" and "racist."  *R. 320.*  Although VDARE rejects these labels and urges that its speech in fact constitutes criticism of current government policies on immigration ( *R. 320, 326*), those labels have proved damaging.  For example, several venues that had agreed to host VDARE conferences in the past have canceled on VDARE due to pressure campaigns and violent threats  ( *R. 320*), including the Cheyenne Mountain Resort in Colorado Springs, Colorado in 2017 ( *R. 351*), the Tenaya Lodge in Yosemite National Park in 2017 ( *R. 351*), and the Hilton El Conquistador hotel in Tucson Arizona, also in 2017.  *R. 351.*

Because of the antipathy by government and others within our society, many of VDARE's writers and vendors prefer to remain anonymous.  *R. 320.*  It is

---

[1] NB: on February 14, 2023, Judge Andrew Carter would grant a preliminary injunction against Respondent James from using the "Hateful Conduct Law."  *See DKT 23 of "Volokh et al v. James," Case No. 2022-cv-10195 (S.D.N.Y. 2023).*

undisputed that, "On occasions when associations with VDARE have been disclosed or become public, people have lost employment, and contractors essential to VDARE's existence have opted to stop providing services." *R. 320.* Specific businesses which have ceased servicing VDARE include Mailchimp and Constant Contact, Paypal, Amazon, Google Ads, and many smaller businesses. *R. 351-52.* Therefore, to protect its right to freedom of speech and association, VDARE remains vigilant about maintaining the privacy and anonymity of its writers and vendors. *R. 351-52.*

In early 2020, VDARE bought a historic castle building in West Virginia for use as a headquarters and conference center. *R.318.* The main impetus for the castle purchase was precisely the activity Respondent is engaged in — deanonymizing vendors who are pressured into terminating their association with VDARE under the threat of "cancellation." *R.355.*

In December of 2020, as part of its corporate re-organization, VDARE conveyed the castle and grounds to two separate entities, the castle and immediately surrounding lands going to the Berkeley Castle Foundation, Inc., and the remaining lands going to BBB, LLC, a West Virginia Limited Liability Company. *R. 53.* (VDARE's disposition of the properties in two deeds will often

- 5 -

be referred to as the "Berkeley Springs Castle transactions" or the "castle transactions.")

The Berkeley Castle Foundation is an IRS "Type II supporting organization," (*R.197*) organized – like VDARE itself – for charitable purposes. (The organization it supports is, quite obviously, VDARE itself.)

BBB, LLC, by contrast, is a for profit LLC.

Although not part of the record below, Appellant is forced to clarify the status of BBB, LLC in accordance with New York's Rules of Professional Conduct 3.3(b). BBB, LLC is wholly owned by the VDARE Foundation, Inc. (*viz.* Appellant VDARE.) It is a single member LLC, the sole member being VDARE. Contrary to the false representations of Respondent, neither Peter Brimelow, nor Lydia Brimelow have any interest in BBB, LLC[2].

However, in the Spring and Summer of 2022, VDARE came into the cross-hairs of Respondent's office, as she launched not one, but three separate subpoenae seeking information about VDARE. *R.267, 271-275, and 322-324.* Specifically,

---

[2] Moreover, Respondent has long known the truth of BBB, LLC's ownership; in particular a document bates stamped "VF 5–9" (being the operating agreement of BBB, LLC) was provided to Respondent James well before her office made any court filings herein. Despite possessing such information, her office repeatedly made what appear to be false and material misrepresentations to the tribunal below regarding the ownership interest of BBB, LLC. These are detailed in VDARE's argument. On August 1, 2023, citing NY Rules of Profession Conduct 3.3(a)(1) and (a)(3) among others, Appellant requested the Attorney General to correct the record. By letter dated August 24, 2023, the Attorney General refused to do so.

- 6 -

Respondent served a subpoena dated May 13, 2022 directed at Meta Platforms, Inc., a subpoena dated June 14, 2022 directed at Facebook Payments, Inc, and finally, a subpoena directed at VDARE Foundation, Inc. dated June 23, 2022. *R. 271-275.* Together, all three subpoenae sought information across 68 different categories of documents, all aimed at uncovering aspects of VDARE's work and relationships. *Id.*

Apparently Respondent was making good on the promises of her January 8, 2020 media interview, for the "Special Counsel for Hate Crimes" was responsible for both the Meta Platforms subpoena and the Facebook Payments subpoena. *R. 322 and 324.* Respondent admits that her targeting of VDARE was motivated by her disagreement with its constitutionally protected speech. *R. 329, 330, and 331.* She likewise concedes that there are valid concerns arising out of the fact that, in 2022, her office leaked confidential information about the donors to another conservative group (the political non-profit "Stand for America"). *R. 327.*

Nevertheless, James argued (and the trial court agreed) that the Berkeley Springs Castle transactions are the alleged "critical facts that first triggered [James's] scrutiny." *R. 10 and R. 339.*

The subpoena directed at VDARE itself, which is the one subject to the instant action and appeal, seeks a broad array of documents across more than 40

odd categories.  *R. 230-238.*  Virtually none of these inquiries are tied to alleged misdeeds regarding the castle transactions.  Moreover, the subpoena constitutes a massive administrative burden for a small organization like VDARE.  R. 318.

With grave misgivings, but in an attempted show of good faith ( *R. 357*), VDARE began complying with Respondent's subpoena.  However, as the focus was clearly on the castle transactions, VDARE's counsel repeatedly attempted to meet and confer with Respondent's counsel in order to narrow the issues, and in particular to explain any apparent concerns about the castle transactions.  *R.354-355.*  Respondent, however, refused to meet and thus denied VDARE the opportunity to definitely lay any concerns about the castle transactions to rest. *R. 355.* When it became clear that Respondent was intent on forcing the discovery of even VDARE's writers and vendors, Appellant was forced into court.

## STANDARD OF REVIEW

A special proceeding, such as the subpoena enforcement at issue here *( R. 8)* is governed by the same standards as a motion for summary judgment where there are no open issues of fact. *Friends World College v. Nicklin*, 249 AD2d 393, 394 [2nd Dept, 1998], *citing CPLR 409[b]* and *Matter of Bahar v. Schwartzreich*, 204 AD2d 441, 443 [2nd Dept, 1994]. This Court is "free to resolve de novo the question of whether summary judgment should be granted." *Rothouse v. Association of Lake Mohegan Park Property Owners, Inc.*, 15 AD2d 739, 739 [1st Dept, 1962].

**ARGUMENT**

The decision of the trial court cannot stand.  The Attorney General cannot use her subpoena power to investigate her political enemies without any proper basis merely because she does not like what they say.  And she cannot force her enemies to disclose the identities of those who anonymously speak through and associate with those said enemies.  The First Amendment cannot condone any such intrusion.

**I:    THE TRIAL COURT ERRED IN ENFORCING A SUBPOENA ISSUED IN RETALIATION FOR FIRST AMENDMENT PROTECTED SPEECH.**

The First Amendment does not permit a state actor to initiate a proceeding in retaliation for the exercise of First Amendment rights.  *Cullen v Fliegner*, 18 F3d 96, 103-104 [2nd Cir, 1994].  But that is precisely what the subpoena and the enforcement proceeding were — retaliatory actions.

VDARE's speech constitutes criticism is current government policy, on immigration in particular.  *R. 320.*  As such, it stands at the very core of the liberties protected by the First Amendment, *e.g. Rosenblatt v Baer*, 383 US 75, 85 [1966]: "Criticism of government is at the very center of the constitutionally protected area of free discussion."

- 10 -

Attorney General James has the unfortunate tendency to target speech that she hates, which in a fit of projection, she dismisses as "hate speech." *R. 321-322*. But the law is that "the First Amendment protects individuals' right to engage in hate speech, and the state cannot try to inhibit that right, no matter how unseemly or offensive that speech may be to the general public or the state." *Volokh v James*, Case No. 22-cv-10195, 2023 U.S. Dist. LEXIS 25196, *24 [SDNY Feb 14, 2023] (*citing Matal v Tam*, 582 US 218, 245-246 [2017] and *RAV v St Paul*, 505 US 377, 391 [1992].

Attorney General James conceded that the subpoena at issue was served because she disagrees with the constitutionally protected speech of VDARE. *R. 329.* The trial court should not, therefore, have suborned such retaliatory conduct.

A special proceeding ( *R. 8*) is governed by the same standards as a motion for summary judgment where there are no open issues of fact. *Friends World College v. Nicklin*, 249 AD2d 393, 394 [2nd Dept, 1998], *citing CPLR 409[b] and Matter of Bahar v. Schwartzreich*, 204 AD2d 441, 443 [2nd Dept, 1994]. But on a motion for summary judgment, the court is obligated to search the record. *Kerr v Black*, 55 AD3d 83, 86 [1st Dept, 2007]; *Wilkinson v Skinner*, 34 NY2d 53, 56 [1974]. It is elementary that facts which appear in a movant's papers are deemed admitted (*Esponda v Ramos-Ciprian*, 179 AD3d 424, 426 [1st Dept, 2020]),

- 11 -

regardless of the need to construe the papers in the light most favorable to the opposition.

Here VDARE's cross motion contained a verified pleading attesting to Respondent's unconstitutional animus. *R. 361, 317-334, especially at 329.* It details that Respondent has been attempting to stifle VDARE's political speech, a malign pattern that is consistent with several other past efforts at de-platforming and coerced silencing by her office. *R. 321.* That verified pleading, of course, serves the same purposes as an affidavit. *CPLR 105[u]; Sanchez v Nat'l RR Passenger Corp*, 21 NY3d 890, 891 [2013]. Respondent never even attempts to meet these allegations with opposing ones of her own. At best, she implies that responding to such allegations are beneath her owing to the "presumptions"afforded by her office. *R. 34, 40-41.*

But "presumptions" cannot be used by a state official to mask constitutional violations, especially where free speech is concerned. *New York Times Company v Sullivan*, 376 US 254, 283-84 [1964], *quoting Bailey v Alabama*, 219 US 219, 239 [1911]. And, in any event, presumptions are "not evidence but [serve] in place of evidence until the opposing party comes forward with his proof, whereat it disappears." *People ex rel Westchester Fire Ins Co v Davenport*, 91 NY 574, 582 [1883]; *People ex rel Burke, Ltd v Wells*, 184 NY 275, 279 [1906]. Here VDARE

- 12 -

came forward with the equivalent of a sworn affidavit on a motion for summary judgment, which Respondent could not meet.  Whatever presumptions she is entitled to certainly do not override the standard analysis on a motion for summary judgment where she has conceded material facts. *Esponda v Ramos-Ciprian.*

It bears stressing that Respondent herself proffered a copy of VDARE's sworn pleading in her moving papers. *R. 317-334, at 329.*  She herself was thereby alerting the court to the sworn allegations against her, but still opted to leave them unchallenged.  That being the case, the sworn statements that Respondent herself included in these proceedings destroy her own petition, like the movant in *Martin Epstein Co v City of New York*, 31 Misc2d 759, 761 [NY Sup Ct, 1950].

## II:    THE SUBPOENA IS NOT NARROWLY TAILORED AND CANNOT SURVIVE SCRUTINY.

Enforcement of the subpoena will require VDARE to disclose the names of its content creators (primarily writers, but creators of other media as well) and vendors.  While Respondent has narrowed the scope to exclude unpaid content creators, the subpoena nevertheless will require deanonymization of its contractual creators and vendors in violation of their right to anonymity under the First Amendment.

- 13 -

The issue here is Respondent's lack of narrow tailoring.  Indeed, the trial court's characterization of the investigation as "targeted" is clear error.  This so-called targeted investigation sweeps across more than 40 categories of documents far removed from any conceivable relationship to the castle transactions.  Whatever pretext Respondent had to initiate her investigation, she has been given sufficient information regarding the castle transactions to show that there was no impropriety or violation of law, and continued attempts to enforce the subpoena are a mere fishing expedition to unmask those who are entitled to remain anonymous.  Whether the rule is derived from the First Amendment ("a reasonable assessment of the burdens imposed by disclosure should begin with an understanding of the extent to which the burdens are unnecessary." *Americans for Prosperity Foundation v Bonta*, 141 SCt 2373, 2385 [2021]), or New York's own case law ("[No] agency of government may conduct an unlimited and general inquisition into the affairs of persons within its jurisdiction solely on the prospect of possible violations of law being discovered." *Myerson v. Lentini Bros. Moving & Storage Co*, 33 NY2d 250, 256 [1973] (*quoting Matter of A'Hearn v Committee on Unlawful Practice of Law of NY County Lawyers' Ass'n*, 23 NY2d 916, 918 [1969]), this harassing inquisition is unlawful and cannot survive scrutiny.

- 14 -

A.    RESPONDENT HAS NO COMPELLING GOVERNMENT
      INTEREST IN SEEKING THE IDENTITIES OF VDARE'S
      CONTRACTORS

VDARE recognizes that "even a significant infringement on [a subpoena

recipient's] First Amendment rights may be sustained, so long as [issuer] has

sufficiently established that issuance of the subpoenas is related to a compelling

governmental interest." *Matter of New York State Senate Republican Campaign

Comm v Sugarman*, 165 AD3d 1536, 1540 [3rd Dept, 2018].  However, if New

York (which professes to hold state actors to an even more exacting standard than

the First Amendment where freedom of speech is concerned, *e.g. Immuno AG v

Moor-Jankowski*, 77 NY2d 235, 249 [1991]), is earnest about safeguarding speech,

Respondent's office should have been required to limit her initial inquiries to the

castle.  Because if she truly had valid concerns, they would have started and ended

with such inquiries.  That is because Respondent was required to also "establish

that the subpoena[ is] narrowly tailored to effectuate said government interest[.]"

*Sugarman*, *supra*. at 1540-41.

Yet we know that Respondent has refused to follow that path.  *R. 355, 367,

369, 394.*  Given the opportunity to lay the castle transactions to rest, she instead

confirmed her intention to enforce her subpoena in court, where she would

misrepresent not only the castle transactions, but delve into all manner of irrelevant

- 15 -

material, such as alleged violations of *de minimis* technicalities from decades ago, *e.g. R. 50*, where Respondent trumpets putative violations from 2008 and even earlier of the registration requirements of Executive Law § 172(1) – the statute of limitations on such technicalities would have run years ago under either CPLR 214(2) or CPLR 21(1); or the picayune complaint that Lydia Brimelow was not identified as Peter Brimelow's wife on an IRS Form 990 in 2020 ( *R. 51*), despite the fact that Peter and Lydia Brimelow publicly hold themselves out as a married couple and file their income taxes jointly.  *R. 356.*

As for the castle transactions, Respondent misrepresented them before the tribunal.  At *R. 35-36*, Respondent stated:

> In December 2020, VDARE conveyed the entirety of the Berkeley Springs Castle property—bought with charitable funds—to two West Virginia corporations incorporated by Lydia Brimelow, Peter's wife and a VDARE director, five months earlier. VDARE conveyed the castle itself and the land that it sits on to the Berkeley Castle Foundation (BCF), a putative nonprofit corporation.  And it conveyed the remaining land, consisting of eight parcels, to BBB, LLC, a for-profit corporation. Id. ¶ 28. These transactions by a New York charitable not-for-profit require submission of a petition by VDARE for review and approval by the Attorney General or the Supreme Court under Sections 510, 511, or 511-a of the Not-for-Profit Corporation Law. Each transaction also would require, under Section 509 of the N-PCL, approval by disinterested members of the VDARE Board of Directors. Because the Brimelows were together two of VDARE's three directors according to VDARE's 2020 Form 990 (the third being Peter

- 16 -

Brimelow's brother), no approval by disinterested directors could possibly have been granted.

Each of the castle and compensation transactions is also a "related-party transaction" under Section 715 of the Not-For-Profit Corporation Law that requires review by disinterested board members to ensure fair consideration and examination of alternatives, contemporaneous record-keeping, and proper disclosure on Schedule L of the IRS 990...

The above is rife with false and misleading statements of fact or law. Most importantly, VDARE, through action by its board, did not deed its castle and grounds to two separate entities controlled by the Brimelows. Instead, VDARE deeded the castle and grounds to two separate entities: BBB, LLC *( R. 188*) and the Berkeley Castle Foundation, Inc. ( *R.186*), which are controlled by the VDARE Foundation itself, not by the Brimelows.

The Berkeley Castle Foundation, for example, is an IRS "Type II supporting organization," (*R.197*)  organized – like VDARE – for charitable purposes.   (The organization it supports is, quite obviously, VDARE itself.)

As for BBB, LLC, it is wholly owned by VDARE itself.  As such, it cannot be accurately characterized simply as a "Brimelow-controlled entity" ( *R. 45*), let alone a "for profit corporation held by the Brimelows" ( *R. 10*);  nor can Lydia Brimelow be conflated with BBB, LLC, itself, which Respondent does where her office states,  "...Lydia Brimelow signed the document [viz. the lease at *R. 375-*

- 17 -

*379*] as both landlord and tenant... At best, therefore, the lease shows that Lydia Brimelow has been paying rent to herself to live on the castle property." *R. 339.*

On the contrary, it is well settled that a corporation exists separate and apart from its individual members or stockholders, let alone its officers and directors. *e.g. Harris v Stony Clove Lake Acres Inc*, 202 AD2d 745, 747 [3rd Dept, 1994] (numerous citations omitted). Corporate property is vested in the corporation itself, and not in the stockholders, and not its officers or directors. "Property of the corporation... belongs to it and not to the stockholders." *Popkin v Dingman*, 366 FSupp 534, 539 [SDNY 1973]. Although a corporation's independent existence cannot be ignored (*Seagroatt Floral Co, Inc, Matter of* 78 NY2d 439, 450 [1991]), Respondent has consistently ignored this fundamental principle.

Lydia Brimelow would be her own landlord and paying rent to herself only if she or Peter Brimelow owned BBB, LLC. But they do not. Lydia Brimelow may be involved in the operation of BBB, LLC, but that is simply because she is also involved in the operation of VDARE itself. And Respondent knows as much.

Of note, Respondent made further misrepresentations of the facts and law to the trial court. Citing "Sections 510, 511, or 511-a of the Not-for-Profit Corporation Law", the quoted paragraph above goes on to assert flatly that the castle transactions deeds  "require[d] submission of a petition by VDARE for

- 18 -

review and approval by the Attorney General or the Supreme Court." *But this is plainly not true*. Sections 510, 511, or 511-a of the Not-for-Profit Corporation Law require review and approval of the Attorney General or the Supreme Court only where there is a disposition of all or substantially all of the assets of the charitable corporation. And, here, Respondent knew (in advance of the court filing) that the castle deeds were not "all or substantially all" of VDARE's assets. VDARE's tax return for 2019 (which Respondent herself supplied to the court) showed net assets of $3,544,673 at the end of 2019. *R. 127.* As Respondent acknowledged, the entire property (castle and all lands) had only been acquired in a fair market transaction early the following year for approximately $1.4 M. *R. 52.* Even if VDARE had not deeded the properties to entities it controlled, there is no conceivable way that $3.5M less $1.4M would leave VDARE bereft of "all or substantially all" its assets, and thus there is no path by which the castle deeds cut a way to potential violations of Sections 510, 511, or 511-a of the Not-for-Profit Corporation Law.

Nor did the transactions require "under Section 509 of the N-PCL, approval by disinterested members of the VDARE Board of Directors." *R. 36.* That false statement implies that the deeds went to entities in which the Brimelows held a

- 19 -

personal interest, which is simply not the case.  It is (once again) a repetition of the

fundamental mistake of disregarding VDARE's corporate existence.

Finally, "the castle and compensation transactions" were not "related-party

transaction" in violation of "Section 715 of the Not-For-Profit Corporation law."

On the contrary, related party transactions under Section 715 are those in which

"any director, officer or key employee" of the charitable organization "has an

interest" in the party of the second part.  And once again this turns out not to be the

case, for the "person" interested in BBB, LLC and Berkeley Castle Foundation,

Inc. is not a Peter Brimelow or a Lydia Brimelow: it is VDARE itself.  The

VDARE board is not required to be disinterested as to VDARE itself; in fact it is

duty bound under Not-for-Profit Corporation Law § 717 to act in good faith for

VDARE's interests.

Almost every word Respondent has stated at *R. 35-36* about the castle

transactions is a false and misleading statement of fact and law to a tribunal.  Yet

the castle transactions were supposed to be the "critical facts that first triggered

[Respondent's] scrutiny." *R. 10 and R. 339.*  Stripped of Respondent's deliberate

lies about the castle transactions, Respondent is left with picayune complaints

about *de minimis* technicalities. Such inquiries do not justify the breadth of the

- 20 -

three subpoenas, especially the attempt to deanonymize those with the right to speak and associate anonymously.

Furthermore, the 6,000 pages of documents already produced (*R.6*) are by now more than enough to answer and lay to rest these trivial inquiries. Demanding that VDARE continue on with the massive administrative burden of producing another 40 gigabytes of data – a truly monumental amount of data – chasing after these petty phantoms bespeaks nothing other a desire to punish VDARE for its speech.

Quite aside from Respondent's admission, such a sweeping inquiry tethered to such *de minimis* concerns reveals Respondent's conduct for what it is: an "unlimited and general inquisition" calling for "irrelevant and immaterial documents" meant to harass VDARE (an ideological adversary of James's professed politics – *R.321-322* ). *Myerson v Lentini Bros Moving & Storage Co* at 256. It manifestly does not survive the strict or "careful" scrutiny required by the First Amendment or New York's own constitution. *Evergreen Ass'n, Inc v Schneiderman*, 153 AD3d 87, 100 [2nd Dept, 2017] . Such being the case, Respondent should be told, in no uncertain terms, that this subpoena is invalid and should not be enforced. *Grotallio v. Soft Drink Leasing Corp.*, 468 NYS2d 4, 5-6, [1st Dept, 1983].

B.    THE SUBPOENA IS NOT NARROWLY TAILORED AND INVADES THE RIGHT TO SPEAK AND ASSOCIATE ANONYMOUSLY

Seeking the identities of anonymous writers engaged in core political speech puts Respondent squarely at odds with decades of free speech jurisprudence (*Talley v California*, 362 US 60, 64-65 [1960]; *McIntyre v Ohio Elections Commission*, 514 US 334, 342 [1995]), as does her demand for third party contractors who deal with a controversial entity such as VDARE. *Evergreen Ass'n, Inc v Schneiderman* at 100; *Brown v Socialist Workers '74 Committee (Ohio)* at 96. "A party who objects to a discovery request as an infringement of the party's First Amendment rights is in essence asserting a First Amendment privilege." *Perry v Schwarzeneggar*, 591 F3d 1147, 1160 [9th Cir, 2009]. "That privilege protects against a forced '[d]isclosure[ ] of political affiliations and activities] that would have a deterrent effect on the exercise of free speech or freedom of association rights." *La Union Del Pueblo Entero v. Abbott*, No. SA-21-CV-00844-XR, 2022 U.S. Dist. LEXIS 222064, *28 (W.D. Tex. Dec. 9, 2022), *quoting Perry* at 1160. Thus, Respondent must justify her invasive subpoena "in light of any less intrusive alternatives." *Bonta* at 2386.

Even assuming there is at least "smoke" (although certainly no "fire") surrounding the castle transactions, there is still no justification for this invasive

- 22 -

subpoena, which delves into the identity of anonymous writers engaged in core political speech, contractors with a controversial entity who enjoy the shield of secrecy, and which otherwise seeks numerous records (across over 40 different categories) going back years that have no conceivable bearing on the castle transactions. *R. 234–238.*

The trial court undertook no independent analysis of the intrusion into the First Amendment right of anonymity — instead, it copied and pasted directly from Respondent's submission.  One need only look at page 8 of that decision to see how the trial court copied, verbatim, Respondent's argument "To the extent anonymity is used to mask violations of the law, 'it is unprotected by the First Amendment.'" (*quoting Arista Recs, LLC, v Doe 3*, 604 F3d 110, 118 (2nd Cir. 2010).  *Compare R. 11 with R. 45.*  In fact, nearly every word of the state court decision addressing the First Amendment issue is copied verbatim from Respondent's memorandum.

Yet a trial court should not "mechanically adopt[]" a party's submission, as they are "not the product of the workings of the [trial] judge's mind" and fail to provide "the insight of a disinterest mind". *United States v El Paso Natural Gas Co*, 376 US 651, 656-657 [1964].  New York courts agree it is improper for a trial judge to make a "wholesale, verbatim adoption" of a party's submission.  *Capasso*

- 23 -

*v Capasso*, 119 AD2d 268, 275 [1st Dept, 1986].   Judicial plagiarism cannot be suborned.

Moreover, one need only read *Arista Recs* to see that Respondent unethically misrepresented the holding of that case, and that the trial court was seriously misled in blindly copying Respondent's memorandum.  *Arista Recs* was a copyright infringement case where the Doe alleged infringer moved to quash a subpoena that would identify him.  In assessing the motion, the District Court used the standard laid out in *Sony Music Entm't Inc v Doe*, 326 FSupp2d 556, 564-65 [SDNY, 2004], setting forth the factors under which a subpoena may be quashed in the face of the First Amendment privilege of anonymity:

1.    [the] concrete[ness of the plaintiff's] showing of a prima facie claim of actionable harm, . . .

2.    [the] specificity of the discovery request, . . .

3.    the absence of alternative means to obtain the subpoenaed information, . . .

4.    [the] need for the subpoenaed information to advance the claim, . . . and

5.    the [objecting] party's expectation of privacy.

*Arista Recs, LLC v Doe 3* at 119.

- 24 -

While that standard references the "plaintiff", it is referring to and placing the burden on the party issuing the subpoena, which would be Respondent James. Respondent has not referenced, let alone attempted, to satisfy this burden. She cannot.

First, Respondent issued an investigatory subpoena, not one issued in the course of pursuing a claim for actionable harm. She is engaged in a mere fishing expedition, with a pretext of hunting down the misuse of charitable assets, but which is actually in retaliation for core First Amendment speech. Respondent identifies no actionable harm — only vague references to "violations of New York Law" ( *R. 30*) if confirmed. Thus, Respondent fails to meet the first factor — there is no prima facie claim of actionable harm.

Second, the subpoena requests, to the extent they require deanonymization of contractors (*i.e.* contributors and vendors), are not specific to the purported potential violations of unspecified law. As outlined in the Fuchs Affidavit ( *R. 56-57*), there is a) the absence of an independent auditor report in 2019, which has nothing to do with the identity of contractors (hereinafter "WHNTDWTIOC"); b) the absence of a process for determining Peter Brimelow's salary, WHNTDWTIOC; c) Mr. Brimelow's 2019 salary, WHNTDWTIOC; d) the payment of Mr. Brimelow's salary through Happy Penguins, LLC,

- 25 -

WHNTDWTIOC; e) additional payments to Happy Penguins, WHNTDWTIOC; f) the reporting of the specific position of Lydia Brimelow, WHNTDWTIOC; and g) a conflict of interest policy and disclosures of transactions and benefits to the Brimelows, WHNTDWTIOC. Also, Fuchs vaguely references concern over ads purchased on Facebook, WHNTDWTIOC *( R. 57 at ¶ 36)*. Thus, Respondent fails to meet the second factor for lack of specificity.

Similarly, as to the fourth factor, Respondent has not identified her need for the deanonymization of contractors with respect to the vague assertions of potential violations of law. While VDARE recognizes that Respondent is looking for potentially improper transactions with the Brimelows, a subpoena request to deanonymize all contractors is not tailored to the question. The Brimelows are not the anonymous contractors at issue. VDARE does not believe it has withheld any documents or redacted any information relating to the Brimelows that is within the purview of the subpoena.

If the trial court wished to compare the redacted and unredacted documents in camera and under seal to confirm this, VDARE would comply, but the Court may otherwise rely on the fact that VDARE produced these documents with the assistance of counsel who, as officers of the Court, would ethically have been

required to ensure the Brimelows' names and transactions relating to them were not redacted.

Moreover, Respondent has stated she does "*not* seek any information regarding the development or publication of VDARE's online opinion or analytical content" ( *R. 37* – emphasis in original), which eliminates her need to know the identity of anonymous contributors and vendors. Thus, as the issue is solely about the anonymity of non-interested persons, outside the scope of potential conflicts of interest, Respondent fails to meet the fourth factor, as she does not need such information to advance any claim.

Finally, as to the fifth factor, the anonymous contractors have an expectation of privacy.  As the Court knows, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v Burns*, 427 US 347, 373 [1976].  Respondent cannot guarantee that deanonymized contractors' identities will not be leaked – indeed she failed to contest the fact that her office was guilty of precisely such misconduct regarding another conservative group in 2022.  *R. 27.*

VDARE's position is comparable to *Patterson*, where there was "an uncontroverted showing that on past occasions revelation of the identity of its rank-and-file members has exposed these members to economic reprisal, loss of

employment, threat of physical coercion, and other manifestations of public hostility." *NAACP v Alabama ex rel Patterson*, 357 US 449, 461 [1958]. Where such is the case, it is "apparent that compelled disclosure" is "likely to affect adversely the ability" of VDARE to publish and attempt to persuade others of its mission and will certainly "dissuade others from joining it because of fear of exposure of their beliefs shown through their associations and of the consequences of this exposure." *Id.* at 462-463. Imposing on "associational rights" "cannot be justified on the ground that the regime is narrowly tailored to investigating charitable wrongdoing." *Americans for Prosperity Found. v. Bonta* at 2389. Subpoenas which could have "a chilling effect on its associations with its employees and potential clients" by breaking anonymity are invalid. *Evergreen Ass'n, Inc v Schneiderman* at 100. *See also Brown v Socialist Workers '74 Committee (Ohio)* at 96 ("Even individuals who receive disbursements for 'merely' commercial transactions may be deterred by the public enmity attending publicity, and those seeking to harass may disrupt commercial activities on the basis of expenditure information. … Compelled disclosure of the names of such recipients of expenditures could therefore cripple a minor party's ability to operate effectively and thereby reduce the free circulation of ideas both within and without the political arena." (internal quotation marks omitted)).

- 28 -

The loss of the First Amendment right to anonymity is fully substantiated by the Verified Complaint, executed under penalty of perjury by Lydia Brimelow. *R. 334*.

Simply put, Respondent (and the trial court) failed to show that the factors endorsed by *Arista Recs* warrant judicial evisceration of the First Amendment right to anonymous speech and association here.  VDARE has shown that compliance with the subpoena will result in (1) harassment, withdrawal, or discouragement of new association, or (2) other consequences which objectively suggest an impact on, or chilling of, the members' associational rights.  *Perry* at 1160.  And, Respondent did not show that her interest in the information sought through the subpoena is sufficient to justify the deterrent effect on the free exercise of the constitutionally protected right of association. *Id*. at 1161.  Thus, the subpoena fails First Amendment scrutiny.  VDARE must not be compelled to disclose documents that would identify its anonymous creators and vendors.

## CONCLUSION

In light of the foregoing, VDARE respectfully requests that the order granting Respondent's petition and enforcing the subpoena, and denying VDARE's motion to dismiss, be reversed and the matter remanded for entry of a judgment of dismissal or, at a minimum, vacated and remanded for further proceedings.

Frederick C. Kelly
_____
Frederick C. Kelly, Esq.

## <u>PRINTING SPECIFICATIONS STATEMENT</u>

Pursuant to 22 NYCRR § 1250.8(j) the foregoing brief was prepared on a computer.

*Type*:  A proportionally spaced typeface was used as follows:

Name of typeface: Times New Roman

Point size:            14

Line spacing:        Double

*Word Count:*  The total number of words in the brief, inclusive of point headings and footnotes and exclusive of pages containing the table of contents, table of authorities, proof of service, printing specifications statement, or any authorized addendum containing statutes, rules, regulations, etc. is 6,070.

**STATEMENT PURSUANT TO CPLR 5531**

# New York Supreme Court

## APPELLATE DIVISION — FIRST DEPARTMENT



PEOPLE OF THE STATE OF NEW YORK,
BY LETITIA JAMES, ATTORNEY GENERAL
OF THE STATE OF NEW YORK,

*Petitioner-Respondent,*

*against*

VDARE FOUNDATION, INC.,

*Respondent-Appellant.*

_____

1.  The index number of the case in the Court below is 453196/2022.

2.  The full names of the original parties are set forth above. There has been no change to the caption.

3.  The action was commenced in the Supreme Court, New York County.

4.  This action was commenced on or about December 16, 2022, by the filing of a Verified Petition. No Answer was filed and served.

5.  The nature and object of the action: verified petiton to compel respondent to comply with subpoena.

6.  The appeal is from the Decision and Order of the Honorable Sabrina Kraus, dated January 23, 2023.

7.  This appeal is being perfected with the use of a fully reproduced Record on Appeal.