Case 1:25-cv-00810-MAD-ML    Document 40-12    Filed 01/06/26    Page 1 of 55

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| PEOPLE OF THE STATE OF NEW YORK, by LETITIA JAMES, Attorney General of the State of New York, | Index No. |
| **Plaintiff,** | |
| v. | **Summons** |
| VDARE FOUNDATION, INC., PETER BRIMELOW, and LYDIA BRIMELOW, | Date Index No Purchased: September 3, 2025 |
| **Defendants.** | |

TO THE ABOVE NAMED DEFENDANTS:

You are hereby summoned to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's attorney within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

The basis of venue pursuant to CPLR § 503(a) is that Plaintiff is located in New York County, with its address at 28 Liberty Street, New York, New York 10005, and because the office of defendant VDARE Foundation, Inc, is in New York County, as set forth in its certificate of incorporation, pursuant to N-PCL §§ 1110 and 102(a)(11).

Dated:    New York, New York
          September 3, 2025

LETITIA JAMES
Attorney General of the
State of New York

By:    */s/ James Sheehan*
       JAMES SHEEHAN
       Charities Bureau Chief
       James.Sheehan@ag.ny.gov
       28 Liberty Street
       New York, New York 10005

1

Tel. (212) 416-8401

MEGHAN FAUX, *Chief Deputy Attorney General for Social Justice*
EMILY STERN, *Section Chief, Charities Bureau*
RICHARD SAWYER, *Section Chief, Civil Rights Bureau*
RACHEL FINN, *Assistant Attorney General*
BENJAMIN D. LIEBOWITZ, *Assistant Attorney General*
*Of Counsel*

TO:    VDARE FOUNDATION, INC.
276 Cacapon Road
Berkeley Springs, West Virginia 25411

C/O New York Secretary of State
One Commerce Plaza, 99 Washington Ave
Albany, NY 12231-0001

LYDIA BRIMELOW
304 Stucco Drive
Berkeley Springs, WV 25411

PETER BRIMELOW
304 Stucco Drive
Berkeley Springs, WV 25411

2

Case 1:25-cv-00810-MAD-ML    Document 40-12    Filed 01/06/26    Page 3 of 55

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

|  |  |
|---|---|
| PEOPLE OF THE STATE OF NEW YORK, by LETITIA JAMES, Attorney General of the State of New York, | Index No. |
| Plaintiff, | |
| v. | **Verified Complaint** |
| VDARE FOUNDATION, INC., PETER BRIMELOW, and LYDIA BRIMELOW, | |
| Defendants. | |

# TABLE OF CONTENTS

COMPLAINT ...........................................................................................................................1

THE PARTIES..........................................................................................................................3

JURISDICTION AND VENUE ...............................................................................................5

APPLICABLE LAW .................................................................................................................6

I.    The Attorney General's Statutory Authority to Bring Actions to Remove Board Members, to Seek an Accounting of Misspent Funds, and to Seek the Dissolution of Not-for-Profit Corporations ........................................................................................ 6

II.    Legal Requirements for New York Charities and their Officers, Directors, and Key Persons.................................................................................................................... 7

III.    Registration and Reporting Requirements for New York Charitable Not-for-Profit Corporations............................................................................................................ 10

FACTUAL ALLEGATIONS ..................................................................................................12

IV.    VDARE operates with lax oversight by its board of directors—to the Brimelows' personal benefit........................................................................................................ 12

V.    Lydia Brimelow purchased the Castle Complex with the bulk of VDARE's assets and conveyed it piecemeal to a network of Brimelow-affiliated corporations.......................... 15

VI.    Lydia and Peter Brimelow conveyed the Castle Complex to a network of corporations that they established and controlled....................................................................... 18

VII.    The Brimelows transfer VDARE's charitable funds to BCF and BBB under the guise of "lease" payments and "loans."............................................................................... 22

VIII.    The Brimelows give Lydia Brimelow authority to dispose of VDARE's remaining real property interests, and she conveys them to a company associated with her father............ 23

IX.    Following regulatory scrutiny by OAG, the Brimelows accelerate funds transfers from VDARE to their network of out-of-state corporations. ...................................................... 25

X.    VDARE runs out of money and winds up operations. ......................................................... 27

XI.    BCF continues even after VDARE has ceased operations. ................................................. 28

XII.    VDARE failed to maintain a statutorily satisfactory conflict of interest policy or ensure compliance with its conflicts of interest policy. ................................................................. 30

XIII.    VDARE failed to comply with regulatory reporting requirements. .................................. 30

    a.    Failure to Make Required Annual Filings ................................................... 30

    b.    VDARE Continues to Solicit Donations Despite Failing to File Annual Reports ..... 31

    c.    Certification of False or Misleading Annual Filings ................................................. 32

THE ATTORNEY GENERAL'S INVESTIGATION AND VDARE'S UNLAWFUL INTERFERENCE .......................................................................................................................33

i

Case 1:25-cv-00810-MAD-ML   Document 40-12   Filed 01/06/26   Page 5 of 55

CAUSES OF ACTION ................................................................................................36

FIRST CAUSE OF ACTION For Breach of Fiduciary Duty Under N-PCL §§ 717 and 720 and Removal Under N- PCL §§ 706(d) and 714(c) (Against the Individual Defendants) ...................36

SECOND CAUSE OF ACTION For Breach of EPTL § 8-1.4 (Against the Individual Defendants) ..............................................................................................................37

THIRD CAUSE OF ACTION  Wrongful Related-Party Transactions  N-PCL §§ 112(a)(10), 715(f) and EPTL § 8-1.9(c)(4)................................................................................38

FOURTH CAUSE OF ACTION For Loans in Violation of N-PCL § 716 (Against the Individual Defendants) ..............................................................................................................40

FIFTH CAUSE OF ACTION Wrongful Related-Party Transactions – N-PCL §§ 112(a)(10), 715(f) and EPTL § 8-1.9(c)(4).................................................................................41

SIXTH CAUSE OF ACTION For Breach of EPTL § 8-1.4 (Against Defendant VDARE) ..42

SEVENTH CAUSE OF ACTION Illegal Solicitation of Donations Under Executive Law §§ 172, 172-b, 172-d(10) and 175(2)(d) and N-PCL §§ 112 and 115 ......................................43

EIGHTH CAUSE OF ACTION For False or Deficient Filings Under Executive Law §§ 172, 172-b 172-d(1) and 175(2)(d)...............................................................................43

NINTH CAUSE OF ACTION Failure to Obtain Court of OAG Approval for the Sale of BBB as Required by N-PCL §§ 510, 511, 511-a ....................................................................44

TENTH CAUSE OF ACTION Dissolution of VDARE – N-PCL §§ 112(a)(1), 112(a)(5), 520, 1101(a)(2) .............................................................................................................45

ELEVENTH CAUSE OF ACTION Dissolution of VDARE– N-PCL §§ 112(a)(7), 1102(a)(2)(D).........................................................................................................46

PRAYER FOR RELIEF ...........................................................................................47

VERIFICATION......................................................................................................50

ii

Case 1:25-cv-00810-MAD-ML   Document 40-12   Filed 01/06/26   Page 6 of 55

The People of the State of New York, by their attorney, Letitia James, Attorney General of the State of New York, allege the following:

## COMPLAINT

1. The Attorney General brings this action pursuant to the New York Not-for-Profit Corporation Law ("N-PCL"), the Estates, Powers and Trust Law ("EPTL"), and the New York Executive Law ("Exec. L.") against Defendant VDARE Foundation, Inc. ("VDARE"), a New York charitable not-for-profit corporation; its founder and former-Chairman, Chief Executive Officer, and President, Defendant Peter Brimelow; and the corporation's current President (and Peter Brimelow's wife), Defendant Lydia Brimelow (together with Peter Brimelow, the "Brimelows" or "Individual Defendants"), for violating the laws governing charitable not-for-profit corporations and their fiduciaries.

## PRELIMINARY STATEMENT

2. The Attorney General seeks restitution and penalties for Peter and Lydia Brimelow's misuse of VDARE's charitable assets. The Attorney General also seeks the formal dissolution of VDARE, which announced that it ceased operations after the Brimelows transferred VDARE's most valuable assets to other organizations under their control. Despite announcing its voluntary closure, VDARE has continued to solicit donations in violation of New York law.

3. VDARE was founded as a New York charitable not-for-profit. Like all such entities, VDARE has obligations under New York law to spend charitable assets consistent with its mission.

4. For years, however, the Brimelows have run VDARE as a self-proclaimed "mom-and-pop operation[]" for their own benefit with little regard for corporate formalities meant to protect its charitable assets. For its entire existence, VDARE's board of directors has consisted of

1

Case 1:25-cv-00810-MAD-ML    Document 40-12    Filed 01/06/26    Page 7 of 55

Peter Brimelow, his wife and other family members or Peter Brimelow's close friends. This tightly controlled board consistently overlooked or rubber-stamped self-dealing by the Brimelows.

5.  Peter Brimelow, who is now in his 70s, has described the nonprofit VDARE as an asset that "I had hoped to leave to my young wife and our children after I am gone." Consistent with that misguided view, the Brimelows took advantage of the board's lax oversight to enrich themselves at VDARE's expense. Since 2019, working with Lydia Brimelow's father, the Brimelows have orchestrated a scheme whereby they transferred the bulk of VDARE's charitable assets to a network of out-of-state corporations they control.

6.  In 2020 the Brimelows used $1.4 million of VDARE's funds to purchase a medieval-style castle and its grounds in Berkeley Springs, West Virginia (the "Castle" or "Castle Complex"), where they set up residence for themselves and their family members. While they continued to reside on the property, they then transferred it—VDARE's most valuable asset—to two West Virginia corporations controlled by the Brimelows. These transfers were never approved by independent, disinterested directors, as required by law.

7.   After conveying the Castle Complex, VDARE continued transferring funds to and from the other Brimelow-controlled entities in the form of "rent," "loans," purported mortgage payments, and other transfers. In all, VDARE transferred over a million dollars in charitable funds to Brimelow-controlled entities. Like the Castle transfer, these payments were made without independent director approval as required by law.

8.  As the final step in the Brimelows' shell game, VDARE transferred its remaining interest in the Castle Complex to yet another out-of-state, for-profit entity affiliated with a VDARE insider—Lydia Brimelow's father. This transfer happened without adequate consideration or independent board approval.

2

Case 1:25-cv-00810-MAD-ML Document 40-12 Filed 01/06/26 Page 8 of 55

9. The Brimelows then announced that VDARE would cease operations entirely and closed its website. When ceasing operations, the board had a duty to dissolve VDARE in accord with the law. Nonetheless, VDARE continues to seek contributions and has not sought approval to dissolve from the Attorney General or the Court, as required by law.

10. At the time that VDARE ceased operations, it had conveyed over $1.7 million in cash and real estate assets to an out-of-state not-for-profit run by Lydia Brimelow.

11. For more than three years, VDARE has actively impeded a lawful regulatory investigation by the New York Office of the Attorney General ("OAG") into those transactions and its governance and finances. OAG has the statutory obligation to ensure VDARE's compliance with New York law. But, in response to an OAG investigatory subpoena, issued after the Castle transfers, VDARE spent years delaying a response and fighting the subpoena in court. Despite court rulings rejecting its challenges to the subpoena—and two contempt findings issued by this Court—VDARE remains in violation of its obligations to comply with OAG's subpoena. It owes tens of thousands of dollars in contempt penalties, which it has not begun to pay, and contempt fines are still accruing.

12. Despite VDARE's efforts at interference and concealment, OAG uncovered ample evidence that for years the Brimelows have improperly controlled the operations of VDARE and a network of related entities; flouted the corporate form; and repeatedly violated New York law designed to protect charitable assets. Based on this investigation, the Attorney General now brings this action on behalf of the People of New York for restitution, penalties, and the dissolution of VDARE's now, and self-declared, defunct corporation.

**THE PARTIES**

13. Plaintiff is the People of the State of New York, by the Attorney General. The Attorney General is responsible for overseeing the activities of New York charities and not-for-

3

Case 1:25-cv-00810-MAD-ML   Document 40-12   Filed 01/06/26   Page 9 of 55

profit organizations and the conduct of their officers, directors, and key persons, in accordance with the N-PCL, EPTL, and Executive Law.

14. Defendant VDARE was initially incorporated in December 1999 as "The Lexington Research Institute, Ltd," a Type B corporation under the N-PCL and changed its name to VDARE Foundation, Inc. in or around 2006 (as used in this complaint, "VDARE" refers to the corporation under either name). It is a charitable not-for-profit corporation organized under the laws of the State of New York. Pursuant to VDARE's certificate of incorporation, "the office of the Corporation shall be in New York County." VDARE engages in fundraising throughout the United States, including in New York. VDARE is classified as a public charity under Section 509(a)(1) of the Internal Revenue Code and has been recognized as tax-exempt under Section 501(c)(3) of the Internal Revenue Code by the IRS since in or around May 2001.

15. Defendant Peter Brimelow was a founder of VDARE in 1999 and, at all times relevant herein an officer, director or "key person" within the meaning of N-PCL § 102(a)(25), having held the positions of director, board chairman, Chief Executive Officer, and President, until July 2024. Brimelow remains involved in VDARE's affairs.

16. Defendant Lydia Brimelow has held numerous titles and roles at VDARE and was, at all times relevant herein an officer, director or "key person" within the meaning of N-PCL § 102(a)(25), and held the positions of VDARE Chief Advancement Officer, Treasurer, Secretary, President, Chief Operating Officer, and Publisher.

17. Peter and Lydia Brimelow maintain an office at The Berkeley Springs Castle, 276 Cacapon Road, Berkeley Springs, WV 25411, and reside on the premises of the Berkeley Springs Castle Complex at 304 Stucco Drive, Berkeley Springs, WV 25411.

4

Case 1:25-cv-00810-MAD-ML Document 40-12 Filed 01/06/26 Page 10 of 55

## JURISDICTION AND VENUE

18. This Court has subject-matter jurisdiction over the claims in this suit pursuant to the N-PCL, EPTL, and Executive Law.

19. This Court has personal jurisdiction over VDARE pursuant to the N-PCL, EPTL, and Executive Law because it is a New York charitable not-for-profit corporation and has purposely availed itself of the opportunity to do business, solicit funds, and serve its charitable mission and beneficiaries in New York.

20. This Court has personal jurisdiction over defendants Peter Brimelow and Lydia Brimelow (the "Individual Defendants") pursuant to N-PCL § 309 because "by becoming a director, officer, key person or agent of a corporation [each Individual Defendant] is subject to the personal jurisdiction of the supreme court of the state of New York, and in an action or proceeding by the attorney general under [the N-PCL] the process may be served….as provided in [CPLR § 313]."

21. This Court also has personal jurisdiction over the Individual Defendants pursuant to CPLR § 302(a) because in their roles as officers, directors, and key persons of VDARE, they have transacted business within the state on behalf of a New York chartered not-for-profit corporation and purposefully availed themselves of the privileges and protections, and assumed the obligations, of New York law. Plaintiff's claims in this matter as alleged herein against each of the Individual Defendants arise out of the Individual Defendants' purposeful conduct and transaction of business in New York, and each of the Individual Defendants' conduct has caused harm in New York.

22. Venue is properly set in New York County pursuant to (a) CPLR § 503 because the Attorney General has an office in the county; and (b) N-PCL §§ 1110 and 102(a)(11), because the office of VDARE is in New York County as set forth in the VDARE's certificate of incorporation.

5

Case 1:25-cv-00810-MAD-ML    Document 40-12    Filed 01/06/26    Page 11 of 55

## APPLICABLE LAW

I.    **The Attorney General's Statutory Authority to Bring Actions to Remove Board Members, to Seek an Accounting of Misspent Funds, and to Seek the Dissolution of Not-for-Profit Corporations**

23.    The Attorney General has a wide range of supervisory powers over charitable not-for-profit corporations organized under the laws of New York State, and over the trustees of property held for charitable purposes.

24.    The Attorney General's regulatory oversight of charitable not-for-profit corporations, and their officers, directors, and key persons, includes the authority to bring actions under Section 112 and Article 7 of the N-PCL to remove officers and directors for cause, including for breach of their fiduciary duties; obtain relief as a result of prohibited related party transactions; and enforce any right given to an officer or a director of a charitable corporation. N-PCL §§ 112, 706(d), and 714(c)

25.    New York law further provides the Attorney General with supervisory authority pursuant to the EPTL over "trustees for charitable purposes," which includes "any individual, group of individuals, executor, trustee, corporation or other legal entity holding and administering property for charitable purposes" and "any non-profit corporation organized under the laws of this state for charitable purposes." EPTL § 8-1.4. The Attorney General has the legal authority "to institute appropriate proceedings…to secure the proper administration of any trust, corporation, or other relationship to which this section applies." EPTL § 8-1.4(m).

26.    The Attorney General is authorized to regulate and investigate trustees and the trustees' administration of property held for charitable purposes, and that authority "shall apply regardless of any contrary provisions of any instrument and shall be liberally construed so as to

6

Case 1:25-cv-00810-MAD-ML   Document 40-12   Filed 01/06/26   Page 12 of 55

effectuate its general purpose of protecting the public interest in charitable uses, purposes and dispositions." EPTL § 8-1.4(n).

27.      Under Article 11 of the N-PCL, the Attorney General may bring an action or special proceeding to dissolve a not-for-profit corporation where the corporation has exceeded the authority conferred upon it by law; carried on, conducted or transacted its business in a persistently fraudulent or illegal manner, or by the abuse of its powers contrary to public policy of the state; where the directors or members in control of the corporation have looted or wasted the corporate assets, have perpetuated the corporation solely for their personal benefit, or have otherwise acted in an illegal, oppressive or fraudulent manner; or where the corporation has willfully failed to file annual reports mandated by law. N-PCL §§ 112(a)(1), 112(a)(5), 112(a)(7), 520, 1101(a)(2), 1102(a)(2).

## II.      Legal Requirements for New York Charities and their Officers, Directors, and Key Persons

28.      The duties, powers, and responsibilities of VDARE as a charitable not-for-profit corporation, and of VDARE's officers, directors, and key persons are governed by the EPTL, N-PCL, and Executive Law.

29.      Pursuant to EPTL § 8-1.4 trustees overseeing the administration of charitable assets, like VDARE and the Individual Defendants, must properly administer those assets.

30.      Pursuant to N-PCL §§ 701, 713 and 714, a not-for-profit corporation "shall be managed by its board of directors," which has the power to elect officers and remove them, with or without cause. Under N-PCL § 702(a), "[t]he number of directors constituting the entire board shall be not less than three."

31.      Pursuant to N-PCL § 717(a), directors, officers and key persons of a not-for-profit corporation such as VDARE are required to "discharge the duties of their respective positions in

7

good faith and with the care an ordinarily prudent person in a like position would exercise under similar circumstances."

32.     Under N-PCL § 720, directors, officers, or key persons may be compelled to account for the "neglect of, or failure to perform, or other violation of his duties in the management and disposition of corporate assets committed to his charge" or "[t]he acquisition by himself, transfer to others, loss or waste of corporate assets due to any neglect of, or failure to perform, or other violation of his duties."

33.     As a New York not-for-profit corporation, VDARE may only "pay compensation in a reasonable amount" to officers, directors, or members for services actually rendered. N-PCL § 515(b). "No person who may benefit from such compensation may be present at or otherwise participate in any board or committee deliberation or vote concerning such person's compensation[.]" *Id.*

34.     As a New York not-for-profit corporation, VDARE is barred by law from paying dividends and from distributing "any part of its income or profit to its members, directors, or officers." N-PCL § 515(a). Such distributions exceed the authority conferred upon VDARE by law, is beyond the capacity or power of VDARE under the N-PCL, and could subject it to annulment or dissolution under Sections 112(a)(1) and 1101(a)(2) of the N-PCL.

35.     Under N-PCL § 715 and EPTL § 8-1.9, as a charitable not-for-profit corporation VDARE is prohibited from entering into any related party transaction unless the transaction is determined and documented by the non-interested members of the Board, or an authorized committee of the Board, to be fair, reasonable, and in the corporation's best interest at the time of the determination.

8

Case 1:25-cv-00810-MAD-ML Document 40-12 Filed 01/06/26 Page 14 of 55

36. Related parties include any director, officer, or key person of the corporation or any affiliate of the corporation; their relatives; or any entity in which any of them has a thirty-five percent or greater ownership or beneficial interest. N-PCL § 102(23); EPTL § 8-1.9(a)(6). A related party transaction includes "any transaction, agreement or any other arrangement in which a related party has a financial interest and in which the corporation or any affiliate of the corporation is a participant." N-PCL § 102(24); EPTL § 8-1.9(a)(8).

37. In addition, every director, officer, trustee, or key employee who has an interest in a related party transaction must disclose in good faith to the board, or an authorized committee of the board, "the material facts concerning such interest," and the corporation must conduct a process to determine whether the transaction is fair, reasonable, and in the corporation's best interest before approving a related party transaction and document that process. N-PCL § 715; EPTL § 8-1.9. No related party may participate in deliberations or voting relating to a related party transaction in which he or she has an interest. N-PCL § 715(h); EPTL § 8-1.9(c)(6).

38. The Attorney General may bring an action to enjoin, void or rescind any related party transaction and seek restitution, including but not limited to, an amount up to "double the amount of any benefit improperly obtained" in the case of "willful and intentional conduct." N-PCL § 715(f)(4); EPTL § 8-1.9(c)(4).

39. Similarly, under New York Law, VDARE's board of directors is required to adopt, implement, and assure compliance with a conflict of interest policy that ensures that VDARE's trustees, directors, officers and key persons act in the corporation's best interest and comply with applicable legal requirements, including those concerning related party transactions. N-PCL § 715-a; EPTL § 8-1.9(d)(1). The policy must provide for annual conflict of interest disclosures by trustees and directors, and procedures for the disclosure and determination of conflicts of

9

INDEX NO. 452397/2025
NYSCEF DOC. NO. 1
RECEIVED NYSCEF: 09/03/2025

Case 1:25-cv-00810-MAD-ML   Document 40-12   Filed 01/06/26   Page 15 of 55

interest, which must prevent the person with the conflict from influencing the determination of the transaction giving rise to the conflict. *Id.* The policy also imposes recordkeeping requirements on the existence and resolution of conflicts. *Id.*

40.     Under N-PCL §§ 510, 511, and 511-a, as a charitable not-for-profit corporation VDARE is required to obtain approval of this Court or the OAG prior to any selling or otherwise disposing of "all, or substantially all, of its assets." N-PCL §§ 510.    When evaluating an application by a not-for-profit corporation to engage in a transaction concerning all, or substantially all, of its assets OAG or a court will consider whether "the consideration and the terms of the transaction are fair and reasonable to the corporation and that the purposes of the corporation or the interests of the members will be promoted." N-PCL §§ 511, 511-a.

### III.     Registration and Reporting Requirements for New York Charitable Not-for-Profit Corporations

41.     Under New York law, certain charitable not-for-profit organizations, including VDARE, holding charitable assets and operating in New York must register and file accurate and complete annual reports with the Attorney General. *See* EPTL §§ 8-1.4(d) and (f). The Charities Bureau oversees that function on behalf of the Attorney General. In addition to the registration and reporting requirements set forth in EPTL § 8-1.4, charitable organizations soliciting contributions in New York must also register and file accurate and complete annual reports under Article 7-A of the Executive Law. *See* Exec. L §§ 172, 172-b.  Organizations that must file reports under the EPTL and Executive Law do not need to file duplicate reports, but rather indicate that they are a dual filer when they make the filings. These annual reports, commonly referred to as CHAR500s, must include copies of an organization's annual information return, the IRS Form 990, and, for organizations like VDARE that receive in excess of $1 million in donations, copies of the organization's audited financial statements. *Id.*

10

Case 1:25-cv-00810-MAD-ML    Document 40-12    Filed 01/06/26    Page 16 of 55

42.     Section 520 of the N-PCL specifically refers to the requirement under the EPTL and Executive Law to file these reports and provides that the willful failure to do so is a breach of a director's fiduciary duty and provides grounds for the Attorney General to seek dissolution of the organization.  Similarly, Section 172-b(5) of the Executive Law provides that the Attorney General shall cancel the registration of any organization that fails to file the reports that are required under the Executive Law.

43.     CHAR500s must be signed by: (i) the organization's President or Authorized Officer and (ii) its Chief Financial Officer or Treasurer, both of whom, by their signatures expressly certify, under penalties of perjury, that the report, including all attachments, is true and accurate. Exec. L § 172-b

44.     Moreover, a charity that is not in compliance with its annual filing obligations is prohibited from soliciting donations. Exec. L. §172-d(1); N-PCL § 115(a). Pursuant to Executive Law § 172-d, no person shall "[m]ake any material statement which is untrue in…[a] financial report or any other forms or documents required to be filed" with the Attorney General's office pursuant to Executive Law, Article 7-A.

45.     Pursuant to Executive Law § 175(2), the Attorney General is authorized to bring an action against a charitable organization or any other persons acting for or on its behalf, to, in relevant part, "enjoin such organization and/or persons from continuing the solicitation or collection of funds or property or engaging therein or doing any acts in furtherance thereof, and to cancel any registration statement previously filed with the attorney general pursuant to this article and for an order awarding restitution and damages, penalties and costs; and removing any director or other person responsible for the violation of this article; dissolving a corporation and other relief which the court may deem proper, whenever the [A]ttorney [G]eneral shall have reason to believe

11

that the charitable organization or other person: (a) is violating or has violated any of the provisions of [Executive Law Article 7-A], (b) has refused or failed, or any of its principal officers has refused or failed, after notice, to produce any records of such organizations; [or] . . . (d) has made a material false statement in an application, registration or statement required to be filed pursuant to this article[.]"

## FACTUAL ALLEGATIONS

**IV.  VDARE operates with lax oversight by its board of directors—to the Brimelows' personal benefit.**

46.  Since VDARE's inception in December 1999, VDARE's board of directors has consisted entirely of relatives of VDARE's founder Peter Brimelow or his close friends.

47.  As relevant to this complaint, in 2019, VDARE's board consisted of five members. Three were Brimelows—Peter, Lydia, and Peter's brother John. The other two were Peter Brimelow's longtime friends.

48.  VDARE's bylaws require the board to appoint five corporate officers. Since at least 2019, all corporate officers appointed to VDARE's board have been Brimelows.

49.  Because Brimelow family members held a voting majority on VDARE's board and every officer role, they effectively directed VDARE's operations without independent oversight. In Lydia Brimelow's words, VDARE was a "mom-and-pop" shop run by Peter and Lydia Brimelow.

50.  Since at least 2019, annual board meetings have been perfunctory when they have happened at all. At a typical board meeting, after unopposed re-elections of the directors and officers, Peter Brimelow or Lydia Brimelow provided a short presentation regarding VDARE's activities and affairs and made peremptory requests for a voice vote on whatever corporate action was sought, including budget approvals and officer compensation approvals. The board typically

12

granted those requests without any inquiry into the topic at issue or consideration of relevant materials. A former board member testified that he "did not prepare" for board meetings.

51. Important information such as VDARE's annual IRS Form 990 disclosures, tax information, donor reports and financial reports were not provided to directors in advance of meetings, or in advance of filing, but were made "available upon request."

52. Upon information and belief, directors did not request further information beyond the limited presentations by Peter and Lydia Brimelow at each meeting.

53. One consequence of this lax oversight was that Peter and Lydia Brimelow could effectively determine their own compensation and how it was paid to them. Since at least 2019, Peter and Lydia Brimelow repeatedly voted on their own compensation in violation of the N-PCL and VDARE's own conflict of interest policy.

54. For each of the years between 2019 and 2022, Peter Brimelow's reported compensation was VDARE's largest non-capital expense by far. During that period alone, VDARE reported $1,100,064 in compensation to Peter Brimelow. Its reported program activity expenses in that period totaled approximately $3,137,240, and Peter Brimelow's compensation constituted 35%.

55. Notably, in VDARE's 2023 IRS Form 990 it discloses $25,000 in "Reportable compensation" from VDARE to Peter Brimelow, yet records show VDARE transferred over $280,000 to him in 2023.

56. A second consequence of this lax board oversight is that Peter and Lydia Brimelow were able to structure their compensation through a now-defunct for-profit Connecticut corporation they owned called Happy Penguins.

13

57.     Until its dissolution in 2022, Peter and Lydia Brimelow were the only beneficial owners of Happy Penguins. Because Happy Penguins was entirely owned by VDARE insiders, it would qualify as a related party under the N-PCL and EPTL. And because Happy Penguins was a related party, its transactions with VDARE had to be evaluated and approved by non-interested members of VDARE's board—in this case, the two non-Brimelow board members.

58.     But VDARE's board did not review or approve VDARE's transactions with Happy Penguins. At least one of those non-Brimelow board members did not even know Happy Penguins existed.

59.     Between 2019 and 2022, VDARE paid Happy Penguins at least $1,187,000.00.

60.     In turn, Happy Penguins "leased" to VDARE the services of Peter Brimelow, VDARE's then -president, and compensated both Peter and Lydia Brimelow for their work for VDARE.

61.     In August 2021, an independent accountant and auditor flagged those transactions for Lydia Brimelow and her assistant and warned that VDARE needed a leased-employee agreement with Happy Penguins to ensure that payments to the Brimelows were "arms-length" transactions.

62.     VDARE never acted upon the accountant's advice and never entered into a contract with Happy Penguins. The board of directors did not discuss the advice at their annual meeting.

63.      From well before 2019 and until 2020, VDARE also "leased" space from Happy Penguins—consisting of "offices" in the Brimelows' Connecticut home. VDARE paid both Happy Penguins and the Brimelows directly for monthly rent, utilities, and, upon information and belief, repairs to the Brimelows' home. Those payments also accrued to the Brimelows' benefit.  Again,

14

the non-Brimelow members of VDARE's board of directors did not review those transactions to determine whether they were fair, reasonable, and in the best interests of the organization.

64. And in May 2023, after its dissolution, Happy Penguins made a final distribution to Peter and Lydia, with each receiving a 50% share of Happy Penguins' remaining funds.

65. No inquiry or determination was made at any time by VDARE's non-Brimelow board members as to whether compensation to Peter and Lydia Brimelow was fair, reasonable, and in the best interests of the organization.

66. Nor did the non-Brimelow board members make any inquiry or determination at any time about whether VDARE's financial relationship with Happy Penguins was fair, reasonable, and in the best interests of the organization.

67. Still another consequence of the lax board oversight was that the Brimelows received even more benefits from VDARE that were not properly disclosed to or approved by VDARE's board. For example, VDARE paid thousands of dollars for the Brimelows' domestic and international travel, meals, and entertainment and club memberships.

68. No inquiry or determination was made at any time by the non-Brimelow directors of VDARE's board as to whether those payments to Peter and Lydia Brimelow were for legitimate business purposes, reasonable, or in service of VDARE's mission.

## V. Lydia Brimelow purchased the Castle Complex with the bulk of VDARE's assets and conveyed it piecemeal to a network of Brimelow-affiliated corporations.

69. At least as early as January 2019, Lydia Brimelow explored purchasing a medieval -style castle in Berkeley Springs, West Virginia. She told a realtor marketing the property that she wanted to use the Castle Complex to "house [VDARE's] offices and host conferences."

70. Lydia toured the property in May 2019, which is comprised of the main castle and several parcels of land, including three cottages.  At the time, she considered the seller's asking

Case 1:25-cv-00810-MAD-ML    Document 40-12    Filed 01/06/26    Page 21 of 55

price of more than one million dollars to be "overpriced by several hundred thousand dollars." That summer, she made a cash offer of $700,000 without the knowledge or approval of VDARE's board. The seller did not accept Lydia's unauthorized offer.

71.    On January 17, 2020, months after first offering to buy the Castle Complex, Lydia called a special meeting of the board to "discuss[] the possibility of a real estate opportunity for VDARE."



*Fig. 1 An undated photograph of Berkeley Springs Castle*

72.    VDARE has produced no minutes of this meeting, but Lydia subsequently reported to her father that all board members "seem[ed]" in favor but that some wanted to know "how long do they have to change their minds" after an offer.

16

Case 1:25-cv-00810-MAD-ML    Document 40-12    Filed 01/06/26    Page 22 of 55

73. At the time of the purchase, the board was not informed that the Brimelows' intended to move into the Castle that VDARE had purchased—which they did seven months after the purchase.

74. At the time of the purchase, the board was not informed of any plans to change VDARE's corporate structure to transfer the castle property to legal entities other than VDARE—a plan the Brimelows began to orchestrate within three months of the purchase.

75. The Board never considered an independent appraisal or market valuation of the property to determine whether the purchase price was fair, reasonable, and in the best interests of the organization. The Board considered no alternative proposals or alternative properties, and it studied the proposed transaction for just a few days.

76. One of two non-Brimelow directors, admittedly "not a real estate person," and "not the person to ask for comparables" did his own searches, but never asked for, and never received an appraisal or valuation of comparable property from VDARE.

77. On or around January 21, 2020, VDARE submitted an offer to purchase the Castle for $1,300,000. This offer reflected an increase of $600,000 over Lydia's original offer, despite her prior assessment that the property was significantly overpriced.

78. On January 23, 2020, the seller countered at $1,400,000.

79. In response, one of VDARE's two non-Brimelow directors suggested that VDARE "split the difference," and offer $1,350,000. Instead, Lydia spoke on the phone with that director, Peter Brimelow, and John Brimelow and then sent an email to the board "to confirm that we are all in agreement, and we will accept the counter. Please all respond to this email with the affirmative so I have record of the board's position." Only one non-Brimelow director concurred

17

Case 1:25-cv-00810-MAD-ML    Document 40-12    Filed 01/06/26    Page 23 of 55

in writing. VDARE's second non-Brimelow director played no part in the decision to purchase the castle.

80.     On or around February 14, 2020, the transaction closed and VDARE's purchase of the Berkeley Springs Castle Complex was complete.

81.     The Castle Complex—which served as VDARE's headquarters—represented at least between 30% and 40% of VDARE's assets during fiscal year 2020.

82.     On March 27, 2020, the only non-Brimelow director who approved the Castle Complex purchase resigned from the board. He did so shortly after refusing to sign a non-disclosure agreement. His departure left VDARE with just one non-Brimelow director, who rarely attended board meetings and was not involved in the Castle Complex purchase.

83.     The Brimelows moved into the Berkeley Springs Castle on September 18, 2020, while waiting for the completion of renovations at what they now claim is their permanent residence in a cottage elsewhere in the Castle Complex. The Brimelows' residency in the Castle was not reviewed or approved by the board.

## VI.     Lydia and Peter Brimelow conveyed the Castle Complex to a network of corporations that they established and controlled.

84.     Throughout 2019, Lydia received business advice from her father, Joe Sullivan, who claims to specialize in "corporate renewal." A later engagement letter between Sullivan's company and VDARE explains that he was expected to "[e]ngage in [d]ue [d]iligence relating to [VDARE's] existing structure" and "[p]repare proposals to organize, collapse or merge affiliated entities."

85.     As Lydia's father, Sullivan qualified as a related party under the N-PCL and EPTL, and VDARE's transactions with him and his businesses required approval of a majority of independent board members. Between October 2019 and December 2024, VDARE paid Sullivan's

18

firm, Joe Sullivan & Associates ("JSA"), more than $230,000 for services, including more than $40,000 for services in 2020.

86.     None of the payments to JSA were documented and approved by VDARE's board or any non-Brimelow directors. There is no indication the services JSA provided were unique, and yet there is no evidence that VDARE considered alternative financial consultants. There is also no evidence that the board made a finding that the transactions were fair, reasonable, and in the best interest of VDARE.

87.     The IRS Form 990 requires nonprofits to answer whether they engaged any business transaction with a current or former director's family member or their businesses. Yet, despite paying Lydia Brimelow's father tens of thousands of dollars in fiscal years 2019, 2020, 2021, 2022, and 2023 VDARE responded "No" in each of the relevant Form 990s.

88.     The non-Brimelow members of VDARE's board did not approve or even know about VDARE's financial relationship with Sullivan. Nor did at least one non-Brimelow board member know that Sullivan was Lydia Brimelow's father.

89.     Consequently, the non-Brimelow members of VDARE's board did not determine whether VDARE's transactions with Sullivan were fair, reasonable, and in the best interests of the organization.

90.     VDARE has acknowledged that Lydia's communications with her father are responsive to OAG's regulatory subpoena but has withheld the restructuring advice he gave in 2019 and 2020. On May 1, 2020, at an eight-minute board meeting with only Peter, Lydia, and John Brimelow present, the three Brimelows approved establishing a new "corporate structure for Berkeley Castle" and conveying the Castle Complex to newly created corporations. With only the three Brimelows voting, the motion passed unanimously.

19

91.     No non-Brimelow director was present or authorized creating a separate corporate structure or conveying the Castle Complex. And the meeting minutes indicate no discussion whatsoever of the purpose of adopting this new corporate structure or how it would serve the mission or interests of VDARE.

92.     Two months later, at a July 2020 board meeting lasting 12 minutes and attended only by Peter, Lydia, and John Brimelow, Lydia became VDARE's "President, Chief Operating Officer, Publisher, and Treasurer," with "full operating authority over all non-editorial aspects of VDARE Foundation and its affiliates and subsidiaries, including without limitation, all non-editorial personnel vendors and contractors, all property tangible or intangible, meetings and functions, fundraising, and all of the functions of the Treasurer as stated in the By-laws." No non-Brimelow director voted on this decision.

93.     On July 21, 2020, Lydia Brimelow incorporated BBB, LLC, as a single-member, for-profit West Virginia corporation, purportedly owned by VDARE, with its principal place of business listed as the Castle Complex's address. On its registration documents and its operating agreement BBB stated that its business purpose was leasing real estate. At all relevant times, Lydia was BBB's sole manager and sole employee.

94.     On or about the same day, Lydia Brimelow incorporated Berkeley Springs Castle Foundation ("BCF"), a West Virginia not-for-profit corporation with its principal place of business listed as the Castle Complex's address.

95.     At all relevant times, the Brimelows and their relatives have comprised the majority of the BCF Board. The Brimelows' relatives on BCF's Board have included John Brimelow and Peter Brimelow's adult children, Hannah Claire and Alexander Brimelow. The Brimelows' part-time babysitter/part-time VDARE support staff member, Dana Coe, was also on the BCF

20

Case 1:25-cv-00810-MAD-ML    Document 40-12    Filed 01/06/26    Page 26 of 55

Board. Lydia Brimelow has served as BCF's President and Treasurer since 2020, and Peter Brimelow has served as BCF's Vice President and/or Secretary.

96.     On December 29, 2020, VDARE conveyed several parcels of the Castle Complex to BCF, including the Castle itself and its grounds. BCF made no down payment. The only consideration it provided was the promise of $1,081,660.77 secured by a promissory note and deed of trust.

97.     On that same day, December 29, 2020, VDARE conveyed the remaining parcels of the Castle Complex to BBB, including three cottages and additional parcels of undeveloped land. BBB made no down payment. The only consideration it provided was a promissory note and a deed of trust for $310,000. The Brimelows currently use one of the three cottages as their residence, and another is occupied by Peter Brimelow's adult daughter.

98.     No independent directors approved the transfers from VDARE to BCF or BBB, and the board did not consider whether the sales would advance VDARE's mission, whether the sales were in VDARE's best interest, or any alternative transactions and no contemporaneous documentation was made stating the basis for the board's approval of the transactions.



**Fig. 2: Lydia Brimelow conveyed the Castle Complex to BCF and BBB in exchange for deeds of trust.**

21

99. In 2021, VDARE's bookkeeper continued describing "the Castle" as VDARE's major asset even while noting that it was "sold to a related entity in 2020 to manage liability issues."

## VII. The Brimelows transfer VDARE's charitable funds to BCF and BBB under the guise of "lease" payments and "loans."

100. After receiving the deed to the Castle, the Brimelow-controlled entity BCF leased the building back to VDARE and charged VDARE a monthly rent greater than BCF's monthly mortgage payments to VDARE. Lydia Brimelow signed the lease on behalf of both BCF as landlord and VDARE as tenant.

101. Starting in February 2021, BCF made monthly "mortgage" payments of $4,700.98 to VDARE. But VDARE paid "rent" to BCF of $6,000 per month. The net result was a loss for VDARE of $1,299.02 each month to the benefit of BCF.

102. In addition to rent, the lease required VDARE to pay BCF a "Special Use Fee" for special events and an additional charge per guest attending any special event.

103. Under the lease, VDARE remained responsible for all expenses and taxes on the Castle. Lydia also added a clause to the standard lease authorizing VDARE, as tenant, to reimburse BCF "based on actual expenses as represented by landlord without [sic] estimate."

104. Ultimately, between 2021 and 2023, VDARE paid more than $47,000 for what were, upon information and belief, Castle-related maintenance and improvements.

105. Lydia Brimelow, on behalf of BBB, rented two cottages in the Castle Complex to herself and her family as private residences. She signed the lease agreement as both landlord and tenant.

22

Case 1:25-cv-00810-MAD-ML Document 40-12 Filed 01/06/26 Page 28 of 55

106. BCF also paid BBB $1,000 monthly as "rent" for the use of the Castle Complex. Upon information and belief, there was no lease or other agreement establishing the obligation and basis for these "rent" payments by BCF to BBB.

107. As a result of these and subsequent transactions, VDARE ran a net loss for years paying the Brimelow-run entities for the use and maintenance of a property that VDARE had previously owned outright.

108. Between 2021 and 2022, VDARE made at least 20 "loans" to BCF totaling $497,500. None were documented until July 2023, when Lydia Brimelow executed a backdated promissory note permitting BCF to borrow up to $500,000 from VDARE, effective January 1, 2021.

109. Likewise, VDARE paid tens of thousands of dollars to the Brimelow-controlled, for-profit BBB, denominated as "loans." From May 2021 through February 2023, VDARE "loaned" BBB $33,000. These loans were not documented until July 2023 when Lydia Brimelow executed a backdated "Revolving Promissory Note" allowing BBB to borrow up to $250,000 from VDARE. Then, from March 2024 through August 2024, VDARE paid BBB an additional $6,439.62. There is no evidence that these amounts were ever paid back to VDARE.

110. No security was provided for the "loans" to BCF and BBB, and no independent directors played any role in considering or those loans to ensure that their terms were fair, reasonable, in the best interests of VDARE, or aligned in any way with VDARE's charitable mission.

**VIII. The Brimelows give Lydia Brimelow authority to dispose of VDARE's remaining real property interests, and she conveys them to a company associated with her father.**

111. In February 2022, after "lending" hundreds of thousands of dollars to the Brimelow-controlled entities BCF and BBB, VDARE's board, acting only through Brimelows,

23

entered into a new agreement to borrow up to two million dollars from the corporation Mountain States Funding ("MSF"). Lydia Brimelow's father, Joseph Sullivan, acted as the point of contact for MSF along with former VDARE employee John Schlick.

112. Upon information and belief, Sullivan and Schlick created MSF in 2021 in furtherance of the Brimelow's scheme for a new "corporate structure" to control the Castle Complex and transfer funds out of VDARE's control.

113. Despite Lydia's father's role representing MSF, the counterparty in the transaction, the MSF loan was approved at a February 2022 board meeting attended only by Brimelows— Peter, Lydia, and John. No alternative lending options were discussed. No independent directors played any role in considering or approving the MSF loan to ensure its terms were fair and reasonable or in VDARE's best interest and there is no indication from the board minutes why the loan was even needed.

114. In July 2022, the VDARE board gave Lydia Brimelow discretion to collateralize all of VDARE's assets, including its Castle Complex mortgages, to securitize the loan from MSF. Despite Lydia's father's role representing MSF in this transaction, no independent directors participated in these discussions or approved the collateralization of the loan.

115. In transactions on November 28, 2022 and December 28, 2022, VDARE assigned all of its remaining property interest in the Castle Complex as collateral to MSF. Lydia Brimelow executed all assignments of the deeds of trust and other security instruments. Her father, Sullivan, was listed as MSF's point of contact on multiple loan documents.

116. Under the terms of these transfers, BCF and BBB were to make mortgage payments directly to MSF instead of to VDARE. According to the terms of the agreements, VDARE's

24

Case 1:25-cv-00810-MAD-ML    Document 40-12    Filed 01/06/26    Page 30 of 55

"collateral" would secure a loan of up to $2 million from MSF. But MSF only ever transferred $340,000 in loan money to VDARE—a fraction of the value of that collateral.

## IX. Following regulatory scrutiny by OAG, the Brimelows accelerate funds transfers from VDARE to their network of out-of-state corporations.

117.    Upon information and belief, in 2023 after learning of OAG's regulatory investigation, the Brimelows accelerated their efforts to strip VDARE of its assets. Following court losses to OAG, VDARE dramatically increased its "rent" payments to BCF.

118.    In March 2023, after the Appellate Division ordered VDARE to comply with OAG's investigative subpoena, VDARE increased its monthly "rent" payments to BCF from $6,000 to $10,000 per month.

119.    On June 30, 2023, Lydia Brimelow, gave MSF a deed of trust for BCF's share of the Castle Complex in the amount of $1.08 million. At the time of filing, VDARE continued to hold a deed of trust on MSF's Castle Complex assets.

120.    In July 2023, after VDARE lost a preliminary injunction motion in federal court, VDARE increased its monthly payments to BCF to $33,000.

121.    That same month, VDARE released BCF from the mortgage it held on BCF's share of the Castle Complex. At that time, BCF had only paid VDARE $126,926.46 of the $1.08 million on the note. The release in the deed of trust recited that BCF's had "been paid in full and satisfied."

122.    In fact, BCF never paid the full amount of the Castle Complex mortgage.

123.    These increased payments were not reflected in a new lease or any other written agreement between VDARE and BCF.  There is no evidence that either of these increases in rent payments was considered by VDARE's board, resulted from an arms-length negotiation, or were based on market conditions. Nor is there any evidence that releasing BCF from its $1.08 million

25

Case 1:25-cv-00810-MAD-ML    Document 40-12    Filed 01/06/26    Page 31 of 55

obligation to VDARE was considered by VDARE's board, resulted from an arms-length negotiation, or was in the best interest of VDARE.

124.    VDARE's public disclosures with respect to BBB as an asset are inconsistent. Starting in August 2023, VDARE sought to sell BBB to MSF.

125.    An undated appraisal from MSF valued BBB's real property at $675,000, and MSF offered to purchase BBB for $400,000. In 2023, both amounts were far more than half of the reasonably estimated assets of VDARE, even assuming that it owned BBB as an asset. Selling BBB would therefore trigger mandatory regulatory review by OAG or this Court (on notice to OAG) under N-PCL §§ 510,511, and 511-a.

126.    VDARE failed to submit any application to OAG or a Court concerning the sale of BBB to MSF.

127.    In a December 2023 letter to his daughter Lydia Brimelow, Sullivan lowered MSF's appraisal of BBB and acknowledged the danger of regulatory scrutiny under the N-PCL if VDARE sold more than half of its assets. To avoid such scrutiny, he "reassessed" BBB's value at between $470,624 and $538,652 and deducted loans owed to VDARE in the amount of $470,624, with a final value of $68,028.

128.    In December 2023, MSF purchased VDARE's ownership interests in BBB for $68,000 and purchased the right to collect BBB's outstanding commercial debt to VDARE, which was in excess of $172,000, for an additional $100,000.

129.    The end result was that MSF paid a total of $168,000 for real estate it had previously appraised at over $600,000—more than three times the purchase price.

130.    Even while Joe Sullivan, Lydia's father, acted on behalf of MSF in connection with its transactions with VDARE, VDARE continued to pay him directly for consulting advice.

26

131. No independent director of VDARE played any role in considering or approving these transactions, and there is no evidence that the board considered whether they were fair, reasonable, and in the best interests of VDARE, or aligned with VDARE's charitable mission.

## X. VDARE runs out of money and winds up operations.

132. As it shed other assets, VDARE continued making cash payments to BCF denominated as a monthly "rent" payment at the rate $33,000 during the period July 2023 until February 2024.

133. On February 26, 2024, Joseph Sullivan, who had just orchestrated the purchase of BBB's real estate assets for a fraction of their value, informed Peter and Lydia Brimelow that there was a "high probability" that VDARE would run out of cash "as early as the end of April or as late as the end of June."

134. By VDARE's own calculations, BCF still owed VDARE $330,740.06 from a revolving promissory note Lydia Brimelow had executed and backdated in July 2023. But, despite sharing the same president—Lydia Brimelow—BCF did not transfer any cash to VDARE.

135. Instead, in April 2024, Lydia Brimelow executed a "modification" of the outstanding loan promissory note on behalf of VDARE and BCF. The modification extended the loan's maturity date from December 31, 2026 until December 31, 2029. During that time, VDARE would be permitted to continue "renting" the Castle Complex without cash payment. The "rent payments" due would be credited against BCF's total outstanding debt.

136. Upon information and belief, no inquiry or determination was made at any time by the non-Brimelow directors of VDARE's board as to whether those increases in rent payments or the change in VDARE's payment arrangement with BCF were fair, reasonable, and in the best interests of the organization.

27

137. In July 2024, VDARE announced publicly that it had run out of operating funds and would cease operations. It had approximately $150,000 on hand. Peter Brimelow resigned as CEO, VDARE discontinued its sole program activity of publishing a website and closed its website's archives.

138. To date, VDARE has not sought OAG or judicial approval to dissolve, as required by law.

## XI. BCF continues even after VDARE has ceased operations.

139. Peter Brimelow, in a blogpost concerning closing VDARE, admitted that BCF is a "separate foundation" that would continue beyond VDARE's demise.

140. He further noted that Berkeley Castle—which he and Lydia Brimelow control through BCF—would continue to host conferences as well as "events like weddings."

141. VDARE transferred its most valuable asset—the Berkeley Springs Castle—to BCF and later forgave BCF's never-fully-paid mortgage. In cash transactions between the two entities between 2021 and November 2024, BCF netted at least $740,000. According to Lydia Brimelow VDARE was a "critical revenue stream" for BCF and provided it with a "steady and reliable source of income."

28

Case 1:25-cv-00810-MAD-ML    Document 40-12    Filed 01/06/26    Page 34 of 55



*Fig. 3 An April 29, 2025 post from BCF's X account.*

142.    BCF undertakes its own, independent purportedly charitable program activities unrelated to VDARE. It describes its mission as preserving the historical character of the Berkeley Springs Castle. It conducts historical tours of the Castle, holds community events, rents event space for weddings and special events, and regularly hosts its own special events. Past events have included Apple Butter Festival," an "Afternoon Tea," and a sold-out "Murder Mystery Dinner" that cost $175 a person, or $1,500 for a table of ten.

29

143. BCF maintains a website and active social media profile to promote its events and solicit donations supporting BCF's mission.

## XII. VDARE failed to maintain a statutorily satisfactory conflict of interest policy or ensure compliance with its conflicts of interest policy.

144. VDARE failed to maintain a conflict of interest policy meeting the statutory requirements provided NPC-L § 715-a. VDARE's conflict of interest policy failed to include, *inter alia*, the procedures for disclosing a possible conflict of interest, the procedures to determine whether a conflict of interest exists, or a prohibition that the person with the conflict of interest not be present at any deliberation or vote on a matter giving rise to such a conflict.

145. VDARE also failed to monitor or enforce compliance with its deficient conflict of interest policy as a matter of substance and as a matter of procedure.

146. At annual board meetings, the board purportedly reminded Directors to submit their annual disclosure forms. However, they submitted those forms inconsistently.

147. Upon information and belief, board members never disclosed conflicts which fell within the scope of the policy.

## XIII. VDARE failed to comply with regulatory reporting requirements.

### a. Failure to Make Required Annual Filings

148. As a New York not-for-profit corporation holding charitable assets and operating in New York, VDARE must register and file accurate and complete annual reports with the Charities Bureau. In addition to these registration requirements, charitable organizations soliciting contributions in New York must also register and file accurate and complete annual reports under Article 7-A of the Executive Law. These annual reports, commonly referred to as CHAR500s, must include copies of an organization's annual IRS Form 990, and, for organizations like VDARE, copies of the organization's audited financial statements.

30

Case 1:25-cv-00810-MAD-ML    Document 40-12    Filed 01/06/26    Page 36 of 55

149. CHAR500s must be signed by: (i) the organization's President or Authorized Officer and (ii) its Chief Financial Officer or Treasurer, both of whom, by their signatures, certify under penalties of perjury that the report, including all attachments, is true and accurate.

150. Despite this requirement, VDARE filed a facially deficient CHAR500 for fiscal year 2021 and thereafter failed to file CHAR500s for fiscal years 2022 and 2023.

**b. VDARE Continues to Solicit Donations Despite Failing to File Annual Reports**

151. In August of 2024 the Office of the Attorney General Charities Bureau notified VDARE by letter that its 2021 CHAR500 was deficient and that it was delinquent in its submission of its 2022 and 2023 CHAR500 filings. The letter further notified VDARE "that Article 7-A of the Executive Law prohibits a delinquent organization from raising funds in New York, including through government grants."

152. Despite this legal bar to further fundraising, and after purportedly ceasing operations, VDARE continues to solicit donations in New York and elsewhere.

153. For example, a July 14, 2025 video VDARE posted to its X account, includes a prominent link in the corner of the video reading "Make a Tax-Deductible Contribution: www.GiveSendGo.Com/VDARE" which is displayed for nearly the entirety of the video's six minutes.

31

Case 1:25-cv-00810-MAD-ML Document 40-12 Filed 01/06/26 Page 37 of 55



*Fig. 4 Lydia Brimelow solicits donations for VDARE in July 14, 2025 video*

154. And as of the filing of this Complaint, VDARE's website still includes an active link soliciting donations, both by mail and through and online service "GiveSendGo." VDARE's GiveSendGo page includes recent updates from Lydia Brimelow and continued requests for donations.

### c. Certification of False or Misleading Annual Filings

155. Prior to ceasing to fulfill its statutory reporting obligations, VDARE's CHAR500s for fiscal years 2019, 2020, and 2021 were untimely and contained material omissions and misrepresentations.

156. VDARE filed its 2019 CHAR500 with the Charities Bureau in March 2021, its 2020 CHAR 500 in January 2023, and its 2021 CHAR500 in August 2023.

157. Across all three filings, VDARE failed to report its related party transactions on the attached IRS Form 990s with Joseph Sullivan and/or Joseph Sullivan Associates, despite paying him tens of thousands of dollars in fiscal years 2019, 2020, and 2021.

158. VDARE also failed to accurately disclose directors and officers in the Form 990s included with VDARE's 2019, 2020, and 2021 CHAR500s. For fiscal year 2019, VDARE failed

32

Case 1:25-cv-00810-MAD-ML Document 40-12 Filed 01/06/26 Page 38 of 55

to disclose that Lydia Brimelow was a director and officer; for fiscal year 2020, VDARE failed to disclose Joseph Fallon and John Wall as directors; and for 2021, it failed to disclose Fallon again.

159. The last CHAR 500 VDARE filed with OAG, for fiscal year 2021, was also incomplete and riddled with material misrepresentations. Without explanation or justification, VDARE marked nearly every response on its 2021 CHAR500 with "N/A" rather than answering "yes" or "no" as required. And despite disclosing that VDARE collected between $25,000 and $99,000 in donations from New York for fiscal year 2021, elsewhere in its CHAR500 it represented it did not solicit or receive "more than $25,000 annually in total contributions from New York State residents. . ."

160. For fiscal year 2021, VDARE filed more than one version of its IRS Form 990. The version attached to its 2021 CHAR500 that was filed with OAG differed from the version it filed with the IRS in that there was a $154,045 discrepancy in the reconciliation of net assets between the two.

161. Further, VDARE's 2021 IRS Form 990s contain material misrepresentations and omissions, including that: VDARE reported a loan from Peter and Lydia Brimelow of $105,000, and disclosed that the loan was made pursuant to a "written agreement," but, upon information and belief, no such written agreement exists; and VDARE failed to disclose the personal use of cottages owned by BBB as residences for Peter, Lydia, and Hannah Claire Brimelow.

## THE ATTORNEY GENERAL'S INVESTIGATION AND VDARE'S UNLAWFUL INTERFERENCE

162. On June 24, 2022, OAG served a civil investigative subpoena on VDARE as part of an investigation into an apparent pattern of potential financial improprieties evidenced through public sources and reporting.

33

Case 1:25-cv-00810-MAD-ML    Document 40-12    Filed 01/06/26    Page 39 of 55

163. The subpoena demanded information concerning VDARE's organizational structure, compliance with conflict-of-interest policy and related party transaction requirements under New York law, financial operations, the purchase and conveyance of the Castle Complex, and transactions between VDARE and entities controlled by the Brimelows.

164. VDARE responded that the subpoena was "incredibly unlawful" and initially refused to produce any documents.

165. Instead of producing responsive material, VDARE instead challenged the subpoena's validity under the First Amendment before this Court, the Appellate Division for the First Department, the Court of Appeals, and the U.S. District Court for the Northern District of New York. Each court rejected its arguments. VDARE's appeal to the Second Circuit remains subjudice.

166. On January 23, 2023, after full briefing and argument, this Court determined that the subpoena was valid and reasonable, properly issued in the public interest and within the Attorney General's statutory authority to supervise and investigate New York charities. It rejected all of VDARE's First Amendment arguments.

167. This Court ordered VDARE to comply with the subpoena by February 24, 2023. On February 15, 2024, the First Department affirmed that Order.

168. VDARE's efforts to stay this Court's order pending appeal were rejected. VDARE nonetheless refused to comply with the order and refused to produce any material by the February 24, 2023 deadline.

169. Meanwhile, VDARE continued litigating in federal court, where its motion to enjoin this Court was denied as were multiple motions to stay pending appeal.

34

170.    VDARE's continued noncompliance required the Attorney General to seek further intervention by this Court. On October 16, 2023, OAG moved for a contempt finding for VDARE's failure to meet its February 25, 2023 deadline. At oral argument on the motion, this Court gave VDARE "one last chance" to comply with the order. VDARE continued to defy the order, and, on March 27, 2024 this Court held VDARE in contempt for willfully failing to obey its orders directing VDARE to do so. It directed VDARE to purge its contempt by April 30, 2024.

171.    VDARE continued to withhold documents, requiring the Attorney General to bring yet another contempt motion.

172.    On October 17, 2024, more than six months after its first contempt order, this Court once again held VDARE in contempt of court, determining that VDARE "engaged in frivolous conduct in withholding the production of documents and responsive materials in their possession, repeatedly misrepresenting to the Court and to counsel their readiness to produce documents" and that VDARE's conduct "was undertaken primarily to delay or prolong the resolution of the litigation, or to harass or maliciously injure another[.]" This Court issued a judgment fining VDARE $43,500.00, and also increased the continuing contempt fine to $1,000-per-diem.

173.    On October 22, 2024, after nearly two years of litigation, VDARE finally supplemented its deficient production.

174.    Although VDARE purports that it has now complied with its obligations, numerous deficiencies remain with its production that are currently in dispute before this Court. As recently as July 2025, one court official recognized that "VDARE has continued a practice of delay . . . throughout the entire proceeding.

175.    Despite VDARE's attempts to delay and impede the Attorney General's investigation into its and the Brimelow's mismanagement, waste of assets, and unlawful

35

Case 1:25-cv-00810-MAD-ML    Document 40-12    Filed 01/06/26    Page 41 of 55

transactions, the ultimate subpoena responses reveal a pattern of illegality. Those responses, in conjunction with information obtained from third-party sources, establish the violations of law set forth in this complaint.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### For Breach of Fiduciary Duty Under N-PCL §§ 717 and 720 and Removal Under N- PCL §§ 706(d) and 714(c)
### (Against the Individual Defendants)

176. The Attorney General repeats and re-alleges the allegations set forth in paragraphs 1 through 175 above as though fully set forth herein.

177. The Individual Defendants breached their fiduciary duties of loyalty, care, and obedience to the VDARE Foundation by using their powers as officers and directors of VDARE to obtain illegal compensation and benefits; to convert VDARE funds for their own benefits; to induce VDARE to enter into unlawful related party transactions; to cause VDARE to file annual reports with the Attorney General containing materially false and misleading statements and omissions; to cause VDARE to issue illegal loans; to cause VDARE to fail to properly administer its conflicts of interest policy; and to dominate, control, and direct VDARE to obtain private benefits for themselves, their family members, and certain other insiders in contravention of VDARE's bylaws, policies and procedures, and applicable laws.

178. The Individual Defendant's breaches of fiduciary duty have damaged VDARE by, among other things, causing its assets to be diverted for non-VDARE purposes and be wasted and by causing VDARE to engage in related party transactions that lacked adequate consideration and were not reasonable or in the best interests of VDARE; by exposing VDARE to liability for causing it not to accurately report the monetary benefits the Individual Defendants received from VDARE as income and not to comply with corresponding tax payment obligations pursuant to Section 4958

36

Case 1:25-cv-00810-MAD-ML Document 40-12 Filed 01/06/26 Page 42 of 55

of the Internal Revenue Code; and by jeopardizing VDARE's tax exempt status and authority to conduct business for failure to comply with regulatory reporting obligations.

179. Accordingly, the Individual Defendants are liable under N-PCL § 720(a)(l) to account and pay restitution and/or damages, including returning the compensation they received while breaching their fiduciary duties to VDARE, plus interest at the statutory rate of 9%, and rescission of any agreements providing for compensation following their employment, for their conduct in the neglect and violation of their duties in the management and disposition of VDARE's charitable assets and in causing loss and waste of those assets by their breaches of fiduciary duty.

180. To the extent they have not already resigned, the Individual Defendants should be removed for cause under N-PCL §§ 706 and 714 and be barred from re-election of reappointment as a director or officer of the VDARE Foundation and from serving as an officer, director or in any other fiduciary role in a not-for-profit or charitable organization incorporated or authorized to conduct business in the State of New York.

## SECOND CAUSE OF ACTION
### For Breach of EPTL § 8-1.4
### (Against the Individual Defendants)

181. The Attorney General repeats and re-alleges the allegations set forth in paragraphs 1 through 180 above as though fully set forth herein.

182. Section 8-1.4(m) of the EPTL authorizes the Attorney General to institute appropriate proceedings to secure the proper administration of any not-for-profit corporation organized under the laws of this State for charitable purposes.

183. At all relevant times, the Individual Defendants were directors and officers of VDARE, dominated and controlled VDARE's Board, and had access to and control of VDARE's charitable assets. In that capacity, the Individual Defendants were trustees pursuant to EPTL § 8-1.4 because they held and administered property for charitable purposes.

37

Case 1:25-cv-00810-MAD-ML   Document 40-12   Filed 01/06/26   Page 43 of 55

184.    As set forth in the preceding paragraphs, the Individual Defendants failed to properly administer the charitable assets of VDARE Foundation entrusted to their care by using their powers as officers and directors of VDARE to obtain illegal compensation and benefits; to convert VDARE funds for their own benefits; to induce VDARE to enter into illegal related party transactions; to cause VDARE to file annual reports with the Attorney General containing materially false and misleading statements and omissions; to cause VDARE to issue illegal loans; to cause VDARE to fail to properly administer its conflicts of interest policy; and to dominate, control, and direct VDARE to obtain private benefits for themselves, their family members, and certain other insiders in contravention of VDARE's bylaws, policies and procedures, and applicable laws.

185.    As a result, the Individual Defendants should be ordered to account for their breaches and to make restitution and/or pay damages, plus interest at the statutory rate of 9%, to VDARE. In addition, the Individual Defendants should be permanently barred from serving as officers, directors, trustees or in any other fiduciary roles of any not-for-profit or charitable organization incorporated or authorized to conduct business in the State of New York.

**THIRD CAUSE OF ACTION**
**Wrongful Related-Party Transactions**
**N-PCL §§ 112(a)(10), 715(f) and EPTL § 8-1.9(c)(4)**
**(Against the Individual Defendants)**

186.    The Attorney General repeats and re-alleges the allegations set forth in paragraphs 1 through 185 above as though fully set forth herein.

187.    Under N-PCL § 715 and EPTL § 8-1.9, VDARE is prohibited from entering into any related party transaction unless the transaction is determined and documented by the majority of the disinterested members of the Board or an authorized committee of the Board to be fair,

38

reasonable, and in the corporation's best interest at the time of the determination in compliance with that section.

188.    The Individual Defendants caused VDARE to enter into unlawful related party transactions, including payments to Happy Penguins; the transfer or sale of the Castle Complex to BCF and BBB—corporations in which Peter and/or Lydia Brimelow were directors and/or officers; the loan and lease agreements between VDARE and BCF and/or BBB; VDARE's transactions related to MSF effecting the transfer of VDARE assets for a loan from MSF without adequate consideration; housing the Individual Defendants and their children at the Castle Complex; and payments to Lydia Brimelow's father, Joseph Sullivan.

189.    Despite the Individual Defendants or other related parties having a financial interest in these transactions, the Individual Defendants failed to disclose in good faith to the VDARE's disinterested directors, or an authorized committee thereof, the material facts concerning those interests.

190.    The Individual Defendants participated in the voting and deliberations concerning related party transactions in which they had an interest.

191.    The Individual Defendants dominated VDARE's board, which failed to consider alternative transactions; contemporaneously document in writing the basis for approving the transactions; or determine that the transactions were fair, reasonable, and in the best interests of VDARE at the time of transactions.

192.    The Individual Defendant's conduct was willful and intentional with respect to these transactions.

193.    By the foregoing acts and omissions, the Individual Defendants are liable under N-PCL § 715(f) and EPTL § 8-1.9(c), to account for profits from related party transactions not already

39

Case 1:25-cv-00810-MAD-ML    Document 40-12    Filed 01/06/26    Page 45 of 55

accounted for; to the extent not already paid, pay VDARE the value of charitable assets used in such transactions; to return assets lost to VDARE as a result of the transactions, to the extent not already returned; to pay VDARE an amount up to double the value of the amount of each benefit improperly bestowed by each transaction occurring and should be enjoined from serving as officers, directors or trustees, or in any similar capacity, of any not-for-profit charitable organization incorporated or authorized to conduct business or solicit charitable donations in the State of New York.

## FOURTH CAUSE OF ACTION
### For Loans in Violation of N-PCL § 716
### (Against the Individual Defendants)

194. The Attorney General repeats and re-alleges the allegations set forth in paragraphs 1 through 193 above as though fully set forth herein.

195. N-PCL § 716 provides that no loans shall be made by a not-for-profit corporation to any entity in which one or more of its directors, officers or key persons are directors, officers or key persons or in which they hold a substantial financial interest. Any director or officer who participates in such a loan violates his or her duty to the corporation.

196. In their capacities as directors and officers of VDARE, Lydia Brimelow and Peter Brimelow authorized and caused to be effected loans from VDARE to organizations in which they were directors, officers, or key persons, thereby breaching their duties to VDARE.

197. Accordingly, the Individual Defendants are liable for violating N-PCL § 716 and should be required to pay restitution and/or damages, including returning the compensation they received while breaching their fiduciary duties to VDARE, plus interest at the statutory rate of 9%, and rescission of any agreements providing for compensation following their employment, for their conduct in the neglect and violation of their duties to VDARE.

198. To the extent they have not already resigned, the Individual Defendants should be removed for cause under N-PCL §§ 706 and 714 and be barred from re-election of reappointment as a director or officer of the VDARE Foundation and from serving as an officer, director or in any other fiduciary role in a not-for-profit or charitable organization incorporated or authorized to conduct business in the State of New York.

### FIFTH CAUSE OF ACTION
### Wrongful Related-Party Transactions – N-PCL §§ 112(a)(10), 715(f)
### and EPTL § 8-1.9(c)(4)
### (Against Defendant VDARE)

199. The Attorney General repeats and re-alleges the allegations set forth in paragraphs 1 through 198 above as though fully set forth herein.

200. VDARE entered into numerous unlawful related party transactions in violation of N-PCL § 715 and EPTL § 8-1.9. These transactions include payments to a company owned by VDARE directors and officers Peter and Lydia Brimelow, Happy Penguins; the transfer or sale of the Castle Complex to BCF and BBB—corporations in which Peter and/or Lydia Brimelow were directors and/or officers; the loan and lease agreements between VDARE and BCF and/or BBB; VDARE's transactions related to MSF effecting the transfer of VDARE assets for a loan from MSF without adequate consideration; housing Peter and Lydia Brimelow and their children at the Castle Complex; and payments to Lydia Brimelow's father, Joseph Sullivan.

201. VDARE's board, or an authorized committee thereof, failed to consider alternative transactions; contemporaneously document in writing the basis for approving the transactions; or determine that the transactions were fair, reasonable, and in the best interests of VDARE at the time of transactions.

41

Case 1:25-cv-00810-MAD-ML   Document 40-12   Filed 01/06/26   Page 47 of 55

202.   The Court should enjoin, void or rescind the unlawful related party transactions, and award damages and such other appropriate remedies, in law or equity to ensure compliance with the requirements of the law.

**SIXTH CAUSE OF ACTION**
**For Breach of EPTL § 8-1.4**
**(Against Defendant VDARE)**

203.   The Attorney General repeats and re-alleges the allegations set forth in paragraphs 1 through 202 above as though fully set forth herein.

204.   Section 8-1.4(m) of the EPTL authorizes the Attorney General to institute appropriate proceedings to secure the proper administration of any not-for-profit corporation organized under the laws of this State for charitable purposes.

205.   VDARE, a charitable not-for-profit corporation in New York, which solicits, receives, and administers charitable assets, was at all times a trustee pursuant to EPTL § 8-1.4(a)(2).

206.   As detailed in preceding paragraphs, VDARE, which was governed by the Individual Defendants, who asserted control over its charitable assets, failed to secure the proper administration of the charitable assets in VDARE's possession and control. The Attorney General seeks declaratory relief holding VDARE liable for failing to secure the proper administration of the charitable assets in VDARE's possession and/or control in accordance with EPTL § 8-1.4, and appropriate injunctive or other equitable relief, including, without limitation, the dissolution of VDARE and distribution of its remaining charitable assets in accordance with New York law.

42

**SEVENTH CAUSE OF ACTION**
**Illegal Solicitation of Donations Under Executive Law §§ 172, 172-b, 172-d(10) and 175(2)(d) and N-PCL §§ 112 and 115**
**(Against All Defendants)**

207.    The Attorney General repeats and re-alleges the allegations set forth in paragraphs 1 through 206 above as though fully set forth herein.

208.    VDARE failed to submit annual reports required by Article 7-A of the Executive Law for fiscal years 2022 and 2023, and was accordingly legally prohibited from soliciting donations.

209.    Nonetheless, VDARE and Peter and Lydia Brimelow have continued to solicit donations in New York and elsewhere.

210.    As a result VDARE and Peter and Lydia Brimelow violated Sections 172, 172-b, 172-d(10) of the Executive Law and Section 115 of the N-PCL, and pursuant to Section 175(2)(d) of the Executive Law should be enjoined from soliciting or collecting funds on behalf of any charitable organization operating in this State and Peter and Lydia Brimelow should be enjoined from serving as an officer, director or trustee of any not-for-profit or charitable organization incorporated or authorized to conduct business in the State of New York.

**EIGHTH CAUSE OF ACTION**
**For False or Deficient Filings Under Executive Law §§ 172, 172-b 172-d(1) and 175(2)(d)**
**(Against All Defendants)**

211.    The Attorney General repeats and re-alleges the allegations set forth in paragraphs 1 through 210 above as though fully set forth herein.

212.    VDARE made materially false and misleading statements and omissions in the annual reports the organization filed with the Attorney General. Defendants Peter Brimelow and

43

Case 1:25-cv-00810-MAD-ML     Document 40-12     Filed 01/06/26     Page 49 of 55

Lydia Brimelow signed and certified such reports notwithstanding the number of falsehoods therein, of which each of them was or should have been aware.

213.    VDARE failed to file annual reports with the Attorney General as required by law for fiscal years 2022 and 2023.

214.    As a result, VDARE and Peter and Lydia Brimelow violated Sections 172, 172-b, 172-d(1) of the Executive Law and, pursuant to Section 175(2)(d) of the Executive Law should be enjoined from soliciting or collecting funds on behalf of any charitable organization operating in this State and Peter and Lydia Brimelow should be enjoined from serving as an officer, director or trustee of any not-for-profit or charitable organization incorporated or authorized to conduct business in the State of New York.

### NINTH CAUSE OF ACTION
### Failure to Obtain Court of OAG Approval for the Sale of BBB as Required by N-PCL §§ 510, 511, 511-a
### (Against All Defendants)

215.    The Attorney General repeats and re-alleges paragraphs 1 through 214, as though fully set forth herein.

216.    At the time VDARE sold BBB to MSF for below market value, BBB represented all or substantially all of VDARE's remaining assets.

217.    Prior to that sale, VDARE, as a New York not-for-profit corporation organized for charitable purposes, was required to obtain the approval of OAG or this Court, with notice to OAG. VDARE did not seek or obtain such approval.

218.    As a result, a judgment should be issued declaring that the sale of BBB to MSF is *void ab initio* and an illegal act.

44

Case 1:25-cv-00810-MAD-ML    Document 40-12    Filed 01/06/26    Page 50 of 55

**TENTH CAUSE OF ACTION**
**Dissolution of VDARE – N-PCL §§ 112(a)(1), 112(a)(5), 520, 1101(a)(2)**
**(Against Defendant VDARE Foundation, Inc.)**

219. The Attorney General repeats and re-alleges the allegations set forth in paragraphs 1 through 218 above as though fully set forth herein.

220. Under N-PCL § 1101(a)(2), the Attorney General may bring an action seeking the dissolution of a charitable corporation when "the corporation has exceeded the authority conferred upon it by law, or … has carried on, conducted or transacted its business in a persistently fraudulent or illegal manner, or by the abuse of its powers contrary to public policy of the state has become liable to be dissolved."

221. VDARE has operated in a persistently illegal manner by, among other things, permitting its assets over the course of many years to be used for the personal benefit of its officers and directors, their family members and other insiders; providing excessive compensation and benefits to the Individual Defendants; failing to adopt and enforce a conflicts of interest policy that met the statutory requirements; issuing illegal loans to entities in which Lydia Brimelow and/or Peter Brimelow severed as officers and/or directors; entering into illegal related party transactions; failing to file annual reports with the Charities Bureau as required by law; filing annual reports with the Charities Bureau containing material misstatements or omissions; and illegally soliciting donations.

222. As detailed in preceding paragraphs, VDARE and its individual trustees, as that term is used in the EPTL, failed to secure the proper administration of the charitable assets in their possession and control, and violated the duties of prudence in the management of institutional funds.

223. As a result of the foregoing, VDARE has acted beyond its capacity by persistently disregarding the limitations in its certificate of incorporation and the law, and it has conducted its

45

Case 1:25-cv-00810-MAD-ML    Document 40-12    Filed 01/06/26    Page 51 of 55

business in a persistently illegal manner and abused its powers contrary to the public policy of the State of New York by operating without effective oversight or control by its officers and directors.

224. Accordingly, this Court should dissolve the VDARE Foundation pursuant to N-PCL § 1109(b)(1) and distribute its remaining and future assets to be applied to charitable uses consistent with the mission set forth in the VDARE's certificate of incorporation, pursuant to N-PCL §§ 1115(a) and 1008(a)(15).

**ELEVENTH CAUSE OF ACTION**
**Dissolution of VDARE– N-PCL §§ 112(a)(7), 1102(a)(2)(D)**
**(Against Defendant VDARE)**

225. The Attorney General repeats and re-alleges the allegations in paragraphs 1 through 224 above as though fully set forth herein.

226. Under N-PCL § 112(a)(7), the Attorney General is authorized to maintain an action or special proceeding to enforce rights granted by statute to a director or officer of a charitable corporation.

227. Pursuant to N-PCL § 1102(a)(2)(D), directors or members, as authorized, may petition the court for judicial dissolution where the "directors or members in control of the corporation have looted or wasted the corporate assets, have perpetuated the corporation solely for their personal benefit, or have otherwise acted in an illegal, oppressive or fraudulent manner."

228. The Individual Defendants, as directors in control of VDARE, have looted or wasted the corporate assets, have perpetuated the corporation solely for their personal benefit, or have otherwise acted in an illegal, oppressive or fraudulent manner, by, *inter alia*; providing excessive compensation and benefits to themselves; failing to adopt and enforce a conflicts of interest policy that met the statutory requirements; issuing illegal loans to entities in which the Individual Defendants severed as officers and/or directors; and transferring VDARE's most

46

Case 1:25-cv-00810-MAD-ML    Document 40-12    Filed 01/06/26    Page 52 of 55

valuable asset, the Berkeley Castle Complex, to entities controlled by the Individual Defendants or their family through a series of illegal transactions and thereby allowing the use of VDARE's assets for the personal benefit of themselves and their family.

229.    Accordingly, this Court should dissolve VDARE pursuant to N-PCL § 1109(b)(1) and Order that its remaining and future assets should be applied to charitable uses consistent with the mission set forth in the VDARE's certificate of incorporation, pursuant to N-PCL §§ 1115(a) and 1008(a)(15).

### PRAYER FOR RELIEF

WHEREFORE, the Attorney General requests judgment against the Defendants and an order be issued awarding the following relief:

A.    Permanently barring Peter Brimelow from re-election or appointment as an officer or director of VDARE pursuant to N-PCL §§ 706(d), 714(c), and 717, EPTL §8-1.4, and Executive Law § 175(2)(d);

B.    Removing Lydia Brimelow for cause from her position as President of VDARE, and permanently barring her re-election or appointment as an officer or director pursuant to N-PCL §§ 706(d), 714(c), and 717, EPTL § 8-1.4, and Executive Law § 175(2)(d);

C.    Permanently barring Peter Brimelow and Lydia Brimelow from serving as officers, directors, or trustees of any not-for-profit or charitable organization incorporated or authorized to conduct business or solicit charitable donations in the State of New York pursuant to EPTL §8-1.4 and Executive Law § 175(2)(d);

D.    Directing Peter Brimelow and Lydia Brimelow to account for their conduct in failing to perform their duties in managing VDARE's charitable assets; to pay full restitution to VDARE for the waste and misuse of its charitable assets, including the return of compensation

47

Case 1:25-cv-00810-MAD-ML    Document 40-12    Filed 01/06/26    Page 53 of 55

received while breaching their fiduciary duties to the VDARE, plus interest at the statutory rate; and to pay damages to VDARE arising from the breach of fiduciary duties pursuant to N-PCL §§ 720 and EPTL §8-1.4;

E.      Declaring the sale of BBB to MSF *void ab initio* pursuant to N-PCL §§ 510, 511, and 511-a.

F.      Enjoining, voiding or rescinding the related party transactions entered into or proposed by Defendants; directing Peter Brimelow and Lydia Brimelow to account for profits made from and the value of charitable assets used in those transactions, to the extent not already paid; and due to their willful and intentional conduct as alleged, directing Peter Brimelow and Lydia Brimelow to pay VDARE an amount up to double the value of each benefit improperly bestowed by such transactions occurring after 2020 pursuant to pursuant to N-PCL §§ 112(a)(10), 715(f) and EPTL § 8-1.9(c)(4);

G.      Enjoining VDARE, Peter Brimelow, and Lydia Brimelow from soliciting or collecting funds on behalf of VDARE or any other charitable organization operating in this State pursuant to Executive Law § 175(2)(d);

H.      Declaring that VDARE failed to properly administer its charitable assets;

I.      Declaring that VDARE has exceeded the authority conferred upon it by law, has carried on, conducted, or transacted its business in a persistently fraudulent or illegal manner, or has abused its powers contrary to the public policy of the State of New York, and determining, in the court's discretion, that it is in the interest of the public to dissolve VDARE pursuant to N-PCL §§ 112(a)(1), 112(a)(5), 1101(a)(2), 1109, and CPLR 3001;

J.      Declaring that directors in control of VDARE have looted or wasted VDARE's charitable assets, have perpetuated the corporation solely for their personal benefit, or have

48

otherwise acted in an illegal, oppressive or fraudulent manner, and determining, in the court's discretion, to dissolve VDARE pursuant to N-PCL §§ 112(a)(7), 1102(a)(2)(D), 1109 and CPLR 3001;

K.      Dissolving VDARE and directing that its remaining assets and any future assets be applied to charitable uses consistent with dissolution clause of VDARE's certificate of incorporation pursuant to N-PCL §§ 112(a)(1), 112(a)(5), 112(a)(7), 1101(a)(2), 1102(a)(2)(D) and 1109.

L.      Granting such other and further relief as the Court deems just and proper, including injunctive, monetary and declaratory relief as may be required in the interests of justice.

Dated:  New York, New York
        September 3, 2025

LETITIA JAMES
Attorney General of the
State of New York


By:     _/s/ James Sheehan_

JAMES SHEEHAN
Charities Bureau Chief
James.Sheehan@ag.ny.gov
28 Liberty Street
New York, New York 10005
Tel. (212) 416-8401


MEGHAN FAUX, *Chief Deputy Attorney General for Social Justice*
EMILY STERN, *Section Chief, Charities Bureau*
RICHARD SAWYER, *Section Chief, Civil Rights Bureau*
RACHEL FINN, *Assistant Attorney General*
BENJAMIN D. LIEBOWITZ, *Assistant Attorney General*
*Of Counsel*

49

Case 1:25-cv-00810-MAD-ML    Document 40-12    Filed 01/06/26    Page 55 of 55

## VERIFICATION

JAMES SHEEHAN affirms this 3rd day of September 2025, under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, and I understand that this document may be filed in an action or proceeding in a court of law:

I am an Assistant Attorney General and the Chief of the Charities Bureau in the office of Letitia James, Attorney General of the State of New York (the "Attorney General"). I am duly authorized to make this verification.

I have read the foregoing complaint and am acquainted with the facts alleged therein based on the Attorney General's investigation of the transactions upon which the complaint is based, the annual filings and other reports made by the VDARE Foundation, Inc. with the Charities Bureau of the Attorney General's office, and the investigative materials contained in the files of the Attorney General's office. To my knowledge based on such acquaintance with the facts, the complaint is true, except as to those allegations made upon information and belief, and as to those allegations, I believe them to be true.

The reason this verification is not made by plaintiff is that plaintiff is a body politic and the Attorney General is its duly authorized representative.

/s/ James Sheehan
**James Sheehan**
**Charities Bureau Chief**

50