**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF NEW YORK**


**VDARE FOUNDATION, INC.**

                                  **Civil Case No. 25-cv-810-MAD-ML**

**Plaintiff,**

**v.**

**LETITIA JAMES, JAMES SHEEHAN,
RICHARD SAWYER, MEGHAN FAUX,
EMILY STERN, RACHEL FINN,
BENJAMIN D. LIEBOWITZ, and
YAEL FUCHS,**
in their individual and/or official capacities,
**Defendants.**


**PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO DISMISSAL AND
IN REPLY IN SUPPORT OF INJUNCTIVE RELIEF**


Dated: Goshen, New York            Respectfully submitted,
       January 29, 2026


                                   /s/ Frederick C. Kelly
                                   Frederick C. Kelly, Esq.
                                   Attorney for Plaintiff
                                   One Harriman Square
                                   Goshen, NY 10924
                                   (845) 294-7945
                                   fckellylaw@protonmail.com
                                   NDNY Bar No. 513862

TABLE OF CONTENTS

I.      UNDER *HUNTER v. McMAHON*, 75 F.4th 62 (2nd Cir. 2023) THE *ROOKER-FELDMAN* DOCTRINE CANNOT BE INVOKED WHERE PLAINTIFF COMPLAINS OF CIVIL RIGHTS VIOLATIONS AND CONSPIRACIES WHICH PRE-DATE ANY STATE COURT JUDGMENT……………………......... 1

II.     FURTHERMORE, APPEALS REMAIN PENDING EVEN IN THE FIRST STATE COURT PROCEEDING THAT DEALT WITH THE CHARITIES SUBPOENA.................................................................................4

III.    PLAINTIFF'S *ENGLAND* RESERVATION IS EFFECTIVE AGAINST *YOUNGER* ABSTENTION – BUT THE POINT IS ACADEMIC IN LIGHT OF THE BAD FAITH MOTIVES OF DEFENDANTS……………………………………. .4

IV.     *YOUNGER* ABSTENTION FAILS IN LIGHT OF DEFENDANTS' EGREGIOUS BAD FAITH………………........................................................... 6

V.      COLLATERAL ESTOPPEL CANNOT COVER THE CIVIL COMPLAINT DATED SEPTEMBER 3, 2025 BECAUSE THE ACTS AND INJURIES SURROUNDING IT WERE NEVER ADJUDICATED BY ANY COURT……………………..... 7

VI.     THE DISCOVERY OF NEW EVIDENCE SHOWS THAT COLLATERAL ESTOPPEL EVEN AS TO THE CHARITIES SUBPOENA IS GROSSLY IMPROPER.............................................................................……………...... 10

VII.    DEFENDANTS' ARGUMENTS AGAINST THE EQUAL PROTECTION / SELECTIVE ENFORCEMENT COUNTS DEPEND ENTIRELY ON COLLATERAL ESTOPPEL, AND THUS FAIL.……....... .   12

VIII.   VDARE'S ROBUST ALLEGATIONS OF CONSPIRACY ARE MORE THAN ADEQUATE TO STATE A CLAIM UNDER 42 U.S.C. §1985....................   13

IX.     DEFENDANTS' FAILURE TO CONTEST THE COPIOUS DOCUMENTARY EVIDENCE ON THE PI MOTION WARRANTS AN INJUNCTION IN VDARE'S FAVOR............................................................. 16


CONCLUSION AND PRAYER FOR RELIEF……………………………….......   19

TABLE OF AUTHORITIES

CASES:

*Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162 (2nd Cir. 2012)......................... 14, 15, 16

*Bansbach v. Zinn*, 1 N.Y.3d 1 (2003) ....................................................................... . 8, 9, 10

*Bronxville Palmer, Limited v. State*, 18 N.Y.2d 560 (1966)............................................ 12

*Cullen v. Fliegner*, 18 F.3d 96 (2d Cir. 1994)………………………………………..... 6, 7, 18

*Hansen v. Miller,* 52 F.4th 96 (2nd Cir. 2021)......................................................... 3

*Hobby Lobby Stores v. Sebelius*, 723 F.3d 1114 (10th Cir. 2013).......................................... 16

*Hunter v. McMahon*, 75 F.4th 62 (2nd Cir. 2023)..............................................  1, 2, 3, 4

*Massa v. City of Kingston,* 284 AD2d 836 (3rd Dept, 2001)................................................... 8

*Nat'l Rifle Ass'n of Am. v. Vullo*, 144 S.Ct. 1316 (2024)…………………………………… 5

*NML Capital, Ltd. v. Banco Central de la Republica Argentina*,

652 F.3d 172 (2d Cir. 2011)................................................................................  9, 10

*People v. Roselle*, 193 A.D.2d 56 (2nd Dept, 1993)................................................... 11

*People State of New York ex rel James v. Trump*, 1st Dept, August 21, 2025....................... 5, 12

*Robinson v. Robinson*, 11 AD3d 853 (3rd Dept, 2004)............................................................ 8

*Rothman v. Gregor*, 220 F.3d 81 (2nd Cir. 2000)..............................................  1 (n.1)

*San Remo Hotel, L. P. v. City and County of San Francisco*, 545 U.S. 323 (2005).............. 4, 5

*Schuykill Fuel Corp. v. B.&C. Nieberg Realty Corp.*, 250 NY 304 (1929)...........................  7

*State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Medical Practice P.C.*,

120 F.4th 59 (2nd Cir. 2024)................................................................................ 17, 18

*Sucher v. Kutscher's Country Club*, 113 AD2d 928 (2nd Dept, 1975) ................................. 11

*Temple of the Lost Sheep, Inc. v. Abrams*, 930 F.2d 178 (2nd Cir. 1991)............................  5, 6

*Ten's Cabaret v. City of NY,* 1 Misc.3d 399 (Sup Ct NY, 2003)........................................... 8

*Vincent v. Thompson*, 50 A.D.2d 211 (2nd Dept, 1975)......................................................... 10, 11

RULES:

Fed. R. Civ. P. 12……………………………………………………………………. 15

Fed. R. Civ. P. 66…………………………………………………………………… 13, 15


OTHER:

Connors, <u>New York Practice</u>, (6th Ed. 2018)........................................................................ 11

At the outset, we should stress that no other court, state or federal, has been formally confronted by the significant evidence presented by Defendant Sawyer's (and ADL Attorney Freeman's) remarks at the *Taking Hate to Court* ADL Panel in November of 2022. *DE 25; DE. 32; DE. 33.* As VDARE's President Lydia Brimelow has elsewhere explained,[1] this evidence was simply not available in the prior state court proceedings, certainly not in January of 2023 when the first state court decision was rendered. *DE 40-6.* Here Defendants mount legal arguments against the evidence, but fail to specifically dispute its contents. VDARE respectfully submits that Defendants' arguments fail for the following reasons.

I.    UNDER *HUNTER v. McMAHON*, 75 F.4th 62 (2nd Cir. 2023) THE *ROOKER-FELDMAN* DOCTRINE CANNOT BE INVOKED WHERE PLAINTIFF COMPLAINS OF CIVIL RIGHTS VIOLATIONS AND CONSPIRACIES WHICH PRE-DATE ANY STATE COURT JUDGMENT.

The issue here is that Plaintiff VDARE complains of acts and harms which pre-date the first order or judgment issued by the New York State court on January 23, 2023. *DE 40-6.* The rule is "'that *Rooker-Feldman* does not bar claims based on an opponent's misconduct that precedes the state court proceeding, if the plaintiffs' alleged injuries were merely ratified by the

---

[1] *See Second Circuit Case No. Case 23-1084, DE 85, p. 30, ¶8:* "VDARE only became aware of the evidence from Taking Hate to Court when it was first brought to our attention by a fellow journalist on or about March 25, 2025." This court is certainly able to take judicial notice of the ecf records of the federal courts. *Rothman v. Gregor*, 220 F.3d 81, 88 (2nd Cir. 2000).

VDARE requested permission to supplement the record on appeal with the Second Circuit, but that request was denied. *Second Circuit Case No. Case 23-1084, DE 92.* Thus, the evidence from Defendant Sawyer and Taking Hate to Court has been presented to no other tribunal, state or federal, except for this one; and has never been formally before any court as evidence admitted for consideration, except for this one.

state-court judgments rather than caused by them." *Hunter v. McMahon*, 75 F.4th 62, 71 (2nd Cir. 2023),  *quoting Dorce v. City of New York*, 2 F.4th 82, 104 (2nd Cir. 2021).

In *Hunter v. McMahon*, the Second Circuit reversed the district court's *Rooker-Feldman* dismissal.  It reasoned that when a plaintiff complains of civil rights violations and conspiracies which pre-date any state court judgment, the judgment cannot be deemed to have produced the ills complained of.  *Id.* at 72.  In such cases, "The state court did not *produce* this alleged earlier in time conduct, though it may have adjudicated the legitimacy of the conduct after the fact" (*Id. - emphasis original*), and thus one of the key elements of *Rooker-Feldman* is missing.

The plaintiff in *Hunter*, who had her child taken by CPS and who was subsequently on the losing end of a child neglect petition in Family Court (*Id.* at 65-66), had complained that the defendants[2] had committed torts against her and "violated her constitutional rights."  *Id.* 66.  The Second Circuit noted that genesis of these harms lay in acts that preceded the state court judgment; therefore plaintiff's "claims do not satisfy" the casual-relationship requirement.  *Id.* at 72.  Judge Menashi went on:

> For example, Hunter alleges that some of the defendants conspired—before any decisions were issued by the family court—to discriminate against her on the basis of race, to conduct unlawful searches and seizures, and to defame her, among other claims.  Hunter alleges that McMahon and Henderson took custody of C.W. on May 10 "under falsified claims that an emergency existed" and conducted "an illegal interrogation of [C.W.] in [Hunter's] absence and without [her] consent." Hunter claims that this conduct violated her constitutional rights, and she seeks damages for that violation. *The state-court judgment did not produce this alleged earlier-in-time conduct, though it may have adjudicated the legitimacy of the conduct after the fact. The district court therefore did not lack subject matter jurisdiction to evaluate Hunter's claim.*

---

[2] The defendants were the CPS caseworkers and the Family Court judges, amongst other officials and entities.  *Id.* 66.

>*Id.* - emphasis supplied; see also, Hansen v. Miller, 52 F.4th 96, 102 (2nd Cir. 2021) (Menashi, J., concurring)

Here, Plaintiff VDARE's allegations are similar if not identical.  Thus, VDARE alleges that some of  the defendants conspired, well before the first order or judgment was issued by the New York State court on January 23, 2023 (*DE. 25, ¶¶54-59, 69-81, 91-118*), to embark on a campaign aimed at suppressing its First Amendment rights.  *e.g. DE. 25, ¶¶17-36, 39-41, 43, 49-51, or ¶69*: "This lawless policy was premeditated and formed months and even years before the unlawful subpoenas of 2022, as demonstrated by Defendant Sawyer's remarks at the ADL conference in November of 2022 and the ADL Report of 2021."

As in *Hunter v. McMahon*, "The state-court judgment did not produce this alleged earlier-in-time conduct, though it may have adjudicated the legitimacy of [some of ] the conduct after the fact" and thus this court does not lack "lack subject matter jurisdiction" under *Rooker-Feldman* to evaluate VDARE's claims.  Nor should the outcome surprise anyone, for as the Second Circuit noted, ""[D]istrict courts should keep one thing in mind when *Rooker-Feldman* is raised: it will almost never apply." *Id.* at 68 n.4, *quoting Behr v. Campbell*, 8 F.4th 1206, 1212 (11th Cir. 2021).  It is not even close to applying in this case.

That conclusion holds true for VDARE's claims in Counts I and II, which concern the abusive Charities Subpoena (*DE. 25 ¶¶179-200*), but it is even more true of the remainder of VDARE's claims in Counts III through VII. I*d. ¶¶201-256*.  Those claims center around the Civil Complaint filed by Defendants on September 3, 2025.  *Id.*  As to those claims, there is not even a loss by the plaintiff in state court, let alone one that was rendered before the proceedings were commenced in this court.  *Hunter v McMahon* at 68.  Three of the four elements required in this

- 3 -

circuit for *Rooker-Feldman* are thus clearly missing.

II.    FURTHERMORE, APPEALS REMAIN PENDING EVEN IN THE FIRST STATE
       COURT  PROCEEDING THAT DEALT WITH THE CHARITIES SUBPOENA.

At the risk of beating a dead horse, the fact that appeals remain pending in the first state court proceeding is yet another reason under *Hunter v McMahon* that *Rooker-Feldman* would not apply.  In *Hunter*, the Second Circuit joined every other circuit that has addressed the issue to decide that where a plaintiff's state court appeal remains pending when the federal suit is filed "the state court proceedings have not ended and *Rooker-Feldman* does not apply."  *Id.* at 70.  But that is the situation here: VDARE still has pending state court appeals which are determining the scope and extent of the January 23, 2023 order upon which Defendants would hang *Rooker-Feldman*.  *See NYS ECF, Appellate Division First Department Case No.2024-7242.*

III.   PLAINTIFF'S *ENGLAND* RESERVATION IS EFFECTIVE AGAINST *YOUNGER*
       ABSTENTION – BUT THE POINT IS ACADEMIC IN LIGHT OF THE BAD FAITH
       MOTIVES OF DEFENDANTS.

Defendants spend much time and effort arguing against the efficacy of VDARE's *England* Reservation.  Ths is a somewhat academic exercise because even if *Younger* abstention would normally obtain, it fails where evidence of bad faith arises to oust it, a point made at length below. In any event, and for the sake of preserving the argument, VDARE's *England* Reservation does work against *Younger* abstention under the unique facts here.

As Justice Rehnquist's concurrence in *San Remo Hotel, L. P. v. City and County of San*

- 4 -

*Francisco*, 545 U.S. 323, 350 (2005) shows, the holding there is limited to "federal takings claims," – and yet the Supreme Court has always "allow[ed]  plaintiffs to proceed directly to federal court in cases involving... the First Amendment or the Equal Protection Clause*" Id..,* *citing to Renton v. Playtime Theatres, Inc.*, 475 U. S.41 (1986); *Young v. American Mini Theatres, Inc.*, 427 U. S. 50 (1976), *Cleburne v. Cleburne Living Center, Inc.*, 473 U. S. 432 (1985), and *Village of Belle Terre v. Boraas*, 416 U. S. 1 (1974).

But the within case does involve the First Amendment and Equal Protection Clause (not federal takings).  *Temple of the Lost Sheep, Inc. v. Abrams*, 930 F.2d 178 (2nd Cir. 1991), which predates *San Remo Hotel* by over a decade, simply does not address this aspect of the later developed jurisprudence of the Supreme Court.

And frankly, even under the holding of *Temple of the Lost Sheep*, we are presented with "unusual cases" and circumstance now.  *Temple of the Lost Sheep* at 183.  It is highly unusual for a state attorney general to abuse the "judicial system for political ends" (*People State of New York ex rel James v. Trump*, 1st Dept, August 21, 2025, Slip Op. p. 316, (Friedman, J, *dissenting*), an abuse that is so open and notorious that it is explicitly noted by a justice of the Appellate Division.  Notably, none of the facts showing Defendants' abuse of the judicial system are disputed on either motion now before this court.

What is more, that abuse is going largely unchecked by the New York state court system (particularly New York County and much of the Appellate Division, First Department).  Whether in *People State of New York ex rel James v. Trump*, *supra*. or *National Rifle Association of America v. Vullo*, 602 U.S. 175 (2024), large parts of the New York state government have ceased to protect dissenting parties and have actively collaborated in the suppression of their

voices.  Under these circumstances, the exceptional circumstances of *Temple of the Lost Sheep* are present.

IV.    *YOUNGER* ABSTENTION FAILS IN LIGHT OF DEFENDANTS' EGREGIOUS BAD FAITH.

Even if all three factors indicating *Younger* abstention were present, Defendants' bad faith would serve to negate them.  The rule is that even where *Younger* abstention would normally apply, "Intervention would still be warranted upon a showing of 'bad faith, harassment or any other exceptional circumstance that would call for equitable relief."  *Cullen v. Fliegner*, 18 F3d. 96, 103 (2nd Cir. 1994), *quoting Younger v. Harris*, 401 U.S. 37, 48 (1971).  Thus, in *Cullen* the state actors "had a 'past history of personal conflict' with Cullen, and their corresponding desire 'to do something about' him rose to the 'level of animus.'" *Id.* at 104.  A past history of disciplinary charges and hearings, as well as the selective attempt to enforce a New York state law prohibiting electioneering, combined to show a pattern of unconstitutional conduct.  *Id*.  Thus *Younger* abstention was improper because it was negated by the government's bad faith.

Defendants here make passing reference to *Cullen* (*DE. 40-14, p. 18*), but they misread the case.  They quote from the sentence "Generally, for such a showing to be made, the party bringing the state action must have no reasonable expectation of obtaining a favorable outcome." *Id.,* quoting *Cullen* at 103.  They imply (falsely - see below) that there is a reasonable expectation of securing judgment against VDARE in the Civil Complaint and thus that even within the holding of *Cullen*, abstention would be proper.  It is not.  The very next sentence in *Cullen* reads,

- 6 -

"But, a refusal to abstain is *also justified* where a prosecution or proceeding has been brought to retaliate for or to deter constitutionally protected conduct, or where a prosecution or proceeding is otherwise brought in bad faith or for the purpose to harass." *Cullen v. Fliegner* at 103-104 (emphasis suplied), *citing Lewellen v. Raff*, 843 F.2d 1103, 1109-10 (8th Cir.1988), *cert. denied*, 489 U.S. 1033, 109 S.Ct. 1171, 103 L.Ed.2d 229 (1989) and *Rowe v. Griffin, 676 F.2d 524* (11th Cir.1982).

Thus, under *Cullen v. Fliegner*, even where there is some reasonable expectation of obtaining a favorable outcome, that factor is outweighed decisively by bad faith retaliation. Plaintiff has made that showing in spades. *e.g. DE. 25, ¶¶96-100.*

Defendants' dispute none of the facts proffered on the PI Motion and scarcely any in the Amended Complaint, but instead fall back again and again on collateral estoppel, with a particular emphasis on the prior adjudication of the Charities Subpoena. *DE. 40-14, pp. 19-20.* But collateral estoppel fails as to both the issues arising out of the Charities Subpoena and the Civil Complaint for the reasons set forth below. Accordingly, nothing stands in the way of negating *Younger* under the bad faith exception.

V.     COLLATERAL ESTOPPEL CANNOT COVER THE CIVIL COMPLAINT DATED
       SEPTEMBER 3, 2025 BECAUSE THE ACTS AND INJURIES SURROUNDING IT
       WERE NEVER ADJUDICATED BY ANY COURT.

As Judge Cardozo noted long ago, collateral estoppel differs from regular *res judicata* (claim preclusion) in that it "is not conclusive... to the same extent" and is "limited in such circumstances to the point actually determined.." *Schuykill Fuel Corp. v. B.&C. Nieberg Realty Corp.*, 250 NY 304, 306-307 (1929) (Cardozo, J.) Following this line of reasoning, New York

- 7 -

courts have again and again denied collateral estoppel when a plaintiff complains of acts that post-date the prior litigation.

Thus, in *Robinson v. Robinson*, 11 AD3d 853 (3rd Dept, 2004), the court rejected collateral estoppel because "[the prior action] involved a claim based on events occurring prior to 1983, whereas the instant case involves events that have transpired since 1987." *Id.* at 855. Hence the issues were "not identical to those that were resolved in the prior action" and collateral estoppel was no bar. *Id.* Similar holdings can be found at *Massa v. City of Kingston,* 284 AD2d 836, 840 (3rd Dept, 2001); *and Ten's Cabaret v. City of NY,* 1 Misc.3d 399 (Sup Ct NY, 2003): "Plaintiff could not have raised the issue, as it did not exist... The argument whether the City could broaden the scope of the 1995 Resolution could not have been made before there was any attempt to broaden it. Therefore, collateral estoppel does not apply." *Id.* at 409-10 *(revrs'd on other grounds by For the People Theatre of NY v. City of New York*, 20 AD3d 1 (1st Dept, 2005))*.

But perhaps *Bansbach v. Zinn*, 1 N.Y.3d 1 (2003) is most instructive. In that case the Court of Appeals refused to apply collateral estoppel because a derivative action brought in 1993, which involved different board members, could not determine a later 1997 derivative action. *Id.* at 6. The court found no identity of issues where there were both new parties and new events post-dating the earlier litigation. In particular, the defendants in the latter action had been appointed to the board for the first time in May of 1994 and were thus not personally implicated in the wrongs of the prior 1993 action. Yet as here, the defendants tried stretching the issue. There the issue to be stretched was the new board members' independence from a crooked chairman while deciding to discontinue the 1993 action, a finding of fact the defendants wanted

- 8 -

stretched to cover later conduct (they wanted the independence finding as to their 1994 actions to immunize later actions, such as their authorization to pay the crooked chairman's legal fees and expenses in 1997). *Id*. at 6.

But the Court of Appeals rejected this argument: "That the Appellate Division in [the prior litigation] concluded these defendants were not subject to Zinn's domination and control with respect to the stock options and warrants, however, does not for all time and in all circumstances insulate their conduct from similar claims." *Id.* at 11.

Likewise, here Defendants would stretch the issue of their retaliatory animus as decided "for all times and in all circumstances" by the order of the special proceeding from January of 2023. But, like the defendants in *Bansbach v. Zinn*, that will not do. Just as the *Bansbach* defendants could not point to an earlier decision from 1994 to insulate conduct in 1997, however similar, so here the Defendants cannot point to a 2023 decision to insulate conduct in 2025 and beyond. And they cannot do so because collateral estoppel simply does not apply when a plaintiff complains of acts that post-date the prior litigation (particularly where there are new parties involved, as here, as in *Bansbach*).

Even Defendants own authority bears this out. The very first case they cite to argue collateral estoppel is *NML Capital, Ltd. v. Banco Central de la Republica Argentina*, 652 F.3d 172 (2d Cir. 2011). *See DE. 40-14, p. 19*. Yet in that case the Second Circuit refused to apply collateral estoppel because "'[B]oth the legal and factual issues involved in the [second litigation, *viz*. the Bancec motions] go far beyond the legal and factual issues posed by the [prior litigation, *viz*. the 2005 motions].'"). *Id.* at 186, *quoting the district court in EM, Ltd. v. Republic of Argentina*, 473 F.3d 463, 480 (2nd Cir. 2007). Because the issues were not litigated, "much less

decided," " there could be no collateral estoppel.  *Id.*

Likewise, here the issues surrounding the Civil Complaint have not been litigated, much less decided, and there can likewise be no collateral estoppel as to VDARE's claims in Counts III through VII. I*d.* *¶¶201-256*.  Indeed, it is noteworthy that of the ten cases Defendants cite to argue collateral estoppel (from pages 19 through 23 of their brief), not a single one involves a plaintiff who complains of acts that post-date the prior litigation.  What defendants want here is an estoppel for "all time and in all circumstances" that "insulate[s their conduct from similar claims" (*Bansbach v. Zinn* at 11) – the very outcome rejected by New York's highest court in *Bansbach*.

VI.    THE DISCOVERY OF NEW EVIDENCE SHOWS THAT COLLATERAL ESTOPPEL
       EVEN AS TO THE CHARITIES SUBPOENA IS GROSSLY IMPROPER.

VDARE respectfully submits that the above demonstrates that there can be no collateral estoppel as to VDARE's claims in Counts III through VII.  DE. 25, *¶¶201-256*.   In addition, there should be no collateral estoppel even as to VDARE's claims in Counts I and II. I*d.* *¶¶179-200.*

Collateral estoppel is premised on the notion that there has been "a full and fair opportunity" to litigate a particular issue, *Vincent v. Thompson*, 50 A.D.2d 211 (2nd Dept, 1975).

But when there is the discovery of "significant new evidence which would almost certainly change the earlier result" (*Id.* 221, *quoting Schwartz v. Public Administrator of County of Bronx*, 24 N.Y.2d 65, 72 (1969)) the full and fair opportunity to litigate an issue is called into doubt.  Thus in *Vincent v. Thompson* the discovery of a new scientific test that negated evidence previously relied upon by the court (three years prior) showed that there had been no full and fair

opportunity to litigate the issue of causation. *Id.*

Even more striking is *Sucher v. Kutscher's Country Club*, 113 AD2d 928 (2nd Dept, 1975) In that case, a new attorney for Kutscher's secured a "design evaluation report" which prior counsel had simply neglected to obtain. *Id.* 929-930.  The new design evaluation report raised "substantial issues regarding the existence of a design defect" (*Id*. 930) which cast doubt on the justice of the earlier decision to grant summary judgment to the manufacturer of the chairlift at the heart of the negligence action.  *Id.* 928.  The Second Department reversed the trial court's ruling on *res judicata* noting that "Applicability of  the doctrine must be determined on a case-by-case basis, without rigidity, and the overall fairness of applying the doctrine must be the crowning consideration." *Id.* 931.  The appellate court revealed a perhaps surprising degree of elasticity (excusing several failures of prior counsel), and countenanced the belated introduction of evidence. *Id.* 930-931.

But perhaps such elasticity is not surprising.  As the leading treatise on New York civil practice notes, "There is nothing rigid about res judicata.  And there is nothing rigid about any of its family either."  Connors, New York Practice, §442, p.850 (6th Ed. 2018).

*Sucher* was a negligence action where, regardless of the extent of injuries, private rights alone were at stake.  By contrast, in a First Amendment case such as this, much more than VDARE's own rights are at stake; and this is especially true in light of Mr. Sawyer's boast of attempting to work with other states attorney generals "to develop capacity in this area." *DE. 25, ¶40.*  Here the stakes and interests more resemble those of the criminal law, where social interests and the need to reach the correct result outweigh "the peaceful, swift and impartial resolution of private disputes." *People v. Roselle*, 193 A.D.2d 56, 67 (2nd Dept, 1993), *aff'd* 84

- 11 -

NY2d 350, 355 (1994) (noting "comprehensive" and cogent opinion of Second Department).

That interest has only grown more compelling as at least one prominent judge within the New

York state court system has begun to recognize James's abusive practices, *e.g.* *People State of*

*New York ex rel James v. Trump*, 1st *Dept, August 21, 2025, Slip Op. p. 316, (Friedman, J,*

*dissenting*) (noting the AG's abuse of the "judicial system for political ends").

It is Defendants' burden to establish their right to estoppel. *Bronxville Palmer, Limited v.*

*State*, 18 NY2d 560, 563 (1966). But looking through the records proffered by Defendants (*DE.*

*40, and all accompanying exhibits*) there is no mention whatsoever of Defendant Sawyer's

appearance on the ADL Panel on November 10, 2022, which is so central to Plaintiff's current

pleading. *DE. 25, ¶¶24-43.* As stated in the opening paragraphs, that is because this was new

evidence.

The new evidence here would almost certainly change the earlier result. Under both

*Vincent* and *Sucher* a New York state court would certainly be free to refuse to apply collateral

estoppel, and this court, following the same principles, has no less discretion.


VII.    DEFENDANTS' ARGUMENTS AGAINST THE EQUAL PROTECTION/SELECTIVE
        ENFORCEMENT COUNTS DEPEND ENTIRELY ON COLLATERAL ESTOPPEL,
        AND THUS FAIL.

Defendants devote three scant paragraphs to VDARE's Equal Protection/Selective

Enforcement Counts and mention (in passing) only two paragraphs of the Amended Complaint.

*DE. 40-14, pp. 23-24.* Their entire argument here rests on Point I.C of their brief, which is the

mistaken notion that the issue of retaliation was, for all time and in all circumstances, put to rest

by the Subpoena Proceeding.  But this is error, as shown above.  Notably, Defendants do not

address any specific allegations showing selective enforcement.  There is nothing whatsoever

about *DE. 25, ¶¶71-81* dealing with the rampant charities violations evident at Bushwick and

CORE which James's office clearly had in hand (as shown by the public reporting and the

Heinberg Affirmation dated February 1, 2024).

And they dispute no facts Plaintiff offered on the PI motion, thus conceding the field to

VDARE.  Yet under FRCP 65, the parties burdens mirror those a trial, meaning that where

Defendants fail to come to grips with what Plaintiff has offered, those facts are conceded.

It is therefor respectfully submitted that Defendants have failed to carry their burden as a

matter of law.


VIII:    VDARE'S ROBUST ALLEGATIONS OF CONSPIRACY ARE MORE THAN
         ADEQUATE TO STATE A CLAIM UNDER 42 U.S.C. §1985.


Defendants' argument again pivots back to earlier arguments in their brief, particularly its

*Rooker-Feldman*, *Younger* abstention, and Collateral Estoppel arguments.  *DE. 40-14, p. 24*.  Yet

what Plaintiff has already offered should dispose of these arguments.

Aside from referring back to earlier arguments, Defendants offer little binding authority,

preferring unpublished or appendix cases; and scarcely take on any of the detailed allegations of

the Amend Complaint.  Notably absent is any discussion of the detailed pleadings. Yet the

Amended Pleading is replete with dozens of facts showing a conspiracy to target VDARE

through the abuse of state law, along the very lines stressed by the ADL in its June 2021 Report.

*DE. 25, ¶¶55-56.*  Indeed, on both motions, Defendants have failed to contest that they have gone

- 13 -

so far as to file a Civil Complaint (*DE. 25, ¶63*) which holds no hope of success because they cannot allege that the Brimelows (unlike the Frank Boswells and Jack Browns of the world – *DE. 25, ¶¶71-81; see also DE. 33, ¶¶14-47*) ever held any unlawful financial interest in the transactions at issue.  *DE. 25, ¶¶64-66.*  Again, these facts must be deemed conceded under both Rule 12 and Rule 65.

Instead, Defendants offer quibbles.  They complain that VDARE has not offered "the requisite time and place of the alleged conspiracy."  *DE. 40-14, p. 25.*  But the exact date and place under which the conspiracy was cemented, which at this point is within the exclusive knowledge of the conspirators, is of no moment.  As the Second Circuit has repeatedly noted, """"conspiracy by its very nature is a secretive operation, and it is a rare case where all aspects of a conspiracy can be laid bare in court with ... precision."'"  *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 183 (2nd Cir. 2012), *quoting United States v. Snow*, 462 F.3d 55, 68 (2nd Cir.2006).

What matters is that there are "fact-specific allegations" (*Id.* 181) which plausibly show that a conspiracy is afoot, even if some of the allegations are circumstantial: "'Circumstances must reveal "a unity of purpose or a common design and understanding, or a meeting of minds in an unlawful arrangement."'"  *Id.* 184, *quoting Monsanto Co. v. Spray–Rite Service Corp.*, 465 U.S. 752, 761 (1984), *quoting in turn American Tobacco Co. v. United States*, 328 U.S. 781, 810 (1946).  By contrast, what Defendants appear to insist on is direct proof of each and every element of the conspiracy, which is not necessary (especially at the pleadings stage) because "conspiracies are rarely evidenced by explicit agreements, but nearly always must be proven through 'inferences that may fairly be drawn from the behavior of the alleged conspirators."  *Id.*

- 14 -

at 183, *quoting Michalman v. Clark–Schwebel Fiber Glass Corp.*, 534 F.2d 1036, 1043 (2nd Cir.1976).

Here VDARE specifically pleads Defendant Sawyer's appearance and remarks at the ADL Panel on November 10, 2022 (*DE. 25, ¶¶24-43, 48-56, 60-63*), the manner in which James's office appears to have adopted the very method urged in the ADL's June 2021 Report (*Id., ¶¶55-56*), and ADL Attorney Freeman's admission on November 10, 2022 that the ADL *had already* been working with Defendant Sawyer in particular to target speech which, by Defendants Sawyer's own admission on November 10, 2022 – an admission made in the presence of Attorney Freeman – was fully protected by the First Amendment. *Id., ¶¶26-27, 33-34, 225-229.*

This sorry state of affairs was followed by the filing by Defendants James, Sheehan, Sawyer, Faux, Stern, Finn and Liebowitz of a Civil Complaint on September 3, 2025 (again in accordance with the ADL's June 2021 Report), which fails to allege that VDARE insiders held any financial interest in the largest transactions at issue. *Id., ¶¶64-69, 92-100.* The Civil Complaint is lawfare, pure and simple; and Defendants make no effort to contest that fact on either motion.

Defendants also argue that Plaintiff has misconstrued ADL Attorney Freeman's words. *DE. 40-14, p. 25.* While conceding that Freeman stated that the ADL *had been working* with Defendant Sawyer, Defendants argue that the rest of Freeman's sentence makes clear that the ADL was *not yet* working with *other* attorney generals offices. This does not suffice under Rule 12 (or Rule 65, for that matter). It is likely, indeed highly likely, that Attorney Freeman's words mean only that VDARE was among the first of the test cases that the ADL and its proxies hoped

- 15 -

to bring against dissident speakers.  In other words, work with Defendant Sawyer now – as Freeman openly boasts the ADL was doing even in November of 2022 – and, if successful, see if this plague can be spread through other corrupt attorney generals throughout the nation.  And plague this is, which is why Defendants need to be held accountable now before it spreads.

"[I]n determining in whether a complaint states a claim that is plausible, the court is required to proceed 'on the assumption that all the [factual] allegations in the complaint are true.'  Even if their truth seems doubtful, 'Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations.'" *Anderson News, L.L.C. v. Am. Media, Inc*. at 185, *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  It is respectfully submitted that VDARE meets this standard.

IX:     DEFENDANTS' FAILURE TO CONTEST THE COPIOUS DOCUMENTARY EVIDENCE ON THE PI MOTION WARRANTS AN INJUNCTION IN VDARE'S FAVOR.

The issue here is Defendants' refusal to contest Plaintiff's proffer of evidence on the motion for a preliminary injunction.  The rule is "'[T]he written evidence [in a preliminary injunction proceeding] is presumed true if it is not contradicted.'" *Hobby Lobby Stores v. Sebelius*, 723 F.3d 1114, 1146 (10th Cir. 2013) (*quoting* 11A Charles Alan Wright et al., Fed. Prac. & Proc. § 2949 (2d ed., Apr. 2013 update).

Here Defendants, with the negligible exception of quarreling with precisely what Attorney Freeman said at the ADL Panel, disputes none of the copious evidence VDARE proffered on the PI motion.

- 16 -

They dispute none of what Lydia Brimelow offered at *DE. 32, ¶4 (Defendant Sawyer essentially admitted to targeting VDARE at the ADL Panel), ¶5 (VDARE now in extremis due to Defendants retaliation), ¶¶7, 31 (ongoing threat presented by the bad faith Civil Complaint), ¶¶11-19 (the crippling effect of the retaliation on VDARE ability to operate), ¶13 (huge cost of over $1M and counting due to Defendants' campaign of harassment).*

And they dispute none of the abundant evidence presented in the Kelly Declaration. *DE. 33.* Thus, they are content to concede that at the ADL Panel, Defendant Sawyer did in fact betray that the New York AG has settled on a scheme to suppress First Amendment rights through abusive litigation and that VDARE is one such target of this illicit enterprise. *Id., ¶¶4-5.* Furthermore, VDARE really has been selectively targeted; in particular, the evidence supplied by the Heinberg Affirmation (*Id., ¶14*) shows that while James's Charity Bureau was mercilessly hunting VDARE over at best technical infractions, it turned a blind eye to the horrific depredations at the New York charities Bushwick and CORE. *Id., ¶¶14-47.* Thus, it truly is the case that in Defendants' hands, New York's charity laws and regulations are not actually used to police charities, not when millions of dollars are lost to genuinely unlawful related party transactions (CORE), and not even when two infants are burned alive through the corrupt management of a charity (Bushwick). *DE. 25,¶¶76-77; 79-81.* Instead, the law is a party tool used to bludgeon ideological opponents of the regime.

"Although there should generally be an evidentiary hearing when essential facts are in dispute, '[a] party may ... waive its right to an evidentiary hearing.'" *State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Medical Practice P.C.*, 120 F.4th 59, 83 (2nd Cir. 2024), *quoting Charette v. Town of Oyster Bay*, 159 F.3d 749, 755 (2d Cir. 1998). Defendants surely waived any such

- 17 -

right here by neither contesting the evidence, let alone requesting a hearing.

Instead, they revert to the familiar pattern of referencing earlier arguments in their brief. *DE. 40-14, p. 27.* VDARE has already refuted these *ad nauseam*.

Defendant raise some other minor points before exiting. They complain that VDARE seeks monetary relief, which can be awarded later. True enough, but VDARE seeks injunctive and declaratory relief as well, and it is the injunction which is the focus of the PI motion. Moreover, given the complexities of putting an organization back together after it has been wrecked by years of retaliation, which threatens to continue indefinitely in light of the Civil Complaint, VDARE's injunctive request presents precisely the kind of irreparable harm that warrants granting it. *State Farm Mut. Auto. Ins. Co.* at 80, *citing and quoting Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999) ("where, but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied.") Then, too, "a showing of retaliatory or bad faith prosecution establishes irreparable injury for the purposes of the Younger doctrine and the expectations for success of the party bringing the action need not be relevant." *Cullen v. Fliegner* at 104.

Furthermore, the notion that the balancing of equities favors Defendants is entirely misplaced. Defendants have again and again conceded on these papers that their motives are illicit, and "a state cannot have a legitimate interest in discouraging the exercise of constitutional rights." *Id*.

CONCLUSION

For the reasons set forth in Plaintiff VDARE's moving brief and above, we respectfully submit that the court should deny Defendant's motion entirely and grant Plaintiff's preliminary injunction.

WHEREFORE, Plaintiffs respectfully request that the court enter a preliminary injunction ordering the following relief:

a.        Enjoining Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them, from prosecuting or otherwise advancing the pending Civil Complaint dated September 3, 2025 during the pendency of this case.

c.        Waiving the security requirement or setting nominal security under Fed. R. Civ. P. 65(c), given the constitutional equities at stake.

e.        Granting such other and further relief as the Court deems just and proper.

Dated: Goshen, New York                    Respectfully submitted,
       January 29, 2026


                                     /s/ Frederick C. Kelly
                                     Frederick C. Kelly, Esq.
                                     Attorney for Plaintiff
                                     One Harriman Square
                                     Goshen, NY 10924
                                     (845) 294-7945
                                     fckellylaw@protonmail.com
                                     NDNY Attorney Bar No. 513862