**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**VDARE FOUNDATION, INC.,**

**Plaintiff,**

**vs.** **1:25-CV-810 (MAD/ML)**

**LETITIA JAMES, et al.,**

**Defendant.**

---

**APPEARANCES:** **OF COUNSEL:**

**FREDERICK C. KELLY , III** **FREDERICK C. KELLY, ESQ.**
One Harriman Square
P.O. Box 60
Goshen, New York 10924
Attorney for Plaintiff

**OFFICE OF THE NEW YORK STATE ATTORNEY GENERAL** **MATTHEW GALLAGHER, AAG** **DAVID C. WHITE, AAG**
The Capitol
Albany, New York 12224
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

# MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

On June 23, 2025, Plaintiff VDARE Foundation, Inc. ("Plaintiff" or "VDARE") commenced this action, bringing claims for alleged violations of its constitutional rights pursuant to 42 U.S.C. § 1983. *See* Dkt. No. 1. On November 24, 2025, Plaintiff filed an amended complaint, alleging that Defendants New York State Attorney General Letitia James and Assistant Attorneys General James Sheehan, Richard Sawyer, Emily Stern, Rachel Finn, Benjamin D. Liebowitz, and Yael Fuchs violated its First Amendment and Fourteenth Amendment rights by

virtue of an investigation, issuance of subpoenas, and initiation of legal proceedings in New York State court. *See* Dkt. No. 25. On December 8, 2025, Plaintiff filed a motion for a temporary restraining order and/or preliminary injunction, asking this Court to, among other things, stay Defendants' prosecution of a civil enforcement action commenced in New York State Supreme Court during the pendency of this case. *See* Dkt. Nos. 31, 32, 33, 34. This Court denied Plaintiff's request for expedited consideration of its motion for injunctive relief. *See* Dkt. No. 35. On January 6, 2026, Defendants filed an opposition to Plaintiff's motion for preliminary injunctive relief and cross-motion to dismiss for lack of subject matter jurisdiction and failure to state a claim. *See* Dkt. No. 40.

On January 8, 2026, before this Court ruled on the merits of Plaintiff's motion for preliminary injunctive relief or the cross-motion to dismiss, Plaintiff filed an interlocutory appeal of the Court's order denying expedited consideration. *See* Dkt. No. 41. On April 13, 2026, this Court denied Plaintiff's request for injunctive relief pending appeal. *See* Dkt. No. 49. On August 21, 2026, the United States Court of Appeals for the Second Circuit dismissed Plaintiff's interlocutory appeal for lack of jurisdiction. *See* Dkt. No. 52.

For the reasons herein, Defendants' motion to dismiss for lack of subject matter jurisdiction is granted and Plaintiff's motion for preliminary injunctive relief is denied as moot.

## II. BACKGROUND

### A. The Underlying State Court Proceedings

On December 16, 2022, the Attorney General initiated a special proceeding in New York State Supreme Court via Petition and Order to Show Cause to compel VDARE's compliance with a subpoena dated June 23, 2022[1] (the "Subpoena Proceeding"). *See* Dkt. No. 40-2 (Petition,

---

[1] As discussed below, this subpoena will be referred to herein as the "Charities Subpoena."

*People v. VDARE Found., Inc*., No. 453196/2022 (N.Y. Sup. Ct., N.Y. Cnty Dec. 16, 2022), NYSCEF Doc. No. 1); Dkt. No. 40-3 (Order to Show Cause, *People v. VDARE Found., Inc*., No. 453196/2022 (N.Y. Sup. Ct., N.Y. Cnty. Dec. 29, 2022), NYSCEF Doc. No. 33). Plaintiff, in turn, moved to dismiss the Subpoena Proceeding, arguing that the Charities Subpoena's stated basis was mere pretext to retaliate against VDARE for its constitutionally protected activity. *See* Memorandum of Law in Support of VDARE's Order to Show Cause to Dismiss or Stay, at 3, *People v. VDARE Found., Inc*., No. 453196/2022 (N.Y. Sup. Ct., N.Y. Cnty. Jan. 3, 2023), NYSCEF Doc. No. 51.

On January 23, 2023, New York State Supreme Court Justice Sabrina Kraus ("Justice Kraus") granted the Attorney General's petition and compelled Plaintiff to comply with the Charities Subpoena, finding that the Charities Subpoena (1) was appropriate because it "focused on subject matter areas which fall within the statutory provisions that govern not-for-profit corporations[,]" and (2) "demand[ed] the type of material that will permit [the Attorney General] to determine whether [VDARE] has complied with [New York Not-for-Profit Corporation Law ("NPCL")] requirements[.]" *People v. VDARE Found., Inc.*, No. 453196/2022, 2023 WL 360633, *3-4 (N.Y. Sup. Ct. Jan. 23, 2023) (the "Subpoena Decision"). Justice Kraus also addressed Plaintiff's constitutional objections, holding that VDARE did "not establish[] that the [Charities] Subpoena would impair [VDARE's] own First Amendment Rights." *Id.* at *4.

Plainitff appealed the Subpoena Decision to the Supreme Court, Appellate Division, First Department, New York. *See Matter of People v. VDARE Found., Inc.*, No. 2023-00672 (N.Y. App. Div. 1st Dep't Oct. 6, 2023). One of the questions Plaintiff presented to the First Department was: "Whether [the Charities Subpoena] should have been enforced when it was

admittedly issued in retaliation for speech at the very core of the areas protected by the First Amendment?" Dkt. No. 40-7 at 7, 16-19 (VDARE's Appellate Brief).

The First Department affirmed the Subpoena Decision, finding that the Supreme Court "providently exercised its discretion in granting [the Attorney General's] motion to compel compliance with its subpoena." *Matter of People v. VDARE Found., Inc.*, 224 A.D.3d 516, 517 (1st Dep't 2024), *appeal dismissed*, 41 N.Y.3d 1009 (2024). Moreover, the First Department found that "[t]he [Charities] [S]ubpoena does not impermissibly infringe on [VDARE's] or its vendors' and contractors' First Amendment rights[,]" and that there was "no support for [VDARE's] contention that the [Attorney General] conceded any retaliatory animus or was targeting [VDARE] for its protected speech." *Id.* at 517-18. On June 13, 2024, the Court of Appeals denied Plaintiff's motion for leave to appeal the First Circuit's opinion. *See Matter of People v. VDARE Found., Inc.*, 41 N.Y.3d 1009 (2024).

Throughout the course of the Subpoena Proceeding, Plaintiff was held in contempt multiple times for willfully failing to comply with the Subpoena Decision. *See* Dkt. Nos. 40-9, 40-10, 40-11.

On September 3, 2025, following the investigation of VDARE and the Subpoena Proceeding, the Attorney General initiated a civil enforcement action against VDARE, Peter Brimelow, and Lydia Brimelow, seeking, *inter alia*, restitution and penalties, as well as removal of the Brimelows as fiduciaries of VDARE (the "Civil Enforcement Action"). *See* Dkt. No. 40-12 at ¶¶ 2, 162-229. The Civil Enforcement Action remains pending. *See People v. VDARE Found. Inc.*, No. 452397/2025 (N.Y. Sup. Ct., N.Y. Cnty. Sept. 3, 2025).

In December 2022, VDARE filed a federal lawsuit, similar to the present action, alleging constitutional violations of its right to free speech caused by the Charities Subpoena, asserting

claims for retaliation, and seeking declaratory and injunctive relief. *See VDARE Found., Inc. v. James*, No. 1:22-CV-1137 (N.D.N.Y. Dec. 12, 2022), Dkt. No. 1. Senior District Judge Scullin dismissed VDARE's complaint on *res judicata* grounds, finding the claims arose from the same transaction or series of transactions as the claims involved in the Subpoena Proceeding, and therefore, were barred by the final judgment rendered by the New York State courts. *See VDARE Found., Inc. v. James*, No. 1:22-CV-1337, 2023 WL 5959553, *8-9 (N.D.N.Y. Sept. 13, 2023), *aff'd*, 162 F.4th 77 (2d Cir. 2025). Judge Scullin's decision was affirmed by the Second Circuit on appeal. *See VDARE Found., Inc. v. James*, 162 F.4th 77, 83-88 (2d Cir. 2025).

**B. Allegations in the Amended Complaint[2]**

The present action, Plaintiff's second federal lawsuit complaining of the Attorney General's investigation and subsequent legal proceedings, was filed on June 23, 2025. *See* Dkt. No. 1. According to the amended complaint, Plaintiff is a non-profit organization that "engages in political speech at the very heart of First Amendment protection: it criticizes government policy that appears to demonstrate incompetence and even outright dishonesty." Dkt. No. 25 at 1. Plaintiff states that it brings this action seeking "redress for an abusive subpoena, a bad faith civil complaint, and declaratory and injunctive relief." *Id.* at 2.

As for the substance of Plaintiff's allegations, Plaintiff alleges it "was the focus of no less than three subpoenas" issued by the Attorney General in May and June 2022. *See id.* at ¶ 18.

---

[2] Many of the allegations in the present matter were the subject of the prior federal action filed in the Northern District of New York. *See VDARE Foundation, Inc. v. James*, No. 1:22-CV-1137 (N.D.N.Y. Dec. 12, 2022). Given the prior federal and state litigation involving parties to the present action, the Court assumes the parties' familiarity with much of the underlying subject matter. *See VDARE Found., Inc. v. James*, 162 F.4th at 80-82 (recounting background in Plaintiff's first federal action); *VDARE Found., Inc. v. James*, 2023 WL 5959553, at *1-7 (same). The following is a brief recitation of relevant facts drawn from the amended complaint in the present action.

Two of the subpoenas were served on Meta Platforms, Inc. and Facebook Payments, Inc., and the third, dated June 23, 2022, was served on VDARE itself (the "Charities Subpoena"). *See id.* The Charities Subpoena sought, among other things, documents related to VDARE's sale of real property in West Virginia, known as the Berkley Springs Castle. *See id.* at ¶ 92.

Plaintiff's claims are premised on allegations of retaliation in violation of the First Amendment and selective-enforcement in violation of the Fourteenth Amendment. Plaintiff alleges that Defendants have conspired to bring about an investigation and subsequent legal action to damage VDARE for engaging in speech and association that Defendants wish to chill. *See id.* at ¶¶ 51, 116-17. Plaintiff recounts panel discussions and other statements made by Defendants, wherein members of the Attorney General's Office discussed using litigation to curtail what Defendants deem "hate speech." *See id.* at ¶¶ 24-70. Further, Plaintiff alleges that Defendants, in pursuing legal action against VDARE, have treated VDARE differently than other non-profit organizations. *See id.* at ¶¶ 71-81. More specifically, Plaintiff asserts that Defendants have turned a blind eye to malfeasance committed by non-profits which engage in political speech they agree with, while simultaneously weaponizing the power of the Attorney General to "mercilessly hunt[ ] VDARE over technical infractions." *Id.* at ¶¶ 75, 119-78.

The amended complaint brings claims seeking compensatory and punitive damages for First Amendment retaliation and Fourteenth Amendment selective-enforcement "based on the Charities Subpoena" and the Civil Enforcement Action, pursuant to Section 1983, as well as for conspiracy under 42 U.S.C. § 1985(3). *Id.* at ¶¶ 179-235. Additionally, Plaintiff seeks the following declaratory and injunctive relief: (1) "a declaratory judgment stating that Defendants cannot target VDARE based on hostility towards the VDARE's message, regardless of whether or not there are statutory violations as described in the Civil Complaint in New York State court";

and (2) an order enjoining Defendants "from further prosecution of the [Civil Enforcement Action], until a final adjudication takes place in this Court concerning the constitutionality of said acts, whereupon Defendants in their official capacity should be directed to dismiss said [Civil Enforcement Action] with prejudice." *Id.* at ¶¶ 236-56.[3]

**C. The Parties' Motions**

On December 8, 2025, Plaintiff filed an order to show cause seeking an order enjoining Defendants from prosecuting the Civil Enforcement Action. *See* Dkt. Nos. 31, 32, 33, 34. Defendants filed an opposition to Plaintiff's motion and cross-moved to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. *See* Dkt. No. 40. Defendants argue: (1) this Court lacks subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine; (2) this Court should abstain from jurisdiction and dismiss the amended complaint pursuant to the *Younger* abstention doctrine; (3) Plaintiff is collaterally estopped from enforcing its retaliation and selective-enforcement claims; (4) Plaintiff fails to state a selective-enforcement claim; (5) Plaintiff fails to state a conspiracy claim; and (6) Plaintiff fails to establish the requisite irreparable harm or balance of the equities in its favor to obtain a preliminary injunction. *See id.* at 17-37.

## III. DISCUSSION

**A. Standard of Review**

***1. Preliminary Injunction***

---

[3] Plaintiff does not challenge the Attorney General's broad and well-established authority to issue subpoenas in connection with a civil investigation of a non-profit's conduct to determine whether to bring an enforcement proceeding. *See* N.Y. Exec. Law §§ 63(12), 175; N.Y. Not-For-Profit Corp. Law ("NPCL") § 112; N.Y. Est. Powers and Trusts Law ("EPTL") § 8-1.4(m). Instead, Plaintiff claims that the Attorney General used this power for improper purposes.

"'A preliminary injunction is an extraordinary and drastic remedy' and 'should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *St. Joseph's Hosp. Health Ctr. v. Am. Anesthesiology of Syracuse, P.C.*, 131 F.4th 102, 106 (2d Cir. 2025) (quoting *State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C.*, 120 F.4th 59, 79 (2d Cir. 2024)). "To obtain a preliminary injunction, a party must show '(1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest.'" *Id.* (quoting *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018)).

***2. Motion to Dismiss***

"'A court faced with a motion to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6) must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits and, therefore, an exercise of jurisdiction.'" *Dutrow v. N.Y. State Gaming Comm'n*, No. 13-CV-996, 2014 WL 11370355, *3 (E.D.N.Y. July 29, 2014), *aff'd*, 607 Fed. Appx. 56 (2d Cir. 2015) (quoting *Magee v. Nassau Cnty. Med. Ctr.*, 27 F. Supp. 2d 154, 158 (E.D.N.Y. 1998)). "[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit ([*i.e.*,] subject-matter jurisdiction)[.]" *Sinochem Int'l Co., Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007) (citation omitted). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P 12(b)(1)).

When subject matter jurisdiction is challenged, a plaintiff "bear[s] the burden of 'showing by a preponderance of the evidence that subject matter jurisdiction exists.'" *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003) (quoting *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003)). "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) a district court may consider evidence outside the pleadings." *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citing *Makarova*, 201 F.3d at 113).

In reviewing a motion to dismiss under Rule 12(b)(1), the court "must accept as true all material factual allegations in the complaint, but [is] not to draw inferences from the complaint favorable to plaintiffs." *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004) (citation omitted). The court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [ ] may not rely on conclusory or hearsay statements contained in the affidavits." *Id.* (citation omitted). In resolving a Rule 12(b)(1) motion, a court may also "consider 'matters of which judicial notice may be taken[,]'"such as public court filings. *Greenblatt v. Gluck*, No. 03-CV-597, 2003 WL 1344953, *1 n.1 (S.D.N.Y. Mar. 19, 2003) (quoting *Hertz Corp. v. City of New York*, 1 F.3d 121, 125 (2d Cir. 1993)).

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that

pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim[,]" *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (citation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed[,]" *id.* at 570.

**B. *Rooker-Feldman***

"Under the *Rooker-Feldman* doctrine, federal district courts lack jurisdiction over cases that essentially amount to appeals of state court judgments." *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283-84 (2005)). The *Rooker-Feldman* doctrine rests on the principle that "appellate jurisdiction to reverse or modify a state-court judgment is lodged . . . exclusively in [the Supreme] Court." *Exxon Mobil*, 544 U.S. at 283.

The Supreme Court has made clear, however, that *Rooker-Feldman* occupies a "narrow ground" that applies in only "limited circumstances." *Exxon Mobil*, 544 U.S. at 284, 291. Application of the doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 284. To ensure that courts "avoid extending *Rooker-Feldman* beyond the narrow circumstances in which it properly applies," the Second Circuit has articulated a four-part test to assess the application of the doctrine: "'(1) the federal-court plaintiff lost in state court; (2) the plaintiff complains of injuries caused by a state court judgment; (3) the plaintiff invites review and rejection of that judgment; and (4) the state judgment was rendered before the district court proceedings commenced.'" *Hunter v. McMahon*, 75 F.4th 62, 68-69 (2d Cir. 2023) (quoting *Vossbrinck*, 773 F.3d at 426), *abrogated on other grounds by T. M. v. Univ. of Md. Med. Sys. Corp.*, 146 S. Ct. 1739 (2026).

The second prong—that the injuries must have been "caused by a state court judgment"—"'is the "core requirement from which the other *Rooker-Feldman* requirements derive."'" *Id.* at 71 (quoting *Sung Cho v. City of New York*, 910 F.3d 639, 646 (2d Cir. 2018)). This prong is met if "the third party's actions are *produced* by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it." *Id.* (citation and internal quotation marks omitted) (emphasis in original). Stated differently, "'*Rooker-Feldman* does *not* bar claims based on an opponent's misconduct that *precedes* the state court proceeding, if the plaintiffs' alleged injuries were merely *ratified* by the state-court judgments rather than *caused* by them.'" *Id.* (quoting *Dorce v. City of New York*, 2 F.4th 82, 104 (2d Cir. 2021)) (emphasis in original). The question federal courts must answer is whether there is a "'*causal relationship* between the state-court

judgment and the injury of which the party complains in federal court.'" *Id.* at 72 (quoting *McKithen v. Brown*, 481 F.3d 89, 98 (2d Cir. 2007)) (emphasis in original).

Although "*Rooker-Feldman* squarely forecloses" attempts to void a state court judgment, "it is equally clear that federal courts do not lose jurisdiction merely because 'a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party.'" *Dorce*, 2 F.4th at 104 (quoting *Exxon Mobil*, 544 U.S. at 293). For example, *Rooker-Feldman* does not generally bar claims against third parties for "alleged misconduct occurring in the course of a state court proceeding," such as a fraudulent course of conduct to procure a state judgment, even if the misconduct calls the state court judgment into question. *Hansen v. Miller*, 52 F.4th 96, 100 (2d Cir. 2022).

Defendants argue that the amended complaint should be dismissed in its entirety pursuant to *Rooker-Feldman*. *See* Dkt. No. 40-14 at 18-19. Plaintiff contends that (1) Defendants cannot satisfy the second *Rooker-Feldman* factor because the amended complaint alleges a conspiracy that pre-dates the Charities Subpoena; (2) the claims which involve the Civil Enforcement Action are not subject to *Rooker-Feldman* because the Civil Enforcement Action has not concluded; and (3) *Rooker-Feldman* does not apply because "appeals remain pending in the [Subpoena Proceeding]." *See* Dkt. No. 45 at 5-8.

The Cort will begin by addressing Plaintiff's second and third arguments. These arguments are both factually incorrect and legally meritless. As to the third argument, no appeal of the Subpoena Proceeding remains pending. VDARE's appeals of the Subpoena Decision were exhausted when the Court of Appeals denied Plaintiff's motion for leave to appeal the First Circuit's decision. *See Matter of People v. VDARE Found., Inc.*, 41 N.Y.3d 1009 (2024). And, even the collateral litigation regarding Plaintiff's failure to comply with the Subpoena Decision

are no longer live. *See Matter of People v. VDARE Found., Inc.*, 246 A.D.3d 527, 527-28 (1st Dep't 2026) (affirming Justice Kraus' orders holding Plaintiff in civil contempt).

Regardless, whether the Civil Enforcement Action or the Subpoena Proceeding remain pending is not dispositive of a *Rooker-Feldman* analysis. The Supreme Court recently held that *Rooker-Feldman* bars suit even "when the state-court judgment at issue is subject to further review in state appellate proceedings." *T. M.*, 146 S. Ct. at 1744. Thus, even if Plaintiff was yet to exhaust its appellate review in state court, *Rooker-Feldman* would still be applicable.

As such, the Court must determine whether Defendants have met their burden of demonstrating whether all, or some, of Plaintiff's claims are barred by *Rooker-Feldman*. Defendants argue that *Rooker-Feldman* bars the present action because Plaintiff lost the Subpoena Proceeding and was compelled to comply with the Charities Subpoena, and now invites review and rejection of that judgment. *See* Dkt. No. 40-14 at 18-19. In opposition, Plaintiff relies entirely on the Second Circuit's decision in *Hunter*, arguing that Defendants cannot meet the second *Rooker-Feldman* factor. *See* Dkt. No. 45 at 6-7.

In *Hunter*, the Circuit held that certain claims brought by the plaintiff did not satisfy the causal-relationship requirement of the second *Rooker-Feldman* factor. *See Hunter*, 75 F.4th at 72. At issue in *Hunter* was a custody dispute, where a mother's parental rights over her minor son were terminated in state court proceedings. *See id.* at 65-66. Prior to the commencement of the state court proceedings, Child Protective Services took custody of the child. *See id.* The plaintiff alleged that "some of the defendants conspired—before any decisions were issued by the family court—to discriminate against her on the basis of race, to conduct unlawful searches and seizures, and to defame her, among other claims." *Id.* at 72. Specifically, the plaintiff alleged that certain defendants took custody of the child "'under falsified claims that an emergency existed' and

conducted 'an illegal interrogation of [the child] in [the plaintiff's] absence and without [her] consent." *Id.* (citation omitted). The plaintiff claimed "that this conduct violated her constitutional rights, and she [sought] damages for that violation." *Id.* (footnote omitted). Based upon these allegations, the Second Circuit found that the second *Rooker-Feldman* factor was not satisfied because the "state-court judgment did not *produce* this alleged earlier-in-time conduct, though it may have adjudicated the legitimacy of the conduct after the fact." *Id*. (emphasis in original).

In reaching this conclusion, the Second Circuit noted that, "[f]or *Rooker-Feldman* purposes, we are looking for a '*causal relationship* between the state-court judgment and the injury of which the party complains in federal court.'" *Id.* (quoting *McKithen*, 481 F.3d at 98) (emphasis in original). Indeed, in *McKithen*, the Second Circuit explained that

> whatever the full import of the "caused by" and "produced by" language, at least the following is evident: a party is not complaining of an injury "caused by" a state-court judgment when the exact injury of which the party complains in federal court existed *prior* in time to the state-court proceedings, and so could not have been "caused by" those proceedings.

*McKithen*, 481 F.3d at 98 (emphasis in original).

Here, Plaintiff certainly takes exception to the Subpoena Decision which required compliance with the Charities Subpoena. However, the amended complaint more broadly alleges injuries suffered as a result of a conspiracy-laced investigation and abuse of process which predates the Subpoena Decision. For example, Plaintiff alleges that in June 2021 "Defendants conspired with the [Anti-Defamation League ("ADL")] and ADL attorney Steve Freeman by agreeing to use [the NPCL] and other laws to harass and burden VDARE because of its protected speech." *Id.* at ¶ 226. Plaintiff also alleges that Defendant Sawyer "boasted" about this

conspiracy at the "*Taking Hate to Court*" ADL Panel in November 2022, which shows that Defendants engaged in a conspiracy to violate Plaintiff's constitutional rights before any subpoenas were issued. *See id.* at ¶¶ 228-29. Ultimately, according to Plaintiff, "[a]ll Defendants joined in the conspiracy by serving and enforcing the Charities Subpoena . . . and now in filing the Civil [Enforcement Action]." *Id.* at ¶ 231.

These allegations of a conspiracy to retaliate and selectively enforce the law against VDARE form the basis of all Plaintiff's claims. *See, e.g.*, *id.* at ¶¶ 183-84, 196-98, 205-06, 213-20, 237-40, 255-56. Thus, the alleged injuries of which Plaintiff complains—caused by an investigation and conspiracy which allegedly violated Plaintiff's constitutional rights—predate the Subpoena Decision.

In sum, the Subpoena Proceeding and Civil Enforcement Action did not cause or produce the alleged unconstitutional conspiracy and investigation; as pleaded, these judicial proceedings merely ratified Defendants' alleged unconstitutional conduct. *See Trump v. James*, No. 1:21-CV-1352, 2022 WL 1718951, *15 (N.D.N.Y. May 27, 2022) (finding *Rooker-Feldman* inapplicable to claims that Attorney General investigation, which predated the issuance of a subpoena, violated the plaintiff's constitutional rights).

For these reasons, the Court concludes that *Rooker-Feldman* does not deprive this Court of subject matter jurisdiction over Plaintiff's claims.

**C. *Younger* Abstention**

Nevertheless, the Court finds that abstention pursuant to *Younger* is appropriate. Simply put, Plaintiff seeks declaratory and injunctive relief that would cause this Court to interfere with the ongoing Civil Enforcement Action. Although Plaintiff purports to seeks compensatory and punitive damages, the injunctive and declaratory relief requested in the amended complaint reveal

the true objective of present action: this Court's interference with a matter pending in state court. *See* Dkt. No. 25 at 49 (requesting an injunction "prohibiting further prosecution of the [Civil Enforcement Action])"

"The *Younger* abstention doctrine embodies the 'longstanding public policy against federal court interference with state court proceedings.'" *Gristina v. Merchan*, 131 F.4th 82, 86 (2d Cir. 2025) (quoting *Younger v. Harris*, 401 U.S. 37, 43 (1971)). "[W]hen *Younger* applies, abstention is mandatory and its application deprives the federal court of jurisdiction in the matter." *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 197 (2d Cir. 2002) (citing *Colorado Water Conservation Dist. v. United States*, 424 U.S. 800, 816 n.22 (1976)).

"Though '. . . federal courts are obliged to decide cases within the scope of federal preserved jurisdiction,' . . . 'there are some classes of cases in which the withholding of authorized equitable relief because of undue interference with state proceedings is "the normal thing to do."'" *Gristina*, 131 F.4th at 86 (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013)) (additional citation omitted). "Specifically, [the Second Circuit] ha[s] observed that 'federal courts should refrain from interfering with core state court civil administrative processes, powers, and functions that allow the state courts to adjudicate the matters before them and enforce their judgments.'" *Id.* (quoting *Cavanaugh v. Geballe*, 28 F.4th 428, 434 (2d Cir. 2022)). "'*Younger* generally prohibits courts from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings so as to avoid unnecessary friction.'" *Id.* at 88 (quoting *Spargo v. N.Y. State Comm'n on Jud. Conduct*, 351 F.3d 65, 75 (2d Cir. 2003)).

"Out of this deference to state comity, *Younger* and its progeny have identified three categories of 'exceptional' situations in which the prospect 'of undue interference with state proceedings' triggers *Younger* abstention." *Id.* at 86-87 (citation omitted). "Those three

categories are: (1) where there is a pending state criminal prosecution; (2) where there is a pending civil enforcement proceeding; or (3) where there is a pending civil proceeding 'uniquely in furtherance of the state courts' ability to perform their judicial functions.'" *Id.* at 87 (quoting *Sprint*, 571 U.S. at 72-73).

The Court finds that the present situation meets both the second and third categories of "exceptional" situations. *Gristina*, 131 F.4th at 86-87. First, there is a pending civil enforcement proceeding. Three factors have been utilized to identify civil enforcement proceedings which are "'akin to a criminal prosecution' in 'important respects'" and trigger *Younger* abstention. *Sprint*, 571 U.S. at 79 (citation omitted). First, such enforcement actions "are characteristically initiated to sanction the federal plaintiff, *i.e.*, the party challenging the state action, for some wrongful act." *Id.* Second, a state actor "is routinely a party to the state proceeding and often initiates the action." *Id.* Finally, "[i]nvestigations are commonly involved, often culminating in the filing of a formal complaint or charges." *Id.* at 79-80.

Here, *Younger* is triggered because the Civil Enforcement Action, which was brought about by an investigation and the Subpoena Proceeding, is an ongoing civil enforcement proceeding which is "'akin to a criminal prosecution' in 'important respects.'" *Sprint*, 571 U.S. at 79 (citation omitted). Indeed, the Subpoena Proceeding was commenced pursuant to Attorney General's statutory authority under NPCL § 112(b)(6), EPTL § 8-1.4(i) and the Executive Law §§ 63(12) and 175. And, following an investigation and the Subpoena Proceeding, Defendant James, acting in her official capacity as the Attorney General of New York, initiated the Civil Enforcement Action against Plaintiff, Peter Brimelow, and Lydia Brimelow, seeking, *inter alia*, restitution, penalties, and the removal of the Brimelows as fiduciaries of VDARE. *See* Dkt. No. 40-2 (Subpoena Proceedings petition); Dkt. No. 40-12 (Civil Enforcement Action complaint). In

sum, the Civil Enforcement Action was initiated to sanction Plaintiff, Defendant James initiated the action pursuant to her statutory authority (as the Attorney General routinely does), and there was an investigation which culminated in the filing of the formal complaint in the Civil Enforcement Action. Thus, all three factors are readily satisfied.

Second, the Subpoena Proceeding and the Civil Enforcement Action involve "certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions." *Cavanaugh*, 28 F.4th at 432 (citation omitted). As the Second Circuit has explained, "federal courts should refrain from interfering with core state court civil administrative processes, powers, and functions that allow the state courts to adjudicate the matters before them and enforce their judgments." *Id.* at 434. "Civil contempt orders . . . fall into this category[,]" *Disability Rights N.Y. v. New York*, 916 F.3d 129, 133 (2d Cir. 2019) (citation omitted), because "[t]he contempt power lies at the core of the administration of a State's judicial system," and "stands in aid of the authority of the judicial system, so that its orders and judgments are not rendered nugatory," *Juidice v. Vail*, 430 U.S. 327, 336, n.12 (1977). Intrusion on the state's contempt process "unduly interferes with the legitimate activities of the State" and can also "readily be interpreted as reflecting negatively upon the state courts' ability to enforce constitutional principles." *Id.*. at 336 (internal citations, quotation marks, and brackets omitted).

In the Subpoena Proceeding, Justice Kraus issued two orders holding Plaintiff in contempt for failure to comply with the Charities Subpoena. *See* Dkt. Nos. 40-9, 40-10. Justice Kraus' contempt orders have been raised in the Civil Enforcement Action, where Defendant James alleges that Plaintiff "has actively impeded a lawful regulatory investigation by the New York Office of the Attorney General . . . into [the alleged unlawful] transactions and [Plaintiff's] governance and finances." Dkt. No. 25-3 at ¶ 11. Granting Plaintiff the relief it seeks in this

action "would have the practical effect of interfering with the contempt ruling[s]" in the Subpoena Proceeding and "runs the risk of rendering th[ose] order[s] 'nugatory.'" *Trump*, 2022 WL 1718951, at *11 (quoting *Juidice*, 430 U.S. at 336 n.12). Accordingly, the Subpoena Proceeding and Civil Enforcement Action also implicate *Sprint*'s third category and the interests underlying *Younger* require abstention.

"[B]efore invoking *Younger* a federal court may 'appropriately consider[ ]' three additional factors laid out in *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423 (1982), that further counsel in favor of abstention[.]" *Cavanaugh*, 28 F.4th at 432. These factors are "[w]hether 'there is (1) an ongoing state judicial proceeding [that] (2) implicates important state interests and (3) provides an adequate opportunity to raise federal challenges.'" *Id.* (quoting *Sprint*, 571 U.S. at 81). "But these conditions '[are] not dispositive; they [are], instead, additional factors appropriately considered by the federal court before invoking *Younger*.'" *Id.* (quoting *Sprint*, 571 U.S. at 81) (emphasis omitted).

All three of these additional considerations weigh in favor of abstention. First, the Charities Subpoena, the Subpoena Proceeding, and the Civil Enforcement Action were all ongoing state judicial proceedings when Plaintiff filed the amended complaint. *See Cuomo v. Dreamland Amusements, Inc.*, No. 08-CV-6321, 2008 WL 4369270, *9 (S.D.N.Y. Sept. 22, 2008) ("[W]here subpoenas 'were issued by the Attorney General pursuant to an investigation of [the p]laintiffs' allegedly illegal activities, and the information sought may be used to initiate civil or criminal proceedings against [the p]laintiffs,' the issuance of subpoenas qualifies as an ongoing state proceeding") (quoting *J. & W. Seligman & Co., Inc. v. Spitzer,* No. 05-CV-7781, 2007 WL 2822208, *5 (S.D.N.Y. Sep. 27, 2007)).

Second, the Charities Subpoena, the Subpoena Proceeding, and the Civil Enforcement Action, commenced pursuant to the Attorney General's authority to investigate and regulate not-for-profit corporations chartered in New York, concern vitally important state interests, including, preventing fraud, waste, abuse, self-dealing and other improper conduct by charities in New York. *C.f. Citizens United v. Schneiderman*, 882 F.3d 374, 384 (2d Cir. 2018) (noting the "important government interests" served by the Attorney General's authority to prevent "fraud and self-dealing in charities"); *J. & W. Seligman & Co.*, 2007 WL 2822208, at *6 ("The Attorney General's investigation also involves an 'important state interest': investigating and preventing fraudulent conduct and enforcing subpoenas issued pursuant to state law") (citing *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604 (1975)).

Third, even if it chooses not to, Plaintiff has the opportunity to obtain judicial review of its constitutional claims in the Civil Enforcement Action. *See Trump*, 2022 WL 1718951, at *11 ("New York Supreme Court has jurisdiction to entertain federal constitutional claims, and [the p]laintiffs raised a challenge to Defendant's subpoenas based on the Fourteenth Amendment's Equal Protection Clause. [The p]laintiffs' failure to raise all of their constitutional claims in the state-court forum is not determinative") (citing *Juidice*, 430 U.S. at 337) (internal citation omitted). Moreover, as the Second Circuit noted in Plaintiff's prior federal action, Plaintiff did, in fact, raise constitutional challenges in the Subpoena Proceeding:

> [T]his is not a case where VDARE simply *could have* argued that the OAG's subpoena would chill its own free-association rights and those of its vendors and contractors and that the overall investigation was a pretext for viewpoint-based retaliation. VDARE in fact *did* make those arguments before the New York Supreme Court and First Department—both of which rejected them.

*VDARE Found., Inc. v. James*, 162 F.4th at 84 (internal citations omitted) (emphasis in original).

For these reasons, the Court finds that it is appropriate to abstain from jurisdiction pursuant to *Younger* and grants Defendants' Rule 12(b)(1) motion accordingly. Plaintiff's bad faith exception and *England* reservation arguments do not convince the Cout otherwise.

***1. Bad Faith Exception***

Even where *Younger* would otherwise apply, a federal court may still exercise its jurisdiction "upon a showing of 'bad faith, harassment or any other unusual circumstance that would call for equitable relief.'" *McGowan*, 282 F.3d at 198 (quoting *Younger*, 401 U.S. at 54). A federal plaintiff seeking to "head off *Younger* abstention bears the burden of establishing that" an exception applies. *Id.* (citing *Kirschner v. Klemons*, 225 F.3d 227, 235-36 (2d Cir. 2000)).

Plaintiff argues that the bad faith exception to *Younger* abstention applies because, even if Defendants have a reasonable expectation of obtaining a reasonable outcome, the Civil Enforcement Action was brought for retaliatory or other improper purposes. *See* Dkt. No. 45 at 10-11. Defendants contend that the bad faith exception does not apply because the Attorney General had a reasonable expectation of a favorable outcome in the Subpoena Proceeding and Civil Enforcement Action and because Defendants' "alleged 'retaliatory use of process aimed at burdening protected expression' was already dispositively determined against [Plaintiff]." Dkt. No. 40-14 at 26-27.

To meet its burden of establishing the "bad faith" exception applies, a federal plaintiff must show that "the party bringing the state action [had] no reasonable expectation of obtaining a favorable outcome." *Cullen v. Fliegner*, 18 F.3d 96, 103 (2d Cir. 1994) (citing *Kugler v. Helfant*, 421 U.S. 117, 126 n.6 (1975)). In other words, the burden is on the plaintiff the show that the state proceeding was "brought to retaliate for or to deter constitutionally protected conduct[,]" or

that the proceeding was "otherwise brought in bad faith or for the purpose to harass." *Id.* at 103-04 (citation omitted).

"[T]he subjective motivation of the state authority in bringing the proceeding is critical to, if not determinative of, this inquiry." *McGowan*, 282 F.3d at 199. "A state proceeding that is legitimate in its purposes, but unconstitutional in its execution—even when the violations of constitutional rights are egregious—will not warrant the application of the bad faith exception." *Id.* (citation omitted). "[I]t is only when the state proceeding is brought with no legitimate purpose that [the] state interest in correcting its own mistakes dissipates, and along with it, the compelling need for federal deference." *Id.* at 200 ("Federal interference with state proceedings, because it necessarily presumes that state court review will be inadequate, affronts the dignity of the state sovereign. However, as [the Second Circuit] recognized in *Cullen,* a state has no interest in continuing actions brought with malevolent intent") (citing *Cullen*, 18 F.3d at 104). The bad faith exception to the *Younger* doctrine has "been deemed a 'narrow' one." *Cullen*, 18 F.3d at 104 (quoting *Huffman*, 420 U.S. at 611).

Here, the Court finds Plaintiff has failed to meet its burden of demonstrating that the bad faith exception to *Younger* applies. First, Plaintiff has not shown that Defendants had "no reasonable expectation of obtaining a favorable outcome" and that the state proceedings were, therefore, brought in bad faith. *McGowan*, 282 F.3d at 199. Defendant James commenced the Civil Enforcement Action on September 3, 2025, pursuant to her statutory authority to supervise and investigate tax-exempt charitable entities for suspected misconduct. *See generally* Dkt. No. 40-12. Leading up to the commencement of the Civil Enforcement Action, Defendants obtained numerous favorable decisions in the Subpoena Proceedings, including rulings by both the New York Supreme Court and First Department that no First Amendment retaliation had been

demonstrated. *See VDARE Found., Inc. v. James*, 162 F.4th at 84. Moreover, as discussed, Justice Kraus repeatedly granted Defendant James' motions to compel compliance with the Charities Subpoena. And, more recently, Justice Kraus denied a motion to dismissed filed by VDARE in the Civil Enforcement Action. *See People v. VDARE*, No. 452397/2025, NYSCEF Doc. No. 25 (N.Y. Sup. Ct., N.Y. Cnty. March 5, 2026).

Plaintiff offers nothing besides conclusory accusations of bad faith to counter the countless favorable outcomes obtained by the Attorney General in the Subpoena Proceeding and Civil Enforcement Action. *See e.g.*, *Matter of People. v. VDARE Found., Inc.*, 246 A.D.3d 527, 527-28 (1st Dep't 2026). Thus, the Court finds Plaintiff has failed to show Defendants had no reasonable expectation of obtaining a favorable outcome in the Subpoena Proceeding or Civil Enforcement Action. *See Trump*, 2022 WL 1718951, at *12 n.13 (finding plaintiff failed to show bad faith where Attorney General "repeatedly obtained favorable outcomes in the [underlying] New York proceeding which belie the notion that the positions she has taken in that proceeding are unwarranted").

Second, the amended complaint references a number of Defendants' alleged public comments which, according to Plaintiff, illustrate Defendants' personal animus toward VDARE and show an intent to retaliate against or stifle Plaintiff's free speech. *See e.g.*, Dkt. No. 25 at ¶¶ 205-06, 245-55. And, in its motion for a preliminary injunction, Plaintiff states, without citation to any document, that "[t]he record here demonstrates the retaliatory use of process aimed at burdening protected expression, which places this case within the recognized bad-faith/harassment exception." Dkt. No. 34 at 8-9. However, on the record presented, the Court finds that Plaintiff has not established that the Civil Enforcement Action or Subpoena Proceeding were commenced for the purpose of retaliation. Indeed, both the New York State Supreme Court

and the First Department assessed Plaintiff's constitutional arguments against enforcement of the Charities Subpoena and held that (1) Plaintiff's First Amendment rights were not impaired by the Charities Subpoena, and (2) there was no support in the record that Defendant James conceded any retaliatory animus or was targeting Plaintiff for its protected speech. *See Matter of People v. VDARE Found.*, 224 A.D.3d at 517-18.

In sum, to prevail, Plaintiff must prove that "the unconstitutional retaliation was the substantial motivating factor behind [the state actor's] decision to commence" the state proceeding. *Phelps v. Hamilton*, 59 F.3d 1058, 1066 (10th Cir. 1995). It has not done so. "The fact that Defendant[s'] public statements reflect personal and/or political animus toward Plaintiff[] is not, in and of itself, sufficient." *Trump*, 2022 WL 1718951, at *13. This is because "'[a]nimus or ill-will between the parties does not, by itself, constitute retaliation.'" *Id.* (quoting *Phelps*, 59 F.3d at 1067). Thus, Plaintiff's conclusory allegations, which would require this Court to contradict the findings of New York State courts, are insufficient to overcome *Younger*. *See Kirschner*, 225 F.3d at 236 ("Mere conclusory allegations of bias are insufficient to overcome *Younger*—a plaintiff seeking to avoid *Younger* must affirmatively demonstrate the justification for application of an exception") (citations omitted).

***2. England Reservation***

Finally, Plaintiff's *England* reservation argument is entirely without merit. *See* Dkt. No. 45 at 8-9. In *England*, the plaintiffs commenced an action in federal court, alleging that a state statute violated their federal constitutional rights and that the statute at issue did not apply to them. *See England v. La. State Bd. of Med. Exam'rs*, 375 U.S. 411, 412-13 (1964). The district court abstained and remitted the matter to state court on the basis that a state court decision interpreting the statute could moot the constitutional claims. *See id.* at 413. The plaintiffs

voluntarily submitted both the state law and federal constitutional claims to the state court. *Id.* at 413-14. The state court decided the state law and federal constitutional claims against the plaintiffs. *Id.* Ultimately, the Supreme Court of the United States held that the plaintiffs could have reserved their federal claims, and thereby avoid preclusion, by informing the state court that they intended to return to federal court to pursue the federal constitutional claims should the state court rule against them on the question of state law. *Id.* at 421-22.

Here, Plaintiff chose to assert its constitutional claims in state court during the Subpoena Proceeding and then, unsatisfied with the result, filed the instant federal action. *See* Dkt. No. 40-14 at 24-25. Simply put, that is not the type of circumstance contemplated by *England*. The theory behind *England* is that "it would be unfair to require plaintiffs, who had chosen a federal forum, to then have a state court decide their federal claims." *Fulani v. MacKay*, No. 06-CV-3747, 2007 WL 959308, *5 (S.D.N.Y. Mar. 29, 2007) (citing *Hickerson v. City of New York*, 146 F.3d 99, 110-12 (2d Cir. 1998). "The doctrine has no applicability to situations where, as here, [the P]laintiff[] [chose] to first litigate in state court, then subsequently seek to litigate federal claims in federal court in a separate action." *Id.* (citing *Hickerson*, 146 F.3d at 110-12).

**D. No Leave to Amend**

Generally, dismissal pursuant to Rule 12(b)(1) is without prejudice. In opposition to Defendants' motion to dismiss, Plaintiff has not cross-moved to file a second amended complaint. *See generally* Dkt. No. 45. Regardless, leave to amend is not required where such amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011). Because the defects in Plaintiff's complaint—*i.e.* that Plaintiff improperly seeks this Court's intervention in ongoing state court proceedings—cannot be cured with an amendment, the Court declines to grant Plaintiff leave to amend.

## IV. CONCLUSION

After careful review of the record, the pleadings, the parties' submissions, the applicable law, and for the above-state reasons, the Court hereby

**ORDERS** that Defendants' motion to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) based upon the *Younger* abstention doctrine (Dkt. No. 40) is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's amended complaint (Dkt. No. 25) is **DISMISSED without prejudice and without leave to amend**; and the Court further

**ORDERS** that Plaintiff's motion for a temporary restraining order and/or preliminary injunction (Dkt. Nos. 31, 32, 33, 34) is **DENIED as moot**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules; and the Court further

**ORDERS** that the Clerk of the Court is respectfully directed to close this case.

**IT IS SO ORDERED.**

Dated: September 10, 2026
Albany, New York

Mae A. D'Agostino
U.S. District Judge